**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| IN RE APPLICATION OF ORTHOGEN INTERNATIONAL GMBH,<br><br>           Petitioner,<br><br>for an order pursuant to 28 U.S.C. § 1782 to conduct discovery for use in a foreign proceeding. | Case No.: 1:23-mc-00152-VSB-KHP<br>Related Case: 1:24-mc-00504-VSB<br><br>Hon. Katharine H. Parker |

---

**RESPONDENTS' BRIEF IN OPPOSITION TO PETITIONER'S MOTION TO COMPEL AND IN SUPPORT OF THEIR CROSS-MOTION TO QUASH, OR ALTERNATIVELY, TO STAY ENFORCEMENT DURING THE PENDCY OF AN APPEAL IN GERMANY OF A GERMAN JUDGMENT DENYING PETITIONER DISCOVERY**

---

**BRACH EICHLER LLC**
Edward D. Altabet
5 Penn Plaza, 23d Floor
New York, NY 10001
ealtabet@bracheichler.com

*Attorneys for Respondents*

## <u>TABLE OF CONTENTS</u>

Page(s)

PRELIMINARY STATEMENT ............................................................................... 1

THE GERMAN CONTRACT AT ISSUE AND THE ABSENCE OF ANY ADMISSIBLE
FACTS OR PLEADINGS ........................................................................................ 2

    A.    The Petition and the 2014 License Agreement .......................................... 2

    B.    Article 13 of the 2014 License Agreement ................................................ 5

PROCEDURAL HISTORY AND RELATED LITIGATIONS  IN THE U.S. AND
GERMANY ........................................................................................................... 6

ARGUMENT .......................................................................................................... 13

I.      THE SUBPOENAS SHOULD BE QUASHED BECAUSE ORTHOGEN HAS
        FAILED TO MEET ITS HEAVY BURDEN UNDER FED. R. CIV. P. 27 TO
        CONDUCT PRE-SUIT DISCOVERY ................................................... 13

II.    THE SUBPOENAS SHOULD BE QUASHED BECAUSE, AS A MATTER OF
        LAW, THEY DO NOT SEEK ANY INFORMATION CONCERING A "CLAIM"
        OR A "CASE" — AND THUS, DO NOT SEEK INFORMATION THAT IS
        RELEVANT OR PROPORTIONAL TO ANYTHING. ............................... 19

    A.    *Intel* and Its Focus on the Fact that AMD Had Filed a Formal "Complaint" with
        DG-Competition .................................................................................... 19

    B.    No *Klage* [Complaint] Setting Forth a *Klageschrift* [Statement of Claim] Has Been
        Filed With Any German Court. Thus, as a Matter of Law, Orthogen Cannot Meet
        Its Burden to Show Relevance or Proportionality Under Rules 45 and 26 Because
        There Is No "Claim" Or "Case" Anywhere .......................................... 22

    C.    The Authorities Relied Upon By Orthogen Are Not Binding on This Court — Nor
        Are They Persuasive Authority .............................................................. 25

III.   THE SUBPOENAS SHOULD BE QUASHED BECAUSE THEIR
        ENFORCEMENT WOULD RESULT IN A DEPRIVATION OF A LIBERTY
        INTEREST PROTECTED BY THE DUE PROCESS CLAUSE OF THE 5th
        AMENDMENT .................................................................................... 31

    A.    The Schottenstein Parties' Liberty Interests In Their Rights Under German Law
        Viz. Article 13 of the 2014 License Agreement. ..................................... 31

B.    The Phantasmal Claims Would Be Time-Barred Under the BGB .......................... 37

IV.    **ENFORCEMENT OF THE SUBPOENAS SHOULD BE STAYED PENDING THE APPEAL OF THE FIRST DUSSELDORF ACTION. TO HOLD OTHERWISE WOULD UNDERMINE THE FUNDAMENTAL PUBLIC POLICY UNDERGIRDING 1782** ............................................................................. **38**

**CONCLUSION** ..................................................................................................... **40**

## **TABLE OF AUTHORITIES**

**Page(s)**

<u>**Cases**</u>

*ACE Am. Ins. Co. v. Keiicmiro*,
   No. CV 08-476-PHX-MHM,
   2008 WL 2264241 (D. Ariz. May 30, 2008) ............................................................ 24

*Am. Elec. Power Co., Inc. v. Conn.*,
   564 U.S. 410, 131 S.Ct. 2527, 180 L.Ed.2d 435 (2011) .......................................... 25

*Application of Deiulemar Compagnia Di Navigazione S.p.A. v. M/V Allegra*,
   198 F.3d 473 (4th Cir.1999) ..................................................................................... 15

*Associacao dos Profissionais dos Correios v. Bank of New York Melon Corp.*,
   No. 22-MC-0132 (RA) (KHP),
   2022 WL 4955312 (S.D.N.Y. Oct. 4, 2022) ............................................................ 13

*Atlantic Marine Construction Co., Inc. v. United Sates District Court
   for the Western District of Texas*, 571 U.S. 49, 63 (2013) ...................................... 34

*BANOKA S.a.r.l. v. Alvarez & Marsal, Inc.*,
   No. 22MC00182GHWKHP, 2023 WL 1433681 (S.D.N.Y. Feb. 1, 2023),
   *order adopted in part, rejected in part*,
   No. 1:22-MC-182-GHW, 2024 WL 1242994 (S.D.N.Y. Mar. 22, 2024) ............... 27

*Banoka v. Westmont Int'l Dev. Inc.*,
   No. 21-20434, 2022 WL 480118 (S.D. Tex. Feb. 10, 2022),
   *aff'd sub nom. Bissonnet v. Westmont Int'l Dev., Inc.*,
   No. 21-20434, 2022 WL 636680 (5th Cir. Mar. 4, 2022)......................................... 34

*Berkelhammer v. Voya Institutional Plan Services, LLC*,
   No. 22-MC-99 (MEG), 2023 WL 5042526 (D. Conn. Aug. 8, 2023)...................... 22

*Board of Regents v. Roth*,
   408 U.S. 564, 92 S.Ct. 2701, 2706, 33 L.Ed.2d 548 (1972).................................... 31

*Bryant v. Am. Fed'n of Musicians of the U.S. & Canada*,
   No. 14 CV. 2598 PAC MHD, 2015 WL 3644075 (S.D.N.Y. June 1, 2015)
   *rep. and rec. adopted sub nom.*, No. 14 CIV. 2598 (PAC) (HBP), 2015 WL 7301076
   (S.D.N.Y. Nov. 18, 2015), *aff'd sub nom.*, 666 F. App'x 14 (2d Cir. 2016) ............ 14

*Buffalo State Alumni Ass'n, Inc. v. Cincinnati Ins. Co.*,
   251 F. Supp. 3d 566 (W.D.N.Y. 2017) ..................................................................... 26

*Cafeteria & Rest. Workers Union, Loc. 473, AFL-CIO v. McElroy*,
    367 U.S. 886, 81 S. Ct. 1743, 6 L. Ed. 2d 1230 (1961) ........................................................... 32

*Camreta v. Greene*,
    563 U.S. 692, 131 S.Ct. 2020, 179 L.Ed.2d 1118 (2011) ......................................................... 25

*Certain Funds, Accts. &/or Inv. Vehicles v. KPMG, L.L.P.*,
    798 F.3d 113 (2d Cir. 2015) ....................................................................................................... 28

*Davis v. Mills*,
    194 U.S. 451, 454 (1904) ............................................................................................................ 33

*Falco v. Santoro*,
    No. 17-MC-0440(JS), 2017 WL 4480759 (E.D.N.Y. Sept. 29, 2017) ...................................... 16

*Huseby, LLC v. Bailey*,
    No. 3:20-CV-00167 (JBA), 2021 WL 3206776 (D. Conn. July 29, 2021) ............................... 23

*IJK Palm LLC v. Anholt Servs. USA, Inc.*,
    33 F.4th 669, 677 (2d Cir. 2022) ............................................................................................... 28

*In re Alghanim*, 2022 WL 1423088 (S.D.N.Y. May 5, 2022),
    *appeal withdrawn sub nom.*, 2022 WL 3970921 (2d Cir. June 16, 2022)................................. 36

*In re Asia Mar. Pac. Ltd.*,
    253 F. Supp. 3d 701, 707 (S.D.N.Y. 2015)................................................................................ 27

*In re Harbour Victoria Inv. Holdings Ltd. Section 1782 Petitions*,
    No. 15-MC-127, 2015 WL 4040420 (S.D.N.Y. June 29, 2015)................................................ 27

*In re Holmes*,
    No. 15-MC-56, 2017 WL 4324685 (W.D.N.Y. Sept. 29, 2017) ............................................... 16

*In re Hornbeam Corp.*,
    722 F. App'x 7 (2d Cir. 2018) .................................................................................................... 29

*In re Landry-Bell*,
    232 F.R.D. 266, 267 (W.D. La. 2005) ....................................................................................... 13

*In re McBean*,
    No. 12-CV-00579-MSK-KLM,
    2012 WL 769521, 2 (D. Colo. Mar. 8, 2012) ........................................................................... 15

*In re Mizuho Fin. Grp., Inc.*,
    No. 2:23-MC-00025-SB-MAA, 2023 WL 12004754 (C.D. Cal. Aug. 28, 2023).................... 29

*In re Mutabagani*,
No. 22 MC 299 (VB), 2023 WL 2811621 (S.D.N.Y. Apr. 6, 2023) ...................................... 26

*In re Petition of Allegretti*,
229 F.R.D. 93 (S.D.N.Y. 2005) ....................................................................................... 15

*In re Petition of John W. Danforth Grp., Inc.*,
No. 13-MC-33, 2013 WL 3324017 (W.D.N.Y. July 1, 2013)................................................ 19

*In re Stephen Shefsky*,
2024 WL 2275215 (D. Nev. May 20, 2024) ......................................................................... 30

*In re Top Matrix Holdings Ltd.*,
2020 WL 248716 (S.D.N.Y. Jan. 16, 2020) .............................................................. 27

*In re Yamaha Motor Corp., U.S.A.*,
251 F.R.D. 97 (N.D.N.Y. 2008)..................................................................................... 16

*Intel Corp. v. Advanced Micro Devices, Inc.*,
542 U.S. 241, 124 S. Ct. 2466, 159 L. Ed. 2d 355 (2004).......................................... 20

*Jackson v. Good Shepherd Servs.*,
683 F. Supp. 2d 290 (S.D.N.Y. 2009)................................................................... 19

*KnowYourMeme.com Network, Inc. v. Nizri*,
No. 22-1322, 2023 WL 6619165 (2d Cir. Oct. 11, 2023)........................................... 34

*Life Receivables Tr. v. Syndicate 102 at Lloyd's London*,
549 F.3d 210 (2d Cir. 2008)........................................................................... 35

*M/S Bremen v. Zapata Off-Shore Co.*,
407 U.S. 1, 92 S. Ct. 1907 (1972)....................................................................... 34

*Mangouras v. Squire Patton Boggs*,
980 F.3d 88 (2d Cir. 2020)................................................................................ 27

*Matter of Hinote*,
179 F.R.D. 335 (S.D. Ala. 1998) ...................................................................... 26

*Mees v. Buiter*,
793 F.3d 291 (2d Cir. 2015)................................................................................ 28

*Melohn v. Stern*,
No. 20-CV-05536 (PMH), 2021 WL 1178132 (S.D.N.Y. Mar. 29, 2021)............................... 16

*Pishevar v. Fusion GPS*,
  2025 WL 885115 (D.D.C. Mar. 21, 2025) ................................................................... 29

*Royal & Sun All. Ins. Co. of Canada v. Century Int'l Arms, Inc.*,
  466 F.3d 88 (2d Cir. 2006) ........................................................................................... 39

*Slater v. Mexican Nat'l R. Co.*,
  194 U.S. 120 (1904) ...................................................................................................... 33

*United States v. Perez-Vasquez*,
  No. 5:25-CR-0086-GTS-1, 2025 WL 1248651 (N.D.N.Y. Apr. 22, 2025) ............... 25

*United States v. Taylor*,
  11-CR-0290, 2025 WL 914064 (W.D.N.Y. March 26, 2025) .................................... 25

*Venequip, S.A. v. Mustang Mach. Co.*, LLC,
  2022 WL 3951173 (S.D. Tex. Aug. 30, 2022),
  *aff'd sub nom.*, 2023 WL 5031480 (5th Cir. Aug. 7, 2023) ..................................... 36

*Viking River Cruises, Inc. v. Moriana*,
  596 U.S. 639, 653 (2022) .............................................................................................. 34

*Vital Farms, Inc. v. Tanz*,
  2023 WL 8782321 (S.D.N.Y. Dec. 19, 2023) .............................................................. 22

*ZF Automotive US, Inc. v. Luxshare, Ltd.*,
  596 U.S. 619 (2022) ...................................................................................................... 39

## <u>Rules</u>

Rule 26(b)(1) ..................................................................................................................... 22

Rule 27 ...................................................................................................................... passim

Rule 45 ............................................................................................................... 1, 8, 22

## PRELIMINARY STATEMENT

Respondents, Schottenstein Pain and Neuro PLLC d/b/a NY Spine Medicine ("**NY Spine**") and Dr. Douglas Schottenstein ("**Schottenstein Parties**") now oppose Petitioner, Orthogen International GmbH's ("**Orthogen**") motion to compel as to the subpoenas served upon the Schottenstein Parties and cross-move to quash the subpoenas or, alternatively, to stay enforcement while an appeal is pending in Germany of a recently entered German Judgment that denied Orthogen substantially the same discovery it seeks through the subpoenas here.

Orthogen's motion fails out of the gate because it sets forth the wrong standard in the first instance. While Fed. Rs. Civ. P. ("**Rules**") 45 and 26 are implicated in connection with any federal subpoena, Orthogen admits that it is seeking pre-suit discovery in connection with an imagined lawsuit that it calls the "Contemplated German Proceeding." The applicable standard for a party to obtain pre-suit discovery in a federal court is set forth in Rule 27. But Orthogen does not event attempt to show that it can meet the criteria to obtain pre-suit discovery.

Second, even if Orthogen could somehow circumvent Rule 27's strictures, the subpoenas would still need to be quashed under Rules 45 and 26 because there is no "claim" or "case" by which to evaluate whether the pre-suit discovery sought is "relevant" or "proportional" as required by Rule 26, which governs the application of Rule 45. Orthogen takes the view that its "Petition" seeking 1782 discovery can plug this hole. But that is incorrect. There is a mandatory and exclusive forum selection clause prescribing that all disputes be brought in Germany, which are to be governed by the German Code of Civil Procedure, the *Zivilprozessordnung* ("**ZPO**"). The "Petition" here is not a *Klage* [complaint] under German law and therefore, there is no formal legal instrument setting forth a *Klageschrift* [Statement of Claim], as required by German law and the forum selection clause. But if Orthogen were correct that its Petition for discovery

-1-

was a pleading of a claim, the consequence of having filed a "claim" in a U.S. court would mean that Orthogen has waived the shield of the forum selection clause and is immediately amenable to suit in the U.S. by the Schottenstein Parties.

Third, the subpoenas should be quashed because to permit them to be enforced —under threat and penalty of contempt — invades the Schottenstein Parties' liberty interests under the forum selection clause by wholesale stripping them of their substantive and procedural rights under German law that they bargained to have govern any dispute between them.

Fourth, in the alternative, the Court should stay enforcement of the subpoenas because a German Court has just entered a judgment, which Orthogen is appealing, and which denied Orthogen's request for discovery. The animating purpose of 28 U.S.C. § 1782 is "comity" — respect for foreign nations. A German court has now ruled that Orthogen should have no discovery from the Schottenstein Parties. The only path by which the value of international comity can be vindicated is to stay enforcement while the German appellate court considers the matter in an orderly fashion, consistent with the parties' rights under German law.

**THE GERMAN CONTRACT AT ISSUE AND THE ABSENCE OF ANY ADMISSIBLE FACTS OR PLEADINGS**

**A.** **The Petition and the 2014 License Agreement**

On May 4, 2023, Orthogen commenced a 1782 upon a two-page Petition supported by a memorandum of law and two inadmissible hearsay declarations by two attorneys with no personal knowledge of the facts.

Orthogen's lawyers having saying for over two years that Orthogen is contemplating filing in Germany a lawsuit against the Schottenstein Parties in connection with a dispute between them under a license agreement executed on June 1, 2014 and styled as the "STANDARD REGOKINE PROGRAM LICENSE AGREEMENT." ("**2014 Agreement**" or

"**License Agreement**")). (*See* 23-ECF # 5-5, at p.1; 24-ECF # 12-4, at p.1).[1]

Orthogen refers to this phantasmic plenary proceeding it alleges it will one-day commence in Germany as the "<u>Contemplated German Proceeding</u>." (*See* 23-ECF # 3, p. 1 [Mem. of Law]; 23-ECF #5 ¶ 1 [Kruger Decl.]; 24-ECF #10, p. 1 [Mem. of Law]; 24-ECF # 12, ¶ 1 [Kruger Decl.]).

Under the License Agreement, Orthogen licensed to the Schottenstein Parties and non-party Edward Capla the rights to offer and sell Regenokine brand medical treatments as part of NY Spine's business, which treats joint injuries and related ailments. The term of the license was potentially perpetual and would have continued for at least as long as the patents supporting Regenokine remained in force, which are not due to lapse until approximately 2030.

The imaginary lawsuit will supposedly concern alleged breaches of the 2014 License Agreement as well as claims arising in connection with three prior license agreements: (1) a May 2011 License Agreement between Orthogen and Capla, to which the Intervenors are not parties ("**2011 Capla Agreement**"); (2) an October 2012 License Agreement between Orthogen on the one hand, and Capla and Schottenstein on the other hand ("**2012 Agreement**"); (3) an alleged September 2013 License Agreement ("**Alleged 2013 Agreement**"); and (4) the 2014 License Agreement between Orthogen, Capla, and Schottenstein, which expressly "***replaces and supersedes all prior agreements***" between Orthogen, Capla, and Schottenstein (*see* Art. 15.2).

The gist of Orthogen's alleged allegations is that it believes royalty reports submitted by Capla underreported the amount of *Regenokine* "Treatments," which is a defined term under the 2014 License Agreement. Under the terms of the 2014 License Agreement, the royalty payments

---

1    Orthogen contends that it does not intend to sue NY Spine in the Contemplated German Proceeding. The Schottenstein Parties have no reason to take that statement at face value or give it any credence. Nothing has prevented Orthogen from sending NY Spine a general released signed by an authorized officer of Orthogen these past two years. But that has not been forthcoming.

were set at a fixed amount per "Treatment," according to the following pricing schedule:

> For the licenses granted hereunder the LICENSEES shall pay the following license fees for every TREATMENT:
>
> (i) TREATMENT of the spine: US$ 5,000;
>
> (ii) TREATMENT of one joint: US$ 4,000;
>
> (iii) TREATMENT of one muscle: US$ 4,000;
>
> (iv) TREATMENT of one tendon: US$ 4,000; and
>
> (v) TREATMENT of each further joint, muscle and/or tendon: US$ 2,000.

(*See* Ex. A [Art. 3.1]).

In support of its allegations that it will at some point allege in Germany lawsuit a claim for breach of contract and fraud, Orthogen offers nothing more than rank speculation by a German attorney that Orthogen was wronged. The majority to the alleged allegations assume that the percentage-based royalty applies subsequent to the 2014 Agreement, which superseded them. (Kruger Decl. ¶¶ 9, 28, 30, 31). There is no foundation laid for Kruger having any expertise in the development of such speculative damages models. Nor does he lay any foundation that would tend to show he has any personal knowledge of the royalty reports or payments or the parties' course of dealing and conduct. Rather, Kruger offers wild statements like, "Alternatively, if the $96 million represents Mr. Capla's and Dr. Schottenstein's proper share of the total fees collected (*i.e.,* 60%), that would mean that a total of $160 million in fees were collected from Regenokine patients, of which $64 million (*i.e.,* 40%) should have been paid to Orthogen." (*Id.*, ¶ 31).

Only two things are established by Kruger's Declaration. First, his representation two years ago that Orthogen "intends to file" a lawsuit alleging claims for breach and fraud is clearly false — as Orthogen has not done so. Second, Orthogen is simply unhappy with the bargain it struck — as is clear by the repeated and misleading references to the 40% royalty rate and how

much Orthogen would have made under that formula were it not in fact under the fixed-rate provisions of the 2014 Agreement. In the end, Orthogen's Petition amounts to lament that it thinks it should have negotiated different terms.

**B. <u>Article 13 of the 2014 License Agreement</u>**

On December 22, 2022, the Schottenstein Parties sued Orthogen and others (including Edward Capla) in federal court in the Southern District of New York ("**SDNY**"), alleging breaches of the License Agreement in connection with Orthogen's wrongful termination of the Schottenstein Parties' license in or around 2022 and for the diversion of NY Spine's business and patients. *See Schottenstein et al. v. Capla, et al.*, Case No. 1:22-cv-10883 (S.D.N.Y.) (Castel, J.) ("**SDNY Plenary Action**," cited as "22-ECF #_"). (22-ECF #1). The Schottenstein Parties allege, among other things, that Orthogen wrongfully terminated the License Agreement and that Edward Capla and his wife Yolanda Capla (the "**<u>Caplas</u>**"), who were also licensees under the License Agreement, converted NY Spine's patient lists and financial information, resulting in the diversion of patients to another medical practice and injury to the Schottenstein Parties. (*See id*.).

Orthogen moved on February 2, 2024 to dismiss the claims asserted against it in a Third Amended Complaint filed in the SDNY Plenary Action. The primary basis for the motion was the mandatory forum selection clause contained in Article 13 of the 2014 License Agreement . (22-ECF #115-18), which provides in full:

**Article 13**
**Governing Law**

13. 1.   This AGREEMENT as well as all claims raised by the PARTIES in connection with this AGREEMENT **shall be governed by and interpreted under the laws of the Federal Republic of Germany,** excluding its conflict of law provisions. The United Nation's Convention on the Sale of Goods shall not apply.

13.2.  **Any dispute arising from or in connection with this AGREEMENT**

**shall be decided exclusively by the competent Courts of Düsseldorf, Germany**. **For the avoidance of doubt**, **the Courts of Düsseldorf, Germany shall also have the *exclusive jurisdiction* for any and all actions** brought by any of the LICENSEES against any employee of the LICENSOR and/or any other third party acting on behalf or in the interest of the LICENSOR in connection with this AGREEMENT, including, without limitation, Prof. Dr. Peter Wehling and/or any other board member or representative of ORTHOGEN AG or an affiliated company (together "PROTECTED  THIRD PARTIES"), cumulatively or individually. **For the avoidance of doubt, the LICENSEES and the LICENSOR hereby irrevocably waive their right to a trial and/or a jury trial before any court other than the Courts of Düsseldorf with regard to any dispute arising out of or in relation to this AGREEMENT**.

13.3.  As an exemption to Article 13.2. above, if any of the LICENSEES violates his contractual obligations under this AGREEMENT, LICENSOR may seek restraining orders or other orders for injunctive relief from a court at the place of residence of the respective LICENSEE or at the place of residence of the MEDICAL PRACTICE. For the avoidance of doubt, this clause does not extend to claims for payment or any claims other than claims for injunctive relief. If LICENSOR takes court action against any of the LICENSEES in accordance with this Article 13.3., the LICENSEES shall be barred from raising counter-claims against LICENSOR; for the avoidance of doubt, LICENSEES' ability to raise defenses in the court action brought by LICENSOR shall not be limited.

(SSD, Ex. A, at p. 23-24) (emphasis added)

Ultimately, consistent with Article 13, the Schottenstein Parties voluntarily dismissed Orthogen (and its privies) from the SDNY Plenary Action without prejudice on June 13, 2024. While the Caplas had also moved to dismiss, their motion was granted in part and denied in part, and the Schottenstein Parties are currently taking discovery in that case.

## PROCEDURAL HISTORY AND RELATED LITIGATIONS IN THE U.S. AND GERMANY

On December 21, 2021, Orthogen commenced an action in Dusseldorf, Germany seeking to enforce a cease-and-desist letter concerning Schottenstein's use of the Regenokine process after Orthogen wrongfully terminate the 2014 License Agreement ("**First Dusseldorf Action**").

(SSD, Ex. C).[2] Significantly here, Orthogen also expressly sought as a remedy in its *Klage* disclosure in connection with the 2014 License Agreement in the form of a "uniform, structured register and specifying:"

      a. "the number of patients he treated with the Regenokine Program Therapy";

      b. "the number of treatments per patient (the name of the respective patient need not be provided)";

      c. "the amounts billed per patient (the name of the respective patient need not be provided)"; and

      d. "type and scope of the use of the 'Regenokine' brand name in advertising materials or any other communication directed to existing or potential patients by month."

(DDS, Ex. C, p.2, ¶ 2).

On May 4, 2023, Orthogen commenced the 1st SDNY 1782 proceeding *ex parte* and sought to serve pre-suit discovery subpoenas on the Schottenstein Parties themselves in connection with the allegedly Contemplated German Proceeding.

That same day, on May 4, 2023, Orthogen filed a ***second ex parte*** application under 1782 in the federal court for the Southern District of Florida seeking pre-suit discovery from Edward Capla and his wife Yolanda Capla also in connection with the allegedly Contemplated German Proceeding. *See In re Application of Orthogen International GMBH*, Case No. 9:23-cv-80743-DMM (S.D.Fla.) ("**Florida 1782**"). (23-ECF #36-8, ¶¶ 79-80; 24-ECF ).

The Schottenstein Parties opposed the 1st SDNY 1782 and focused their briefing on the pendency of the SDNY Plenary Action. (23-ECF ## 14, 15). Edward Capla opposed Orthogen in Florida. Ultimately, the Florida federal district court granted Orthogen's application and the

---

2    The Schottenstein Parties were not served in this case until well after they had commenced the SDNY Plenary Action.

Caplas were subjected to pre-suit Rule 45 discovery. *See In re Orthogen Int'l GMBH*, No. 23-CV-80743, 2023 WL 8418969 (S.D. Fla. Nov. 28, 2023), *appeal dismissed sub nom. Orthogen Int'l GmbH v. Schottenstein*, No. 24-10411-JJ, 2024 WL 2012315 (11th Cir. Apr. 4, 2024).

On July 7, 2023, Orthogen filed a pre-motion letter in the SDNY Plenary Action giving notice that it intended to move to dismiss the claims against it in that plenary action principally on the ground of a forum selection clause contained in Article 13 of the License Agreement. (22-ECF # 62).

On February 2, 2024, Orthogen moved in the SDNY Plenary Action to dismiss the claims asserted against it in the Schottenstein Parties' Third Amended Complaint. (22-ECF #115-18). The primary basis for Orthogen's motion to dismiss was the mandatory forum selection clause contained in Article 13 of the 2014 License Agreement. Ultimately, and in the Schottenstein Parties' view, consistent with Article 13, the Schottenstein Parties voluntarily dismissed Orthogen (and its privies) from the SDNY Plenary Action without prejudice on June 13, 2024 under Fed. R. Civ. P.41(a)(1)(A)(i). (22-ECF # 129; *see also* 23-ECF #36-8, ¶ 73; 24-ECF #15-2, ¶ 73).

By June 2024, the District Court (Broderick, J.) had still not acted upon Orthogen's petition in the 1st SDNY 1782 proceeding.

On June 20, 2024, Orthogen filed its ***third*** *ex parte* petition under 1782 — this time in the federal court for the Western District of Texas — and sought to serve pre-suit discovery subpoenas upon two former employees of NY Spine (Pearl Chan and Derek Lee). *See In re Application of Orthogen International GMBH*, Case No. 5:24-mc-00687-OLG (S.D.Tex.) ("**Texas 1782**") (Orlando, CJ.). (ECF ## 36-4). The Texas federal court granted Orthogen's *ex parte* application on July 16, 2024, before the Schottenstein Parties had an adequate opportunity

to intervene and be heard. On September 3, 2024, the Schottenstein Parties moved to intervene as

of right under Fed. R. Civ. P. 24 and to stay the *ex parte* order. On October 2, 2024,

Schottenstein Parties submitted a full adversary response and moved to vacate the Texas district

court's *ex parte* order and for a protective order to sequester any documents produced under

color of subpoena. The Texas 1782 proceeding remains pending; no depositions have taken

place; and the Texas court has not yet made any rulings on the Schottenstein Parties' pending

motions.

The Caplas had also moved to dismiss the claims against them in the SDNY Plenary

Action at the same time Orthogen did in February 2024. (22-ECF #113). On September 9, 2024,

the Caplas' motion was granted in part and denied in part (22-ECF #130), and the Schottenstein

Parties and the Caplas are currently in discovery in that case, (22-ECF #136)).

On October 31, 2024 — before the Schottenstein Parties had even finished drafting their

reply brief in support of their motion to vacate the *ex parte* order in Texas, which they filed on

Nov. 12, 2024 (23-ECF # 36-6) — Orthogen filed its ***fourth*** *ex parte* 1782 petition — the 2d

SDNY 1782 proceeding. This fourth 1782 petition seeks to serve pre-suit document and

deposition subpoenas on Edward Capla's parents, Thomas and Judith Capla. (24-ECF ## 1, 5-7

[refiled at ## 9-12).

Orthogen noticed the 2d SDNY 1782 proceeding as a related case and the 2d SDNY 1782

was consequently assigned to Judge Broderick. (24-ECF #3; *see* 23-ECF #32). In its Notice of

Related Case, Orthogen stated:

> Through both of the above-mentioned applications, Orthogen seeks
> discovery for a lawsuit it will be filing in Germany against Dr. Douglas
> Schottenstein and Edward Capla (the "Contemplated German
> Proceeding"), who were licensed by Orthogen to administer Orthogen's
> patented Regenokine Program to patients through Dr. Schottenstein's
> medical practice, Schottenstein Pain & Neuro PLLC ("NY Spine").

(24-ECF #3, p. 2).

On November 7, 2024, the District Court entered a docket notation that the 2d SDNY 1782 had been "ACCEPTED AS RELATED" and associated with the 1st SDNY 1782. (11/7/24 Minute Entry [No ECF #]).

On or about December 3, 2024, Orthogen filed a second action in Germany against Schottenstein, this time for allegedly breaching the forum selection clause contained in Article 13 of the 2014 License Agreement. ("**Second Dusseldorf Action**"). A copy of the *Klage* is annexed the Scarcia-Scheel Declaration as Exhibit I.

On December 31, 2024, the Schottenstein Parties moved to intervene as of right in the 2d SDNY 1782 under Fed. R. Civ. P. 24 and they filed a Plea in Intervention asserting five counterclaims against Orthogen: (1) damages for breach of the forum selection clause, which is an actionable breach under German law; (2) in the alternative, for declaratory relief that Orthogen had waived the shield of the forum selection clause by its 1782 proceedings and was now amendable to suit in the United States; (3) dismissal for failure to meet the second statutory requirement under 1782 because discovery sought for use in a "Contemplated German Proceeding" is not discovery "for use in a foreign or international tribunal"; (4) dismissal on the ground of *forum non conveniens* under the Supreme Court's holding in *Atlantic Marine Construction Co., Inc. v. United Sates District Court for the Western District of Texas*, 571 U.S. 49 (2013), because the mandatory forum selection in the 2014 Agreement precludes consideration of any "private interest" factors in connection with an application for 1782 discovery; and (5) dismissal on the ground that a grant of a petition on the basis of a "Contemplated German Proceeding" would give rise to an *as-applied* challenge under the Equal Protection Clause because it would create two arbitrary classes of people with radically unequal

rights of access to pre-suit discovery under Fed. R. Civ. P. 45 — those imagining lawsuits in foreign lands and those imagining lawsuits in the United States — with the latter having no rights of pre-suit discover under Fed. R. Civ. P. 45 and the former having access upon the most minimal showing — which classification cannot survive even rational basis scrutiny. (*See* 24-ECF #15-2; 23-ECF #36-8).

Orthogen filed its opposition to the motion to intervene on January 28, 2025. (24-ECF #18-19). The Schottenstein Parties filed their reply brief on February 18, 2025. (24-ECF #20).

On February 24, 2025, counsel for Orthogen sent a pre-motion letter to the District Court requesting a conference and explaining that Orthogen intended to move the District Court to expedite its determination of the Petitions. (23-ECF #37; 24-ECF #21).

No conference was scheduled by the District Court.

Rather, on February 28, 2025 — before the Schottenstein Parties had had an adequate opportunity to respond the pre-motion letter — the District Court issued an Opinion and Order granting Orthogen's petition in the 1st SDNY 1782 to serve subpoenas on the Schottenstein Parties ("February Order"). (23-ECF #35).

The Schottenstein Parties timely moved on March 14, 2025, under Rule 60(b)(1), asserting mistake of law. (23-ECF #36).

On April 9, 2025, Schottenstein filed filed a notice to defend. and announced to file a counterclaim for damages for breach of the forum selection clause by reason of Orthogen's commencement and continuation of the four proceedings in the United States pursuant to 28 U.S.C. § 1782(a). (SSD ¶ 55, Ex., J).

On April 30, 2025, the District Court denied the Schottenstein Parties' Rule 60(b)(1) motion ("**First April Order**"). (23-ECF #40).

On April 30, 2025, the District Court granted Orthogen's application to issue subpoenas to Tomas and Judith Capla in the 2d SDNY 1782 ("**Second April Order**"). (24-ECF #23). The District Court granted Dr. Schottenstein's motion to intervene, but denied the motion as to NY Spine, and then determined that Dr. Schottenstein's counterclaims were futile. (*Id*.).

The Schottenstein Parties timely noticed appeals in both proceedings on May 14, 2025, and paid the filing fee at that time. (23-ECF #44; 24-ECF #24).

On June 5, 2025, the German court in the First Dusseldorf Action issued a Judgment specifically denying Orthogen's request for discovery: "**The Plaintiff is no longer entitled to a contractual claim for disclosure of information pursuant to Section 242 BGB in connection with the License Agreement of June 1, 2014 ….** The asserted claim for disclosure of information about the further use of the Regenokine therapy has thus been fulfilled by performance pursuant to section 362 BGB. The Plaintiff has not stated any concrete indications as to why this information should be incorrect or incomplete." (SSD, Ex. D, p. 10) (emphasis added).

The German court also gave Judgment against Orthogen that it is "**not entitled to a declaration of the Defendant's liability for damages with regard to the use of the Regenokine therapy**. The Defendant paid the Plaintiff the usual license fee for the three disclosed therapy applications (see invoice, Annex B1). The Plaintiff has not made any arguments in this regard and there are no indications that it has suffered or will suffer further damages." (*Id*.) (emphasis added).

On June 16, 2025, Orthogen noticed an appeal. (SSD, Ex. E). And on June 16, 2025, Schottenstein also noticed an appeal as to those limited portions adverse to him. (SSD, Ex. F).

For the reason set forth below, the Schottenstein Parties respectfully request that the

Court quash the subpoenas, or alternatively, stay their enforcement during the pendency of the appeal in the First Dusseldorf Action.

## ARGUMENT

**I.    THE SUBPOENAS SHOULD BE QUASHED BECAUSE ORTHOGEN HAS FAILED TO MEET ITS HEAVY BURDEN UNDER FED. R. CIV. P. 27 TO CONDUCT PRE-SUIT DISCOVERY**

"The Federal Rules of Civil Procedure generally do not allow for pre-suit discovery." *Associacao dos Profissionais dos Correios v. Bank of New York Mellon Corp.*, No. 22-MC-0132 (RA) (KHP), 2022 WL 4955312, *7 (S.D.N.Y. Oct. 4, 2022) (Parker, U.S.M.J.) (citing Fed. R. Civ. P. 27(a) )("describing limited circumstances in which pre-suit discovery might be permitted"), *rep. and rec. adopted as modified sub nom.*, 2024 WL 4299019 (S.D.N.Y. Sept. 25, 2024).

Here, there is no question that the discovery sought is pre-suit discovery as the Petition is expressly predicated upon the so-called Contemplated Germany Proceeding. Thus, a "fundamental problem exists with regard to the Petition. Courts generally agree that to allow Rule 27 to be used for the purpose of discovery before an action is commenced to enable a person to fish for some ground for bringing suit would be 'an abuse of the rule.'" *In re Landry-Bell*, 232 F.R.D. 266, 267 (W.D. La. 2005) (quoting Wright, Miller & Marcus, Federal Practice and Procedure, § 2071 at 651-652). Thus, for example, "Rule 27 does not allow for pre-suit discovery in order to determine compliance with Rule 11." *Id.*, (citing *In re Petition of Ford*, 170 F.R.D. 504 (M.D.Ala.1997)).

"Rule 27 simply authorizes the perpetuation of evidence, not the discovery or uncovering of it." *Id.* (citing *In Application of Eisenberg*, 654 F.2d 1107 (5th Cir.1981). "**A person contemplating litigation has no absolute entitlement to early discovery under Rule 27**.

-13-

Moreover, the refusal to permit discovery prior to the institution of a suit is a ruling with only temporary application. The petitioner is free to seek discovery once the anticipated action has been filed." *Id*. (citing *In re Chester County Electric, Inc*., 208 F.R.D. 545 (E.D.Pa.2002) (citing cases). "**The overwhelming weight of authority simply does not authorize the use of Rule 27 to conduct the type of pre-suit discovery Petitioner requests herein**." *Id*. (citing Wright, Miller & Marcus, supra, pp. 652-653, n. 7 (collecting cases)).

While Orthogen begins its argument with a discussion of non-binding authority that apparently holds a 1782 petition itself may function as a formal pleading, (which we will address below), and then endeavors to show that the discovery sought is relevant and proportionate to something called "anticipated claims," it never addresses the standard or the showing required to obtain pre-suit discovery under Rule 27, which is the only rule that contemplates pre-suit discovery.

It is settled law that "**pre-suit procedures for perpetuating testimony (or, by implication, perpetuating documentary evidence) are not a substitute for discovery in a filed lawsuit**." *Bryant v. Am. Fed'n of Musicians of the U.S. & Canada*, No. 14 CV. 2598 PAC MHD, 2015 WL 3644075, *5 (S.D.N.Y. June 1, 2015) (emphasis added), *rep. and rec. adopted sub nom*., No. 14 CIV. 2598 (PAC) (HBP), 2015 WL 7301076 (S.D.N.Y. Nov. 18, 2015), *aff'd sub nom*., 666 F. App'x 14 (2d Cir. 2016) (citations omitted). "It is available in special circumstances to preserve testimony which could otherwise be lost." *Id*. (citations omitted). "This limitation is reflected in the requirement of Rule 27(a) that the petitioner specify that she 'expects to be a party to an action cognizable in' a federal court 'but cannot presently bring it'. It is also embodied in the requirement that the petitioner demonstrate that denial of prompt perpetuation of the testimony or other evidence threatens 'a failure or delay of justice',

-14-

Fed.R.Civ.P. 27(a)(3), as well as the requirement that the petitioner 'must set forth in some detail the substance of the testimony [or other evidence] it needs to preserve.'" *Id*. (citations omitted). "**As these requirements suggest, a Rule 27 petition must meet more stringent pleading requirements than a civil complaint**." *Id*., *6 (emphasis added) (citing *Application of Deiulemar Compagnia Di Navigazione S.p.A. v. M/V Allegra*, 198 F.3d 473, 485–87 (4th Cir.1999) (describing the specific requirements of Rule 27 applications); *In re McBean*, No. 12-CV-00579-MSK-KLM, 2012 WL 769521, 2 (D. Colo. Mar. 8, 2012) ("satisfaction of a pleading standard is not an accepted basis for granting a Rule 27 petition.")); *see also Bryant*, 666 F. App'x at *16 ("Bryant failed to demonstrate the requisite need to "perpetuate" documents or inability "presently [to] bring" a federal action to which the documents pertain."); *In re Petition of Allegretti*, 229 F.R.D. 93, 96 (S.D.N.Y. 2005) (observing that Rule 27(a) "cannot be used to discover evidence for the purpose of filing a complaint").

"In order to prevail on their Rule 27 petition, the petitioners must satisfy three elements. First, they must furnish a focused explanation of what they anticipate any testimony would demonstrate. ***Such testimony cannot be used to discover evidence for the purpose of filing a complaint***." *Allegretti*, 229 F.R.D. at 96 (emphasis added). "Second, they must establish in good faith that they expect to bring an action cognizable in federal court, but are presently unable to bring it or cause it to be brought." *Id*. "Third, petitioners must make an objective showing that without a Rule 27 hearing, known testimony would otherwise be lost, concealed or destroyed." *Id*.

But there are procedural obstacles even before the three elements can be considered, which Orthogen fails to meet.

"First, despite Rule 27(a)(1)'s command that the petition be verified, neither the

Amended Petition nor its predecessor comply with this directive." *Melohn v. Stern*, No. 20-CV-05536 (PMH), 2021 WL 1178132, *4 (S.D.N.Y. Mar. 29, 2021). There is no declaration supporting the Petition here by a person with knowledge. There are two declarations by two lawyers with no personal knowledge of the alleged allegations.

Additionally, "Rule 27(a)(2) requires that the petition be served '[a]t least 21 days before the hearing date' along with 'a notice stating the time and place of the hearing.'" *Id.* "Based on the docket, Petitioner never served Respondents with a notice providing the time and place of the hearing—nor could [it], as Petitioner" commenced this proceeding *ex parte*. *See id.* "These procedural failures to comply with the text of Federal Rule of Civil Procedure 27 are, by themselves, reasons to deny the relief sought." *Id.*

Turning to the three elements, the motion shows satisfaction of none.

The first element asks Petitioner to provide "a focused explanation of what [he] anticipate[s] any discovery would demonstrate." *Bryant*, 666 F. App'x at 16 (internal quotation marks omitted). "**This requires that Petitioner 'know the substance of the testimony to be preserved' before invoking Rule 27**." *Melohn*, 2021 WL 1178132, *4 (emphasis added) (quoting *In re Yamaha Motor Corp.*, U.S.A., 251 F.R.D. 97, 99 (N.D.N.Y. 2008)). "**The testimony sought 'cannot be used to discover evidence for the purpose of filing a complaint.'**" *Id.* (emphasis added) (quoting *In re Holmes*, No. 15-MC-56, 2017 WL 4324685, at *2 (W.D.N.Y. Sept. 29, 2017) (quoting *In Re Allegretti*, 229 F.R.D. at 96); *Falco v. Santoro*, No. 17-MC-0440(JS), 2017 WL 4480759 (E.D.N.Y. Sept. 29, 2017) ("Rule 27 may not be used for the purpose of discovery before action is commenced to enable parties to fish for some ground for bringing suit.").

Here, the Petition makes no attempt at a showing the substance of the testimony it wishes

-16-

to perpetuate because its goal is a fishing expedition. Attempting to style vice as virtue, Orthogen

explains in non-pleading hearsay statements that "Orthogen intends to initiate a lawsuit against

Mr. Capla and Dr. Schottenstein in Germany (an indisputably proper venue for such a lawsuit

under the terms of the license agreements), in which it plans to assert claims for breach of

contract and fraud. To further develop the facts for purposes of the Contemplated German

Proceeding, Orthogen seeks discovery through this Petition from Dr. Schottenstein and his

practice, NY Spine, that is highly relevant to its anticipated claims." (23-ECF #3, p. 3). This falls

woefully short of the showing required here. *See Melohn*, 2021 WL 1178132, *5 ("it is as clear

as a bell that Petitioner intends, impermissibly, to use Rule 27 as a discovery device. Petitioner

has, accordingly, failed to make the showing required for the first element.").

      Even if Orthogen could meet the first element, it cannot meet the second element, which

requires that the Petitioner "establish in good faith that [he] expect[s] to bring an action

cognizable in federal court, but [is] presently unable to bring it or cause it to be brought." *Bryant*,

666 F. App'x at 16 (internal quotation marks omitted). This element requires that Petitioner:

> **show a present inability to bring the action in any court**, state or federal,
> anywhere in the United States. A petitioner does not demonstrate inability to
> presently file suit under Rule 27(a) by showing only that suit cannot then be filed
> in the district of petitioner's choice or against all desired defendants. **The rule
> insists on necessity and is not met by convenience or tactical preferences.
> There must be a true inability to bring any action at the time the petition is
> presented**.

*Melohn*, 2021 WL 1178132, *5 (quoting 6 Moore's Federal Practice – Civil § 27.13 (2021))

(emphasis added).

      The second element "is not satisfied by showing that the claim cannot be brought because

... it would be difficult or inconvenient to sue, and concern[s] about the sufficiency of ... the

future cognizable action is not a valid impediment." *Falco*, 2017 WL 4480759, at *3 "**The**

**barrier to suit must be an inability to bring the action—typically some external barrier**

**outside the party's control—not an inability to support the claims that otherwise freely could be brought**." *Melohn*, 2021 WL 1178132, *5 (emphasis added) (quoting Steven S. Gensler & Lumen N. Mulligan, Depositions to Perpetuate Testimony, 1 Federal Rules of Civil Procedure, Rules and Commentary Rule 27 (Feb. 2021). In short, "**Rule 27 cannot be satisfied by contentions that it would ... be difficult or inconvenient ... to file suit[.]**" *Id.*, (quoting Federal Practice and Procedure § 2072) (emphasis added)..

The Petition makes no showing as to why a *Klage* cannot be filed now in Germany — other than Orthogen is afraid it will lose on the merits. (See 23-ECF #3, p. 12-13 ("Under the rules governing German civil actions, Orthogen would be unable to compel Dr. Schottenstein to sit for a deposition or to compel him or his practice to produce relevant documents in their possession. … In a worst-case situation (under either of the above scenarios), the court could decline to enter a judgment for Orthogen altogether."). But this is not a cognizable reason capable of satisfying the showing required under Rule 27. *See Melohn*, 2021 WL 1178132, *5 ("The Amended Petition lacks any explanation about why the contemplated RICO action cannot be brought now aside from the claim that Petitioner cannot name all possible actors at this juncture. Separately, Petitioner states that he 'cannot commence an action at the present time with the particularity and specificity required for the prospective causes of action because Petitioner does not know the identities of the John Doe Respondents' and that he "requires the true identity of the [John Doe] Respondents and the particularities surrounding the transactions ... in order to properly commence the action....' As such, Petitioner has not made the showing required to establish the second element and, moreover, has revealed that discovery is needed to commence the action he seeks to bring.")

Even if the Court concluded that Petitioner made the showing required under the first two

elements," the Petition "fails also to provide 'an objective showing that without a Rule 27 hearing, known testimony would otherwise be lost, concealed, or destroyed.'" *Melohn*, 2021 WL 1178132, *6 (quoting *Bryant*, 666 F. App'x at 16). "For this element, 'a petitioner must make a *particularized showing* **that intervention prior to commencement of an action is necessary to preserve the subject evidence**,' and that 'time is of the essence,'" *Id*. (emphasis added) (quoting *In re Petition of John W. Danforth Grp., Inc.*, No. 13-MC-33, 2013 WL 3324017, at *2 (W.D.N.Y. July 1, 2013) (collecting cases) and *In re Petition of Austin*, No. 13 MISC. 252, 2013 WL 5255125, *1 (S.D.N.Y. July 16, 2013). "Phrased another way, Petitioner must demonstrate that there is a 'sufficient risk that the testimony and other materials would be lost absent Rule 27 discovery.'" *Id*. (quoting *Jackson v. Good Shepherd Servs*., 683 F. Supp. 2d 290, 293 (S.D.N.Y. 2009); *see also Wetzelberger*, 2012 WL 4328398, at *2 (noting that Rule 27 may be invoked "only to preserve specific testimony or data that may imminently be lost").

Here, Orthogen has not — because it cannot — make any such showing.

In short, even if it had tried, Orthogen would fail to have made the required showing to obtained pre-suit discovery. Having failed to make the required showing, the subpoenas seeking pre-suit discovery must be quashed.

## II.    THE SUBPOENAS SHOULD BE QUASHED BECAUSE, AS A MATTER OF LAW, THEY DO NOT SEEK ANY INFORMATION CONCERING A "CLAIM" OR A "CASE" — AND THUS, DO NOT SEEK INFORMATION THAT IS RELEVANT OR PROPORTIONAL TO ANYTHING.

### A.    *Intel* and Its Focus on the Fact that AMD Had Filed a Formal "Complaint" with DG-Competition

Orthogen asserts that it "has not found a single case where a court even suggested, much less held, that 1782 discovery requests were not relevant or proportional because the petitioner had not yet initiated the contemplated foreign proceeding. Such a holding would render

meaningless the Supreme Court's holding in *Intel* and its Second Circuit progeny allowing 1782 discovery for contemplated foreign proceedings. Accordingly, the relevance and proportionality of the Requests here appropriately is analyzed by reference to Orthogen's anticipated claims for breach of contract and fraud against Dr. Schottenstein and Mr. Capla in the Contemplated German Proceeding." (Br. at 20).

This is wrong. Orthogen does not — because it cannot — point to a single authority that is binding upon this Court that has ever held that something called "anticipated claims" — which has no meaning under either the Federal Rules or German law.

Indeed, the two opening two sentences of the Supreme Court's opinion in *Intel* fatally undercut Orthogen's contention:

> This case concerns the authority of federal district courts to assist in the production of evidence for use in a foreign or international tribunal. In the matter before us, respondent Advanced Micro Devices, Inc. (AMD), **filed an antitrust complaint** against petitioner Intel Corporation (Intel) with the Directorate–General for Competition (DG–Competition) of the Commission of the European Communities (European Commission or Commission). **In pursuit of that complaint**, AMD applied to the United States District Court for the Northern District of California, invoking 28 U.S.C. § 1782(a), for an order requiring Intel to produce potentially relevant documents. Section 1782(a) provides that a federal district court "may order" a person "resid[ing]" or "found" in the district to give testimony or produce documents "for use in a proceeding in a foreign or international tribunal ... upon the application of any interested person."

*Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 246, 124 S. Ct. 2466, 159 L. Ed. 2d 355 (2004). The Supreme Court repeatedly referred to the fact that a formal complaint had been filed — which both gave rise to "significant procedural rights" on the part of AMD and Intel; and that the proceeding in which those "significant procedural rights" arose was subject to judicial review as a matter of right. The Supreme Court variously stated:

- "In October 2000, AMD <u>filed an antitrust **complaint**</u> with the DG–Competition of the European Commission." *Id*., 250.

- <u>AMD's **complaint** alleged</u> that Intel, in violation of European competition law, had abused its dominant position in the European market through loyalty rebates, exclusive purchasing agreements with manufacturers and retailers, price discrimination, and standard-setting cartels." *Id*., 250.

- "AMD asserted that it sought the materials in connection with the **complaint** it had filed with the European Commission." *Id*., 251.

- "<u>On receipt of a **complaint**</u> or *sua sponte,* the DG–Competition conducts a preliminary investigation. In that investigation, the DG–Competition 'may take into account information provided by a complainant, and it may seek information directly from the target of the **complaint**.' Ultimately, DG Competition's preliminary investigation results in a formal written decision <u>whether to pursue the **complaint**</u>." *Id*., 254.

The discussion of AMD's complaint is not dicta; it is an essential part of the holding. Of critical

significance to the Supreme Court was the fact that:

> [u]ltimately, DG Competition's preliminary investigation results in a **formal written decision** whether to pursue the complaint. If [the DG–Competition] declines to proceed, that decision **is subject to judicial review** by the Court of First Instance and, ultimately, by the court of last resort for European Union matters, the Court of Justice for the European Communities (European Court of Justice).

*Id*. at 246 (emphasis added). On the other hand, "[i]f the DG–Competition decides to pursue the

complaint, it typically serves the target of the investigation with a <u>formal 'statement of</u>

<u>objections'</u> and advises the target of its intention to recommend a decision finding that the target

has violated European competition law." *Id*. at 254. "The target is <u>entitled to a hearing before an</u>

<u>independent officer</u>, who provides a report to the DG–Competition." *Id*. at 254-55. "Once the

DG–Competition has made its recommendation, the European Commission may 'dismiss the

complaint, or issue a decision finding infringement and imposing penalties." *Id*. at 255 (cleaned

up). But critically:  "The Commission's final action dismissing the complaint <u>or</u> holding the

target liable is subject to review in the Court of First Instance and the European Court of

Justice."  *Id*. (emphasis added). While AMD lacked "formal 'party' or 'litigant' status in

-21-

Commission proceedings, the complainant ***has significant procedural rights***. Most prominently, the complainant may submit to the DG–Competition information in support of its allegations, and may seek judicial review of the Commission's disposition of a complaint." *Id.* (emphasis added). Thus, concluded the High Court: "[t]he language of § 1782(a), confirmed by its context, our examination satisfies us, warrants this conclusion: The statute authorizes, but does not require, a federal district court to provide assistance to a complainant in a European Commission proceeding that leads to a dispositive ruling, *i.e.,* a final administrative action both responsive to the complaint and reviewable in court." *Id.*

It is impossible to reconcile Orthogen's position with what the Supreme Court has actually held.

**B.  No *Klage* [Complaint] Setting Forth a *Klageschrift* [Statement of Claim] Has Been Filed With Any German Court. Thus, as a Matter of Law, Orthogen Cannot Meet Its Burden to Show Relevance or Proportionality Under Rules 45 <u>and 26 Because There Is No "Claim" Or "Case" Anywhere</u>**

While deposition and document requests under both Rule 45 and Rule 26 are subject to the overriding relevance requirement of Rule 26(b)(1), "Rule 45 is more restrictive than Rule 26 because it protects the subpoena recipient from an 'undue burden.'" *Vital Farms, Inc. v. Tanz,* 2023 WL 8782321, at *2 (S.D.N.Y. Dec. 19, 2023) (quoting *Berkelhammer v. Voya Institutional Plan Services, LLC,* No. 22-MC-99 (MEG), 2023 WL 5042526, at *2 (D. Conn. Aug. 8, 2023) and Fed. R. Civ. P. 45(d)(1)). Rule 26(b)(1) provides that:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is **relevant to any party's <u>claim</u> or defense** and **proportional to the needs of the <u>case</u>** …..

(emphasis added). "When a party files a motion to compel, it bears the initial burden to show the relevance of the information it seeks." *Huseby, LLC v. Bailey*, No. 3:20-CV-00167 (JBA), 2021

WL 3206776, at *6 (D. Conn. July 29, 2021). Put differently, the party seeking to enforce a subpoena must make "a *prima facie* showing of relevance." *Id.*

Orthogen has failed to make any such showing because there is no "claim" here nor is there any "case."

The term "claim" in Rule 26 must be understood in light of the Rules that precede it — particularly Rules 2, 7, 8, 9, and 12. Rule 2 merged law and equity into the unitary "civil action" and accordingly abolished pleading under the forms of action at law or by bills in equity in favor of a "claim for relief" set forth in a "complaint" as provided for by Rules 7 and 8 (and 9 to the extent a heightened pleading standard is imposed), which is then subject to a variety of challenges under Rule 12.

There is certainly not a "claim" or a "case" under federal law. But nor is there a "claim" or a "case" under German law. Under German law, an action is commenced by the plaintiff's ["Kläger"] filing of a complaint ["Klage"] setting forth a statement of claim ["Klageschrift"] with the competent court of first instance that comports with Section 253 ZPO, which provides:

> Statement of claim
>
> (1) The complaint shall be brought by serving a written pleading (statement of claim).
>
> (2) The statement of claim must include:
>     1.  The designation of the parties and of the court;
>     2.  Exact information on the subject matter and the grounds for filing the claim, as well as a precisely specified petition.
>
> (3) Furthermore, the statement of claim is to provide:
>     1.  Information as to whether, prior to the complaint being brought, attempts were made at mediation or any other proceedings serving an alternative resolution of the conflict were pursued, and shall also state whether any reasons exist preventing such proceedings from being pursued;
>     2.  Wherever the subject matter of the litigation does not consist of a specific amount of money, information on the value of the subject

matter of the litigation insofar as this is relevant for determining whether or not the court has jurisdiction;

    3. And it shall state whether any reasons would prevent the matter from being ruled on by a judge sitting alone.

(4) Moreover, the general regulations as to preparatory written pleadings are to be applied also to the statement of claim.

(5) The statement of claim as well as any other petitions and declarations by a party that are to be served are to be submitted to the court in writing, with the number of copies being enclosed that are required for serving or communicating such documents. Should the statement of claim be filed as a digital document, no copies need be enclosed.

(SSD ¶ 5).

There is no *Klage* here setting forth any *Klageschrift*. Indeed, when given the opportunity to plead "claims" in an answer with a counterclaim designated as such in response to the Schottenstein Parties' SDNY Plenary Action, Orthogen moved to dismiss, insisting that any claim be brought in Germany. (SSD, Ex. I).

And indeed, to the extent Orthogen contends that its *ex parte* Petition asserts a "claim" or "claims" within the meaning of Rule 26(b), then it has necessarily waived any rights under Art. 13, which precludes any claims from being asserted against the Schottenstein Parties in a U.S. court (except in the narrow and limited circumstances set forth in Art. 13.3).

In the absence of a claim, there is no basis upon which to determine whether the information is relevant or proportional to the needs of the case, as there are no pleadings nor any case. The discovery requests here seek pre-suit discovery which is not permitted under U.S. law. *See ACE Am. Ins. Co. v. Keiicmiro*, No. CV 08-476-PHX-MHM, 2008 WL 2264241, *1 (D. Ariz. May 30, 2008) ("The Court is unaware of any authority that would permit it to order prelitigation discovery other than in relation to issues of jurisdiction and venue, including jurisdiction over the person and the legal sufficiency of service of process."); *Wetzelberger v. M*

& T Bank Corp., 2012 WL 4328398, *2; *In re Yamaha Motor Corp., U.S.A.,* 251 F.R.D. 97; *In re*

*Allegretti*, 229 F.R.D. at 96 (S.D.N.Y.2005).

### C. The Authorities Relied Upon By Orthogen Are Not Binding on This Court — Nor Are They Persuasive Authority

"[A] magistrate judge is not bound (pursuant to the doctrine of stare decisis) by a prior

decision by the assigned district judge in another case." *United States v. Perez-Vasquez*, No.

5:25-CR-0086-GTS-1, 2025 WL 1248651, *9 (N.D.N.Y. Apr. 22, 2025) (citing *Am. Elec. Power*

*Co., Inc. v. Conn.*, 564 U.S. 410, 428, 131 S.Ct. 2527, 180 L.Ed.2d 435 (2011) ("[F]ederal

district judges, sitting as sole adjudicators, lack authority to render precedential decisions binding

other judges, even members of the same court."); *Camreta v. Greene*, 563 U.S. 692, 709 n.7, 131

S.Ct. 2020, 179 L.Ed.2d 1118 (2011) ("A decision of a federal district court judge is not binding

precedent in ... the same judicial district [upon any judges, including magistrate judges] ....")

(internal quotation marks omitted; emphasis added; citing 18 J. Moore et al., Moore's Federal

Practice § 134.02[1][d] [3d ed. 2011] [citing cases at n.22]).

"Nor is a magistrate judge bound (pursuant to the doctrine of stare decisis) by a prior

decision by another district judge sitting in the same district." *Id.* (citing *Camreta*, 563 U.S. at

709 n.7, 131 S.Ct. 2020; *United States v. Taylor*, 11-CR-0290, 2025 WL 914064, at *1

(W.D.N.Y. March 26, 2025) (McCarthy, M.J.) ("I recognize that District Judge Meredith Vacca

has reached the contrary conclusion [in another case] ..., and that District Judge Lawrence J.

Vilardo is currently reviewing my decision in Wade. Nevertheless, a decision of a federal district

court judge is not binding precedent in either a different judicial district, the same judicial

district, or even upon the same judge in a different case .... Therefore, I am obliged to give the

matter presented to me for decision my best independent reading of applicable law, regardless of

whether that reading accords with that of my superiors.") (internal quotation marks and citations

omitted); *Buffalo State Alumni Ass'n, Inc. v. Cincinnati Ins. Co.*, 251 F. Supp. 3d 566, 574

(W.D.N.Y. 2017) (McCarthy, M.J., report-recommendation adopted by Telesca, J.) ("Although I

respect Judge Skretny's views, this court is not bound by the decisions of any courts other than

the Second Circuit Court of Appeals and the United States Supreme Court ... While I of course

look for guidance to a decision by a district judge of this court, a single district judge's ruling

does not establish binding precedent within a district.") (internal quotation marks and citations

omitted). "Simply stated, a magistrate judge is not bound by any decisions issued by district

judges in other cases, even those sitting in the same district." *Id.*, *10.[3]

Begin with *In re Mutabagani*, No. 22 MC 299 (VB), 2023 WL 2811621, *5 (S.D.N.Y.

Apr. 6, 2023) (Briccetti, U.S.D.J.), which is the only case in this Circuit cited by Orthogen, and

which does not appear to address either Rule 27 nor interpret the terms "claim" and "case" under

Rule 26. Judge Briccetti's reasoned concerning the second statutory requirement that:

> An application for discovery under Section 1782 satisfies the "for use"
> requirement if the materials sought "are to be used at some stage of a
> foreign proceeding." *Mees v. Buiter*, 793 F.3d 291, 295 (2d Cir. 2015).
> The proceeding must be "within reasonable contemplation," but need not
> be "pending or even imminent in order to meet the 'for use' requirement."
> *IJK Palm LLC v. Anholt Servs. USA, Inc.*, 33 F.4th at 677 (quoting *Intel*,
> 542 U.S. at 258–59). Accordingly, an applicant must provide "reliable
> indications of the likelihood that proceedings will be instituted within a
> reasonable time." *Id*. The Second Circuit has "not delineated what

---

[3] Before turning to consider Orthogen's four non-binding authorities, there is an alternative line of authority that
demonstrates that a petition seeking pre-suit discovery is not a pleading: petitions for pre-suit discovery under
state law statutes are not removable to federal court because they are not civil actions. As one district court
observed: "Although this Court has experienced an increase in removals from state court over the years,
accompanied by ever more ingenious arguments in support of removal jurisdiction, never has the Court seen an
argument for removal of a civil action before the action was filed. That is what the removal amounts to in this
case. This Court is not inclined, nor does it have the authority, to expand removal jurisdiction to the pre-
litigation realm." *Matter of Hinote*, 179 F.R.D. 335 (S.D. Ala. 1998).

The court held that a "petition simply seeks an order authorizing a deposition": it "contains no claim[.]" *Id*. That
is, the "proceeding which [defendants] are attempting to remove is not a civil action"; ... **[t]he petition
disguises no claim because it contains no claim. It is a request for discovery, nothing more.**" *Id*. (emphasis
added); *see also Barrows v. Am. Airlines, Inc.*, 164 F. Supp. 2d 179, 182 (D. Mass. 2001) ("The *Hinote* court's
rationale was sound—it reasoned that the 'removal statutes permit removal of a 'civil action' from state court to
federal court' but here there was 'no 'civil action' to be removed.'")

precisely an applicant must show to establish such indications." *Id*. However, "at a minimum, a § 1782 applicant must present to the district court some concrete basis from which it can determine that the contemplated proceeding is more than just a twinkle in counsel's eye." *Id*.

Here, the sworn statement from Mutabagani's Saudi Arabian attorney, Dr. Al-Shumrani, provides reliable indications that a foreign proceeding is within reasonable contemplation. Dr. Al-Shumrani attests to Mutabagani's intent to litigate "as soon as possible" (Al-Shumrani Decl. ¶ 6), describes the legal theory on which Mutabagani plans to rely, and explains how Mutabagani intends to use the requested discovery in the anticipated proceeding. *See In re Top Matrix Holdings Ltd*., 2020 WL 248716, at *4 (S.D.N.Y. Jan. 16, 2020) ("This Circuit has found that sworn statements attesting to petitioners' intent to litigate and describing the legal theories on which they plan to rely are sufficiently concrete to meet the statutory requirement."). The Court is therefore satisfied that a Saudi Arabian proceeding is within reasonable contemplation.

The *Mutabagani* opinion errs in its analysis of the second statutory factor. *See BANOKA S.a.r.l. v. Alvarez & Marsal, Inc.,* No. 22MC00182GHWKHP, 2023 WL 1433681 (S.D.N.Y. Feb. 1, 2023) (Parker, U.S.M.J.), *order adopted in part, rejected in part*, No. 1:22-MC-182-GHW, 2024 WL 1242994 (S.D.N.Y. Mar. 22, 2024) ("The U.S. Supreme Court in *Intel* expressly stated Section 1782 "requires only that a dispositive ruling by the Commission, reviewable by the European courts, be within reasonable contemplation."); *Mangouras v. Squire Patton Boggs*, 980 F.3d 88, 100-101 (2d Cir. 2020) (holding that discovery should be allowed in connection with a suit that had in fact been filed with the European Court of Human Rights ("ECtHR"), but denying discovery in connection with "potential privately-instituted criminal actions in Spain against three witnesses in the earlier proceedings."); *In re Harbour Victoria Inv. Holdings Ltd. Section 1782 Petitions*, No. 15-MC-127, 2015 WL 4040420 (S.D.N.Y. June 29, 2015) ("as Judge Buchwald found, this quotation from *Intel* does not appear to sanction the use of nonexistent, purely hypothetical proceedings to satisfy § 1782's requirements."); *In re Asia Mar. Pac. Ltd.*, 253 F. Supp. 3d 701, 707 (S.D.N.Y. 2015) (petitioner's burden on this statutory factor "is not

satisfied because the petitioner has retained counsel and is discussing the possibility of initiating litigation").

But the case does not help Orthogen because there is nothing in the opinion that addresses Respondents' arguments under Rule 27 and Rule 26.

The *Mutagabi* court relied upon two Second Circuit cases and a district court case. Its reliance upon *Mees v. Buiter*, 793 F.3d 291 (2d Cir. 2015) was misplaced. *Mees* and *Certain Funds, Accts. &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113 (2d Cir. 2015) — which the Schottenstein Parties rely heavily on their motion for a stay pending appeal, but which the Mutagabi court did not rely upon — were issued within a month of each other, with *Mees* coming down on July 17, 2025 and *Certain Funds* coming down on August 20, 2025. Both opinions were authored by Judge Lynch, with Judges Jacobs and Calabresi joining in *Certain Funds*; and Judges Level and Lohier joining in *Mees*.

*Mees* did not hold that a district court should look to "anticipated claims" to determine relevance and proportionality under Rule 26. Significantly, in that case, prior to the perfection of her appeal to the Second Circuit, Mees had in fact filed a defamation suit in the Netherlands. As the Second Circuit explained: "After denying the application, the court explained that its ruling was 'without prejudice to re-application if the Dutch courts indicate that additional material is necessary and for some reason the Dutch court is not able to order it produced there.' [citation omitted]. On May 27, 2014, Mees timely appealed the order. On June 24, 2014, Mees served Buiter and his wife with a summons and complaint for a defamation suit filed in the Netherlands." 793 F.3d at 297. In other words, there was — unlike here — a proceeding in a foreign tribunal.

*IJK Palm LLC v. Anholt Servs. USA, Inc.*, 33 F.4th 669, 677 (2d Cir. 2022) does not

support the conclusion reached in *Mutabagani* either. In that case, the Second Circuited held that "IJK has not established that the information it requests is 'for use' by the liquidators, or that it would be an 'interested person' with respect to such a suit." See also id., 678 ("discovery material is not 'for use' in a foreign proceeding if it must first be used to persuade a third party to initiate that proceeding.") (citing *Certain Funds*, 798 F.3d at 121).

And in *In re Top Matrix,* the District Court stated that "[t]his Circuit has found that sworn statements attesting to petitioners' intent to litigate and describing the legal theories on which they plan to rely are sufficiently concrete to meet the statutory requirement" and cited to *In re Hornbeam Corp.*, 722 F. App'x 7, 9–10 (2d Cir. 2018). But *Hornbeam* is unpublished, noting at the top of the case that "RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT."

In *Pishevar v. Fusion GPS*, 2025 WL 885115, at *5-6 (D.D.C. Mar. 21, 2025) the targets of the subpoena were just confused about the law and the court did not reach the issue. There, the targets of the subpoena advanced a "flawed argument that the Court should quash the subpoenas because Fusion GPS reportedly does not have what Pishevar seeks—except this time on relevance grounds. Relevance does not turn on a responding party's possession or knowledge of the information being sought. As the Court has made clear, if Fusion GPS does not have possession, custody, or control of the information being sought—or knowledge of the information to be asked in deposition—then saying so can be a proper *response* to the subpoenas. It is not, however, a basis to quash them, including under the auspices of relevance."

In *In re Mizuho Fin. Grp., Inc.*, No. 2:23-MC-00025-SB-MAA, 2023 WL 12004754, *2 (C.D. Cal. Aug. 28, 2023) was altogether conclusory, explaining that "Mizuho anticipates filing an action in Japan to enforce its registered trademarks by asserting claims against parties who

have been operating infringing sites, 451 of which are hosted by QuadraNet. The subpoena authorized by this Court appears narrowly tailored to obtain the identity of those parties and is therefore highly relevant."

Finally, *In re Stephen Shefsky*, 2024 WL 2275215 (D. Nev. May 20, 2024) is not binding on this court and improperly allowed discovery under Rule 26. The Court explained that it "looks to the Federal Rules of Civil Procedure to determine the proper scope of § 1782 discovery." *Id.*, *7. But if that rule is followed, then the court would have needed to first confront the fact that the petition there had made no showing that it could meet Rule 27.

The *Shefsky* court found that "the discovery Shefsky seeks is permissible under 26(b)(1) because it is relevant to discerning whether Wynn received fraudulent funds from Shefsky, whether it knew or should have known that the funds it received were fraudulent, and whether Wynn had sufficient measures in place to identify such suspicious transactions." *Id.*, *8. This runs together the second statutory requirement for a 1782 petition and whether there is a "claim" or a "case" within the meaning of Rule 26 against which relevance and proportionality can be benchmarked. The court simply ignored the issue and it does not appear that the targets of the subpoena pressed the issue.

In short, none of these authorities is binding on this Court. And none of these authorities address Rule 27, nor do they undertake any interpretative analysis of the key terms "claim" and "case" in Rule 26. Meanwhile, these holdings cannot be squared with *Intel*'s extensive discussion of AMD's "complaint" and the "significant procedural rights" that attached when it filed that formal complaint with the EU Competition authority.

-30-

III.    **THE SUBPOENAS SHOULD BE QUASHED BECAUSE THEIR
ENFORCEMENT WOULD RESULT IN A DEPRIVATION OF A LIBERTY
INTEREST PROTECTED BY THE DUE PROCESS CLAUSE OF THE 5th
AMENDMENT**

A.  **The Schottenstein Parties' Liberty Interests In Their Rights Under German Law
Viz. Article 13 of the 2014 License Agreement.**

In making a determination of whether the Fifth Amendment's due process requirements

are to be applied, "we must look not to the 'weight' but to the Nature of the interest at stake."

*Board of Regents v. Roth*, 408 U.S. 564, 571, 92 S.Ct. 2701, 2706, 33 L.Ed.2d 548 (1972).

"'Liberty' and 'property' are broad and majestic terms. They are among the '(g)reat

(constitutional) concepts . . . purposely left to gather meaning from experience. . . . (T)hey relate

to the whole domain of social and economic fact, and the statesmen who founded this Nation

knew too well that only a stagnant society remains unchanged.'" *Id*. (quoting *National Mutual*

*Ins. Co. v. Tidewater Transfer Co*., 337 U.S. 582, 646, 69 S.Ct. 1173, 1195, 93 L.Ed. 1556

(Frankfurter, J., dissenting). "For that reason, the Court has fully and finally rejected the wooden

distinction between 'rights' and 'privileges' that once seemed to govern the applicability of

procedural due process rights. The Court has also made clear that the property interests protected

by procedural due process extend well beyond actual ownership of real estate, chattels, or

money. By the same token, the Court has required due process protection for deprivations of

liberty beyond the sort of formal constraints imposed by the criminal process." *Id*., 571-72.

"'While this court has not attempted to define with exactness the liberty . . . guaranteed

(by the Fourteenth Amendment), the term has received much consideration and some of the

included things have been definitely stated. **Without doubt, it denotes not merely freedom**

**from bodily restraint** *but also the right of the individual to contract*, to engage in any of the

common occupations of life, to acquire useful knowledge, to marry, establish a home and bring

up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized . . . as essential to the orderly pursuit of happiness by free men.'" *Id.*, 572 (quoting *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042). "In a Constitution for a free people, there can be no doubt that the meaning of 'liberty' must be broad indeed." *Id.* (citing *Bolling v. Sharpe*, 347 U.S. 497, 499—500, 74 S.Ct. 693, 694, 98 L.Ed. 884; *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551).

But "[t]he very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation. Due process, 'unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances.' It is 'compounded of history, reason, the past course of decisions * * *.'" *Cafeteria & Rest. Workers Union, Loc. 473, AFL-CIO v. McElroy*, 367 U.S. 886, 895, 81 S. Ct. 1743, 6 L. Ed. 2d 1230 (1961) (citation omitted; cleaned up). Thus, "consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action." *Id.*

The Schottenstein Parties have a liberty interest in the enforcement of the forum selection clause because they have both substantive and procedural rights under German law by virtue of the German law contact which the enforcement of the subpoenas would obliterate — because Orthogen is permitted American-style discovery without ever having to file a Klage and thus without the Schottenstein Parties ever having any opportunity to test the validity of Orthogen's hypothetical claims in the forum where all disputes are suppose to be brought.

Article 13 prescribes that German law governs and that all claims must be brought in a German court. The restricted proof gathering in arbitration and under the ZPO are not bugs of

those systems, but essential features. Where, as here, the "the source of the obligation" upon which Orthogen predicates its 1782 application is German law, *the Schottenstein Parties are "entitled to the benefit of whatever conditions and limitations the foreign law creates*." *Cf. Davis v. Mills*, 194 U.S. 451, 454 (1904). In other words, "it follows that [German] law determines not merely the existence of the obligation, but equally determines its extent" and *it would be "unjust to allow [Orthogen] to come here absolutely depending on [German] law for the foundation of [its] case, and yet to deny the [Schottenstein Parties] the benefit of whatever limitations" German law may impose upon Orthogen*. *Cf. Slater v. Mexican Nat'l R. Co.*, 194 U.S. 120, 126 (1904).

Moreover, "if the parties had wanted to allow American-style discovery as an exemption, they would have included it expressly in Article 13.3 of the 2014 License Agreement. And under the ambiguity rule of Section 305 c (2) BGB, any doubts regarding interpretation are resolved to the detriment of the 'user,' Orthogen." (SSD ¶ 45). "This is because the party who uses its own contractual conditions is responsible for the content of the general terms and conditions it formulated. After all, it had the opportunity to formulate them more clearly and must bear the consequences if it does not use this opportunity." (SSD ¶ 46).

But the continued maintenance of this 1782 proceeding — and the threat of subpoenas enforced by pain of contempt — is not simply a breach of contract. (SSD ¶ 47). It is an unconstitutional deprivation of a the Schottenstein Parties' fundamental liberty interests pursuant to their rights under the German law contract.

Art. 13.2 is a mandatory forum selection clause: "[a]ny dispute arising from or in connection with this Agreement shall be decided exclusively by the competent Courts of Düsseldorf, Germany." The forum selection clause "is broad enough to encompass the discovery

-33-

dispute" under § 1782. *See Banoka v. Westmont Int'l Dev. Inc.*, No. 21-20434, 2022 WL 480118, *2 (S.D. Tex. Feb. 10, 2022), *aff'd sub nom. Bissonnet v. Westmont Int'l Dev., Inc.*, No. 21-20434, 2022 WL 636680 (5th Cir. Mar. 4, 2022); *see also KnowYourMeme.com Network, Inc. v. Nizri*, No. 22-1322, 2023 WL 6619165, *1 (2d Cir. Oct. 11, 2023) ("Because of the strong public policy favoring enforcement of forum selection clauses, courts have construed these clauses broadly to encompass tort claims brought in relation to the contract and/or which arise out of the business relationship.").[4]

It is settled law that "[t]he enforcement of valid forum-selection clause, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." *Atlantic Marine Construction Co., Inc. v. United Sates District Court for the Western District of Texas*, 571 U.S. 49, 63 (2013). Among the "compelling reasons" to enforce forum selection clauses is that they constitute an "indispensable element in international trade, commerce, and contracting" by reducing uncertainties. *See M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 13, 92 S. Ct. 1907 (1972).

The parties here, by agreeing to litigate their dispute in Germany, agreed to the procedure used by those courts. There is nothing remarkable about this conclusion. Consider arbitration agreements, which the Supreme Court has said are "a specialized kind of forum-selection clause that posits not only the situs of suit *but also the procedure* to be used in resolving the dispute." *Viking River Cruises, Inc. v. Moriana,* 596 U.S. 639, 653 (2022). Under most arbitral rules (*e.g.* JAMS, AAA), the parties do not have the same "proof-gathering" tools available in federal or state court. Parties in an arbitration typically cannot use interrogatories. And the arbitrator's

---

[4] Art. 13.3 expressly bars the parties from being in any U.S. court, except in the singular instance where Orthogen seeks injunctive relief, which may only be brought in the federal or state courts of New York County. And Art. 13.3 goes on to provide that "[f]or the avoidance of doubt, this clause does not extend to claims for payment or any claims other than claims for injunctive relief."

subpoena power is limited by 9 U.S.C. § 7. *See Life Receivables Tr. v. Syndicate 102 at Lloyd's London*, 549 F.3d 210, 212 (2d Cir. 2008) ("Like the Third Circuit, we hold that section 7 does not enable arbitrators to issue pre-hearing document subpoenas to entities not parties to the arbitration proceeding, and therefore reverse the order of the United States District Court for the [S.D.N.Y.]").

Moreover, it is a fundamental principle of private international law that procedure is governed by the law of the forum (*lex fori*). (SSD ¶ 51). This principle — *forum regit processum* — is well established under German law. (*Id.*). Thus, by contracting under German law and mandating any such claims be brought in Germany, the parties necessarily agreed that the ZPO, with its perceived benefits, would apply to the administration of any disputed claims. The ZPO controls how a proceeding is to be commenced, service, the adequacy of the pleadings, the manner in which claims or defenses under German law must be proved, presumptions and burdens, the mode of presentation of proof, the calculation of damages, and, as particularly pertinent here, the "tools the parties may use to obtain evidence."

"There is no specific phase of the litigation process [in Germany] dedicated to the exploration or collection of evidentiary materials; nor is there a general right to obtain relevant information in connection with the proceedings." (DDS, ¶ 14). "Under German civil procedural law, the principle of party presentation ("*Beibringungsgrundsatz*") applies. This means that the parties are free to decide — within the scope of their duty to tell the truth — what facts they introduce into the proceedings. … **But as a general matter, no party is obliged to disclose any information which is favorable to the other party**." (*Id.* ¶ 13). This principle also precludes *Ausforschungsbeweis* — "fishing for evidence." (*Id.* ¶ 17). Moreover, under German law, had the parties wanted to have disclosure rights or rights under § 1782(a), they would have expressly

mentioned it, as they did for the limited exception relating to injunctive relief in the U.S. under Article 13.3.

Thus, when Orthogen laments that it "would be unable to obtain the discovery it seeks through this Petition in the Contemplated German Proceeding" because of the "rules governing German civil actions" and that it "would be unable to compel Dr. Schottenstein to sit for a deposition or to compel him or his practice to produce relevant documents in their possession" (ECF #3, at p. 12) — that is not only what it bargained for, but what it has insisted upon when it moved to dismiss the SDNY Plenary Action and filed the Second Dusseldorf Action seeking damages for an alleged breach of the forum selection clause. *See Venequip, S.A. v. Mustang Mach. Co.*, LLC, 2022 WL 3951173, *3 (S.D. Tex. Aug. 30, 2022), *aff'd sub nom.*, 2023 WL 5031480 (5th Cir. Aug. 7, 2023) (By all appearances, Venequip is attempting to circumvent the bargained-for pre-trial discovery policies of Swiss courts. The differences between Swiss and U.S. procedural law, including with respect to pretrial discovery appear to be significant: Swiss courts allow very minimal pre-trial discovery and no pretrial depositions. … And there was "certainly nothing in the record indicating that a Swiss tribunal would allow Venequip to conduct the type of in-depth pre-trial discovery from various Caterpillar dealers, customers, and former employees across the United States that it is attempting to do here…."); *see also In re Alghanim*, 2022 WL 1423088, *4 (S.D.N.Y. May 5, 2022), *appeal withdrawn sub nom.*, 2022 WL 3970921 (2d Cir. June 16, 2022) ("This concern is heightened by the fact that Petitioner 'already assented to foreign authority by signing a contract with [Kutayba Alghanim] that contained a forum selection clause.")

The subpoenas must be quashed. To permit their enforcement would deprive the Schottenstein Parties of their fundamental liberty interest in being heard and being able to contest

Orthogen's phantasmal claims in the forum agreed upon the by the parties. To permit the subpoenas to be enforced — in the absence of any *Klage* that properly pleads a *Klageschrift* under German law — the harm is compounded to a constitutional injury because the Schottenstein Parties will never have a fair and adequate opportunity to appear before a neutral magistrate in Dusseldorf to challenge the validity or merits of any such claims before they are subjected to American-style discovery under the threat of contempt. To permit the subpoenas to be enforced would injure the Schottenstein Parties fundamental liberty interests under the principle of *Beibringungsgrundsatz* (the principle of party presentation), which imposes the duty upon Orthogen to substantiate ["*Substantiierungspflicht*"] (section 138 ZPO) and which prohibits *Ausforschungsbeweis* — "fishing for evidence." (DDS ¶ 17).

## B. The Phantasmal Claims Would Be Time-Barred Under the BGB

Under Section 195 BGB (Civil Code – *Bürgerliches Gesetzbuch*, BGB ): "The standard limitation period is three years." (SSD ¶ 56). "This is the applicable statue of limitations period for claim for breach of contract and for civil fraud." (SSD ¶ 57). Orthogen asserts in its Petition that it is contemplating one-day alleging in a *Klage* claims for breach of contract and fraud. (23-ECF #5, ¶¶ 38-39).

Orthogen alleges that it will allege claims for damages for the years 2011 through 2020. (*See*, *e.g*, Orthogen Br., 7). But any such claims would be time-barred barred pursuant to §§ 199 (1), 195 BGB. (SSD ¶ 58). For example, if a claim for breach or civil fraud arose anytime in 2015, the three-year limitation period commences on 01/01/2016 and ends on 12/31/2018. (*Id*.). If a claim arose in 2019, then the three-year limitations period commences on 01/01/2020 and ends on 12/31/2022. (*Id*.).

In short, all of claims that Orthogen alleges that it is going to allege are barred by the

applicable statute of limitations. Thus, none of the discovery sought is relevant and proportional as the hypothetical claims would be in actuality stale and long since lapsed.

## IV.    ENFORCEMENT OF THE SUBPOENAS SHOULD BE STAYED PENDING THE APPEAL OF THE FIRST DUSSELDORF ACTION. TO HOLD OTHERWISE WOULD UNDERMINE THE FUNDAMENTAL PUBLIC POLICY UNDERGIRDING 1782

This Court should stay enforcement of the subpoenas not only pending the Schottenstein Parties' appeal to the Second Circuit, but should independently stay enforcement of the subpoenas on grounds of international comity during the pendency of the appeal now pending of the First Dusseldorf Action in Germany.

In the First Dusseldorf Action, Orthogen expressly sought disclosure in connection with the 2014 License Agreement in the form of a "uniform, structured register and specifying:"

> e.   "the number of patients he treated with the Regenokine Program Therapy";
>
> f.   "the number of treatments per patient (the name of the respective patient need not be provided)";
>
> g.   "the amounts billed per patient (the name of the respective patient need not be provided)"; and
>
> h.   "type and scope of the use of the 'Regenokine' brand name in advertising materials or any other communication directed to existing or potential patients by month."

(Ex. C, p.2, ¶ 2) (bold added).

On or about June 5, 2025, the German court denied this relief to Orthogen in its entirety:

> The Plaintiff is no longer entitled to a contractual claim for disclosure of information pursuant to Section 242 BGB in connection with the License Agreement of June 1, 2014, as the Defendant provided information in a statement dated June 15, 2023 to the effect that he had only used the Regenokine therapy on three patients since June 2020 in the month of October 2022. He billed these therapies to the Plaintiff with a license fee of USD 17,000.00 (see invoice, Annex B1). The asserted claim for disclosure of information about the further use of the Regenokine therapy has thus been fulfilled by performance pursuant to section 362 BGB. The

> Plaintiff has not stated any concrete indications as to why this information
> should be incorrect or incomplete. Such indications are also not evident, in
> particular in light of the Plaintiff's pleading that the Defendant is not able
> to perform the tasks of Edward Capla himself, especially the laboratory
> services required as part of the therapy. It must therefore be assumed that
> the Defendant can no longer provide the therapy at issue.

(SSD, Ex. D, p. 10) (emphasis added). On June 16, 2025, Orthogen noticed an appeal. (SSD, Ex.

E). And on June 16, 2025, Schottenstein noticed an appeal. (SSD, Ex. F).

The traditional analysis concerning whether a federal court should stay a case in

deference to a proceeding a foreign forum has no real application here because the instant

proceeding is not a plenary proceeding animated by domestic policy concerns; but is a special

proceeding animated by the policy of international comity itself. *See*, *e.g.*, *Royal & Sun All. Ins.

Co. of Canada v. Century Int'l Arms, Inc.*, 466 F.3d 88, 94 (2d Cir. 2006) (explicating the law in

plenary cases).

The Supreme Court's decision in *ZF Automotive US, Inc. v. Luxshare, Ltd.*, 596 U.S. 619

(2022) militates in favor of a stay during the pendency of the appeal in Germany. "From the

start," the Court explained, "the statute has been about respecting foreign nations and the

governmental and intergovernmental bodies they create." *ZF Automotive*, 596 U.S. at 631.

Section 1782's pre-1964 "antecedents covered assistance only to foreign 'courts.'" *Id*.  Pre-1964,

"a separate strand of law covered assistance to "'any international tribunal or commission ... in

which the United States participate[d] as a party.'" *Id*. "The process of combining these two

statutory lines began when Congress established the Commission on International Rules of

Judicial Procedure," which "[i]t charged" with "improving the process of judicial assistance,

specifying that the 'assistance and cooperation' was *between the United States and foreign

countries*' and that 'the rendering of assistance *to foreign courts and quasi-judicial agencies*'

should be improved." *Id*. (italics by *ZF* Court).

A German court has held that Orthogen is not entitled to substantially the same discovery it seeks in the United States to use in Germany. Comity is directly undermined by allowing Orthogen to take American-style discovery when a German court has said it is entitled to none.

## **CONCLUSION**

For the foregoing reasons, the Respondents, respectfully request that the Court deny Orthogen's motion, and grant its cross-motion to quash the subpoenas or alternatively stay their enforcement while the German appeal is pending.

Dated: June 20, 2025

Respectfully submitted,

**BRACH EICHLER LLC**

By: */s/ Edward D. Altabet*

Edward D. Altabet
5 Penn Plaza, 23rd Floor
New York, NY 10001
973.447.9671
ealtabet@bracheichler.com

*Attorneys for Respondents-Appellants Dr. Douglas Schottenstein and Schottenstein Pain and Neuro PLLC d/b/a NY Spine*

Word Count: 12,894 (lv. to exceed L.R.7.1(c) and Inv. Rs. pending)