**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

IN RE APPLICATION OF ORTHOGEN            :
INTERNATIONAL GMBH,
                                         :      Case No. 1:23-mc-00152-VSB-KHP
                Petitioner,              :

                                         :
for an order pursuant to 28 U.S.C. § 1782 to     :
conduct discovery for use in a foreign
proceeding.                              :

                                         :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


### OMNIBUS REPLY IN SUPPORT OF PETITIONER'S MOTION TO COMPEL AND OPPOSITION TO RESPONDENTS' CROSS-MOTION TO QUASH

MORVILLO ABRAMOWITZ GRAND IASON &
ANELLO P.C.
Christopher B. Harwood
Matthew Garry
565 Fifth Avenue
New York, New York 10017
Tel: (212) 856-9600
Fax: (212) 856-9494
charwood@maglaw.com
mgarry@maglaw.com

*Attorneys for Petitioner Orthogen*
*International GmbH*

<u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................ 1

STANDARD OF REVIEW ..................................................................................................... 5

ARGUMENT ......................................................................................................................... 6

I.    The Pending German Proceeding Has No Bearing Here.................................................. 6

A.    Orthogen Was Not Denied the Discovery It Seeks Here in the Pending German
      Proceeding......................................................................................................................... 6

B.    The Appeal of the German Court Decision Does Not Warrant a Stay ............................ 12

II.   Orthogen's Claims Are Timely......................................................................................... 13

III.  The Remaining Arguments Against Discovery Similarly Fail ......................................... 16

A.    Rule 27 Does Not Apply .................................................................................................. 16

B.    The Lack of a Pending Claim or Case Is Irrelevant......................................................... 20

C.    Compelling Discovery Would Not Violate the Schottenstein Parties'
      Due Process Rights ......................................................................................................... 23

D.    The Schottenstein Parties Concede that the Requested Discovery Is Relevant and
      Proportional to Orthogen's Anticipated Claims .............................................................. 27

CONCLUSION....................................................................................................................... 27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Associacão dos Profissionais dos Correios v. Bank of New York Melon Corp.*,
  2022 WL 4955312 (S.D.N.Y. Oct. 4, 2022) .............................................................................. 18

*Burrell v. City Univ. of New York*,
  894 F. Supp. 750, 757 (S.D.N.Y. 1995) ................................................................................... 18

*Bryant v. Am. Fed'n of Musicians of the United States and Canada*,
  666 F. App'x 14 (2d Cir. 2016) ............................................................................................... 19

*Certain Funds, Accounts, and/or Investment Vehicles v. KPMG, LLP*,
  798 F.3d 113 (2d Cir. 2015) .................................................................................................... 19

*Euromepa S.A. v. R. Esmerian, Inc.*,
  51 F.3d 1095 (2d Cir. 1995) .................................................................................................... 16

*In re Application of Grupo Qumma*,
  2005 WL 937486 (S.D.N.Y. Apr. 22, 2005) ........................................................................... 16

*In re Cal. State Teachers' Ret. Sys.*,
  2017 WL 1246349 (D.N.J. Apr. 3, 2017) ................................................................................ 25

*In re Furstenberg Finance SAS*,
  785 F. App'x 882 (2d Cir. 2019) ....................................................................................... 16, 19

*In re Hornbeam Corp.*,
  2015 WL 13647606 (S.D.N.Y. Sept. 17, 2015) ...................................................................... 18

*In re Hornbeam Corp.*,
  2018 WL 7577226 (S.D. Fla. Sept. 21, 2018) .................................................................... 18, 22

*In re Mangouras*,
  2017 WL 11511163 (S.D.N.Y. Nov. 15, 2017)........................................................................ 15

*In re Mizuho Fin. Grp., Inc.*,
  2023 WL 12004754 (C.D. Cal. Aug. 28, 2023) ....................................................................... 21

*In re Mutabagani*,
  2023 WL 2811621 (S.D.N.Y. Apr. 6, 2023) ........................................................................... 21

*In re Stephen Shefsky*,
  2024 WL 2275215 (D. Nev. May 20, 2024) ............................................................................ 21

*In re Thales Dis Ais Deutschland GmbH,*
   2021 WL 7707268 (N.D. Tex. Nov. 5, 2021) ........................................................ 25

*Intel Corp. v. Advanced Micro Devices, Inc.,*
   542 U.S. 241 (2004) ............................................................... 1, 16, 17, 22

*Kang v. Nova Vision, Inc.,*
   2007 WL 1879158 (S.D. Fla. June 26, 2007)...................................................... 25

*Lelchook v. Lebanese Canadian Bank, SAL,*
   670 F. Supp. 3d 51 (S.D.N.Y. 2023) ........................................................... 6

*Mangouras v. Squire Patton Boggs,*
   980 F.3d 88 (2d Cir. 2020) ................................................................... 19

*Mees v. Buiter,*
   793 F.3d 291 (2d Cir. 2015) .................................................................. 16

*Pishevar v. Fusion GPS,*
   2025 WL 885115 (D.D.C. Mar. 21, 2025) ...................................................... 21

*Samsung Elecs. Co. v. Microchip Tech. Inc.,*
   347 F.R.D. 252 (S.D.N.Y. 2024)................................................................ 6

**Statutes**

28 U.S.C. § 1782 ...................................................................................... *passim*

**Rules**

Fed. R. Civ. P. 1 ..................................................................................... 17

Fed. R. Civ. P. 26 ................................................................................ 20, 21

Fed. R. Civ. P. 27 ............................................................................... *passim*

Orthogen submits this omnibus (i) reply in support of its motion to compel the Schottenstein Parties'[1] compliance with the Subpoenas issued pursuant to Judge Broderick's February 28, 2025 order authorizing Orthogen to obtain 1782 discovery from them for use in the Contemplated German Proceeding and (ii) opposition to the Schottenstein Parties' cross-motion to quash the Subpoenas.

## PRELIMINARY STATEMENT

The Schottenstein Parties' campaign of delay continues with their latest filing, which advances meritless arguments in opposition to Orthogen's motion to compel that (i) are premised on blatant misrepresentations (such as that a recent decision in an unrelated lawsuit between Orthogen and Dr. Schottenstein in Germany supposedly denied Orthogen the discovery it seeks here), (ii) are a rehash of arguments that Orthogen already has conclusively rebutted (such as that the claims for which Orthogen seeks discovery here supposedly are time-barred under German law), and/or (iii) constitute transparent attempts to relitigate Judge Broderick's prior orders authorizing Orthogen to pursue the pre-suit 1782 discovery it seeks here (such as that the discovery supposedly is barred by Federal Rules of Civil Procedure 26 and 27, the Supreme Court's decision in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004), and the German forum selection clause in the parties' 2014 License Agreement).

The filing also advances a meritless cross-motion to quash that is based on the same meritless arguments as its opposition to the motion to compel,[2] and, like the Schottenstein Parties' stay motion, exceeds this Court's presumptive word limit by approximately 4,000 words.

---

[1] Capitalized terms herein have the same meaning ascribed to them in Orthogen's motion to compel discovery (Dkt. 49).

[2] The Schottenstein Parties did not obtain the required authorization to file the cross-motion.

In light of all of the above, the filing appears designed not to persuade, but rather to require this Court and Orthogen to wade through as much paper and respond to as many arguments as possible—regardless of whether a legitimate basis exists for advancing the arguments—in order to (i) delay producing the requested discovery for as long as possible and (ii) drive up costs, in hopes that the mounting delay and costs will cause Orthogen to abandon its efforts.

At this point, delay is the Schottenstein Parties' only strategy. As is evident from the Schottenstein Parties' briefing, they have no defense to the breach of contract and fraud claims that Orthogen will be pursuing against Dr. Schottenstein and Edward Capla in the Contemplated German Proceeding. Through its 1782 petition here, as well as the related Florida 1782, Texas 1782, and Judith/Tomas 1782, Orthogen has shown that Dr. Schottenstein and Edward Capla defrauded it by intentionally underreporting the number of Regenokine treatments they administered and the amounts they billed patients for the treatments. As a result of the underreporting, Dr. Schottenstein and Edward Capla face substantial liability for (i) failing to pay Orthogen the full royalty payments to which it was entitled per the express terms of the parties' 2011-2014 License Agreements, and (ii) fraudulently inducing Orthogen to enter into the 2014 License Agreement and agree to per-treatment royalty amounts for the period covered by that Agreement that were lower than the amounts it would have demanded had it known the actual amounts Dr. Schottenstein and Edward Capla were billing patients.

The Schottenstein Parties know that the fraud occurred, that Orthogen knows about the fraud, that all Orthogen needs now to bring the Contemplated German Proceeding and hold Dr. Schottenstein and Edward Capla accountable for the full amount of the damages it sustained as a result of their fraud is the 1782 discovery it is seeking, and that Orthogen is entitled to the discovery. The only card the Schottenstein Parties have left to play is delay. That is why they

intervened and fought tooth and nail (unsuccessfully) to try to stop Orthogen from obtaining discovery from Edward Capla and his wife in Florida, why they intervened and currently are fighting tooth and nail to try to stop Orthogen from obtaining additional discovery from their former employees (Pearl Chan and Derek Lee) in Texas, why they intervened and are fighting tooth and nail to try to stop Orthogen from obtaining discovery from Edward Capla's parents in the Judith/Tomas 1782—notwithstanding that not even Edward Capla has opposed the discovery—and why they are fighting tooth and nail to try to avoid producing the discovery that Judge Broderick authorized here.

The delay needs to stop. It has become transparently obvious that the Schottenstein Parties have no viable arguments to avoid producing the requested discovery. Despite its length, the Schottenstein Parties' brief remarkably ignores the only issues before this Court on Orthogen's motion to compel: whether the requested discovery is relevant and proportional to Orthogen's anticipated claims in the Contemplated German Proceeding, and whether complying with the Subpoenas would impose an undue burden on the Schottenstein Parties.

Instead, the Schottenstein Parties advance three categories of meritless arguments. *First*, they try improperly to take a third bite at the apple by advancing arguments that challenge whether Orthogen should be permitted to pursue pre-suit 1782 discovery. Specifically, they argue that the pre-suit 1782 discovery that Judge Broderick authorized is barred entirely by Federal Rules of Civil Procedure 26 and 27, the Supreme Court's decision in *Intel*, and the forum selection clause in the parties' 2014 License Agreement. The Schottenstein Parties' arguments fail on the merits for the reasons set forth below, including because (i) by its plain text, Section 1782 does not envision a situation in which the Federal Rules can act to block discovery that satisfies the requirements of, and already has been authorized pursuant to, Section 1782, (ii) *Intel*

3

and its Second Circuit progeny expressly authorize pre-suit 1782 discovery when, as here, the petitioner has shown through objective indicia that the foreign lawsuit to which the pre-suit discovery relates is reasonably contemplated, and (iii) as Orthogen's German lawyer, Dr. Stefan Kruger, has shown previously and reiterates here, that the parties agreed to a German forum selection clause is fully compatible with Orthogen's pursuit of 1782 discovery here because parties litigating claims in Germany under German law are permitted to use any evidence-gathering tools available to them, including Section 1782. The Schottenstein Parties' above arguments also fail because they are foreclosed by Judge Broderick's prior rulings (i) authorizing Orthogen to pursue 1782 discovery here, and (ii) rejecting the Schottenstein Parties' statutory and *Intel*-based challenges to the discovery.

*Second*, the Schottenstein Parties try to create the misimpression that the German Court overseeing an unrelated lawsuit between Orthogen and Dr. Schottenstein in Germany (the "Pending German Proceeding") issued a decision in which it denied a request by Orthogen to obtain the same information that Orthogen is seeking here. As the Schottenstein Parties well know, however, (i) Orthogen did not seek the same information it is seeking here in the Pending German Proceeding, (ii) the German Court's decision in the Pending German Proceeding (the "German Court Decision") cannot possibly be construed as suggesting that Orthogen is not entitled to the information it is seeking here, much less that the German Court would have denied a request by Orthogen for an order requiring Dr. Schottenstein to disclose the information it is seeking here had Orthogen made such a request in the Pending German Proceeding, and (iii) the German Court Decision instead denied Orthogen's request for an order requiring Dr. Schottenstein to disclose certain information that is distinct from the information Orthogen is seeking here, *but not because the German Court found that Orthogen was not entitled to the*

4

*information, but because it found that Dr. Schottenstein already had provided the information to Orthogen and the request therefore was moot*. Accordingly, under no circumstances could Dr. Schottenstein in good faith argue that the German Court Decision supports staying, much less quashing, the discovery here.

*Finally*, the Schottenstein Parties try to pretend that Orthogen's anticipated claims in the Contemplated German Proceeding are time-barred under German law. As Orthogen's German lawyer, Dr. Kruger, previously has explained, however, they are not, and neither the Schottenstein Parties nor their German lawyer, Paul Scarcia-Scheel, even purport to address Dr. Kruger's prior explanations. But even if a plausible argument existed that the anticipated claims are time-barred under German law, that would be a legal issue for the German court to resolve in the context of the Contemplated German Proceeding. Under settled Second Circuit law, a dispute between the parties over whether the anticipated claims are time-barred under foreign law would not be a basis to stay or quash the discovery already authorized by Judge Broderick.

In sum, through its motion to compel, Orthogen has demonstrated that the Subpoenas' discovery requests are relevant and proportional. Dkt. 49 at 20-26. The Schottenstein Parties, by contrast, do not even purport to argue that the requested discovery is irrelevant or disproportional, or that enforcing the Subpoenas would impose an undue burden on them. Instead, the arguments they raise fail for the reasons summarized above and demonstrated in detail below. Accordingly, this Court should: grant Orthogen's motion to compel and deny the Schottenstein Parties' cross-motion to quash or stay the discovery.

## **STANDARD OF REVIEW**

Motions to compel and motions to quash under Rule 45(d) are two sides of the same coin. For each, the party seeking discovery first must show that the requested discovery is relevant and

proportional; when, as here, that showing has been made, the burden shifts to the party resisting the discovery to demonstrate that complying with the subpoenas would be unduly burdensome. *Lelchook v. Lebanese Canadian Bank, SAL*, 670 F. Supp. 3d 51, 54-55 (S.D.N.Y. 2023) (Parker, M.J.). The decision to compel or quash a subpoena is "entrusted to the sound discretion of the . . . court." *Samsung Elecs. Co. v. Microchip Tech. Inc.*, 347 F.R.D. 252, 260 (S.D.N.Y. 2024) (internal quotation marks omitted).

## ARGUMENT

The Schottenstein Parties' brief is meant to leave this Court with the misimpression that (i) Orthogen is seeking discovery here that it supposedly was denied in Germany, and (ii) the claims for which Orthogen is seeking the discovery supposedly are time-barred under German law. Orthogen addresses those points first to correct any such misimpression, and to demonstrate that the Schottenstein Parties' disingenuous arguments on those points do not provide a basis to stay or quash the discovery.

Orthogen then addresses the Schottenstein Parties' arguments premised on Federal Rules 26 and 27, *Intel*, and the 2014 Agreement's German forum selection clause, and demonstrates that they both (i) fail on the merits and (ii) constitute an impermissible attempt to relitigate Judge Broderick's prior rulings authorizing Orthogen to pursue pre-suit 1782 discovery and rejecting the Schottenstein Parties' challenges to it.

## I.    The Pending German Proceeding Has No Bearing Here

### A.    Orthogen Was Not Denied the Discovery It Seeks Here in the Pending German Proceeding

Contrary to the Schottenstein Parties' misleading assertion, the Court in the Pending German Proceeding did not "den[y] Orthogen substantially the same discovery it seeks through the subpoenas here." Dkt. 52-1 at 1. Nor did Orthogen seek in the Pending German Proceeding

6

"disclosure in connection with the 2014 License Agreement." *Id.* at 7, 38; *see* Supp. Kruger Decl. ¶ 6.[3] As the Schottenstein Parties know, the Pending German Proceeding involves claims for injunctive relief, declaratory relief, and disclosure that are unrelated to (i) the claims for damages that Orthogen will be pursuing in the Contemplated German Proceeding, or (ii) the discovery Orthogen is seeking here. Not surprisingly, then, the German Court Decision did not deny Orthogen the discovery it seeks here.

Through its complaint in the Pending German Proceeding, filed in December 2022, Orthogen sought: (i) a cease and desist order declaring that Dr. Schottenstein should cease and desist from using or marketing the Regenokine Program (because Orthogen had previously terminated his license to use and market the Regenokine Program under the 2014 License Agreement), and (ii) disclosure of, and declaration as to Dr. Schottenstein's liability for, any Regenokine Program treatments, billings, or marketing that Dr. Schottenstein administered or undertook after May 1, 2020. *See* Supp. Kruger Decl. ¶ 3; *see also* Dkt. 17 ¶¶ 1-2; Dkt. 17-1. Orthogen subsequently clarified that it was seeking the referenced cease-and-desist order, disclosures, and declaration of liability for the period *June 1, 2020 onward*. *See id.* ¶ 5.

By contrast, in the Contemplated German Proceeding, Orthogen will be pursuing claims for damages concerning whether, *prior to June 2020* (*i.e.*, prior to the date Orthogen maintains it validly terminated the 2014 License Agreement), Dr. Schottenstein and Edward Capla (i) underreported the number of Regenokine treatments they administered and the amounts they billed patients for Regenokine treatments, and thereby (ii) deprived Orthogen of the full royalty payments to which it was entitled per the express terms of the 2011-2014 License Agreements,

---

[3] Citations to "Supp. Kruger Decl." refer to the declaration of Dr. Stefan Kruger submitted herewith.

and (iii) fraudulently induced Orthogen to enter into the 2014 License Agreement and agree to per-treatment royalty amounts for the period covered by that Agreement that were lower than the amounts it would have demanded had it known the actual amounts Dr. Schottenstein and Edward Capla were billing patients. *See* Dkt. 16 at 12-13; Supp. Kruger Decl. ¶¶ 11-12. The two proceedings thus involve wholly different claims based on different conduct and different time periods.

Given the difference between the two lawsuits, the German Court Decision in the Pending German Proceeding unsurprisingly did not address the discovery sought here. In the Pending German Proceeding, Dr. Schottenstein argued that Orthogen's claims for a cease-and-desist order, disclosure order, and declaration as to liability (for the period June 2020 onward) should be dismissed because (he argued) the forum selection clause in the 2014 License Agreement is unenforceable under German law. Supp. Kruger Decl. ¶ 7. Alternatively, Dr. Schottenstein argued that the claims should be dismissed because the 2014 License Agreement supposedly had not validly been terminated and remained in effect. *See id.* ¶ 8.

In issuing its decision in the Pending German Proceeding, the German Court (i) rejected Dr. Schottenstein's assertion that the 2014 License Agreement's forum selection clause is unenforceable; (ii) also rejected his assertion that the 2014 License Agreement had not effectively been terminated by Orthogen, but held that the termination date was November 28, 2022 (and thus, not the earlier, May 2020 date for which Orthogen had advocated); (iii) granted Orthogen's request for a cease-and-desist order; and (iv) denied Orthogen's request for a disclosure order *as moot* because in a June 15, 2023 submission to the German Court, Dr. Schottenstein represented that he had administered only three Regenokine treatments since June 2020 (and therefore, the German Court found that Orthogen was not entitled to a *further*

accounting because, through Dr. Schottenstein's June 15, 2023 submission, "the asserted claim for disclosure of information about further use of the Regenokine therapy has been fulfilled").[4] *See id.* ¶ 9; Dkt. 52-6 at 5-10.

Notably, when the Schottenstein Parties improperly were trying to keep Orthogen as a defendant in the N.Y. Action, they obtained and submitted to Judge Castel a letter from their German lawyer declarant here, Mr. Scarcia-Scheel, in which (consistent with the forum selection clause argument Dr. Schottenstein advanced in the Pending German Proceeding) Mr. Scarcia-Scheel opined that the 2014 Agreement's forum selection clause is unenforceable under German law. *See* N.Y. Action, Dkt. 121-2 at 1-2. Now that the German Court has ruled to the contrary, Mr. Scarcia-Scheel has changed his opinion such that he now opines that the clause not only is enforceable under German law, *see* Dkt. 52-2 ¶ 39, but that under German law, it precludes Orthogen from seeking 1782 discovery. That Mr. Scarcia-Scheel opined incorrectly on German law with respect to the enforceability of the clause—and then flip-flopped his opinion to suit Dr. Schottenstein's evolving litigation needs—casts substantial doubt on the credibility of his opinions. In any event, like his old opinion about the clause not being enforceable, his revised opinion about the clause precluding 1782 discovery is wrong and demonstrably incorrect—as Orthogen explains below. *See infra* at 23-26.

Turning back to the German Court Decision, Orthogen disagrees that the 2014 License Agreement should be deemed terminated as of November 2022 (rather than May 2020), and that Dr. Schottenstein's self-serving statement in his June 15, 2023 submission is sufficient to satisfy

---

[4] The German Court similarly denied as moot Orthogen's claim for a declaration as to Dr. Schottenstein's liability for the June 2020 onward treatments because Dr. Schottenstein had "paid [Orthogen] the usual license fee for the three . . . therapy applications" disclosed in his June 15, 2023 submission. *See* Supp. Kruger Decl. ¶ 9.

its post-May 2020 disclosure claim, and it therefore has appealed the German Court Decision.
*See* Supp. Kruger Decl. ¶ 10. For present purposes, however, what matters is that (i) the
disclosure claim relates to a different time period (post-May 2020) than the discovery at issue
here (May 2011-May 2020); and (ii) the German Court did not hold that Orthogen was not
entitled to the information it sought through its disclosure claim for the period post-May 2020,
but instead that Dr. Schottenstein already had provided Orthogen with the information through
his June 15, 2023 submission. *See id* ¶ 11.

Therefore, if anything, the German Court Decision supports the requested 1782 discovery
here (including, as relevant to the second and third *Intel* factors, that the German court in the
Contemplated German Proceeding will be receptive to the discovery), because in the German
Court Decision, the German Court held that Orthogen *was* entitled to the information it sought,
and that Dr. Schottenstein's June 2023 submission had *"fulfilled"* (*i.e.*, mooted) the disclosure
claim. *See* Dkt. 52-6 at 10 (holding that Orthogen "is *no longer* entitled to a contractual claim for
disclosure" based on the disclosure in Dr. Schottenstein's submission, not that it was not entitled
to the information in the first place (emphasis added)). Orthogen disagrees that Dr.
Schottenstein's untested representation in his June 2023 submission that he administered only
three treatments post-May 2020 is sufficient to "fulfill" the disclosure claim. Indeed, Orthogen
has good reason to doubt Dr. Schottenstein's representations—and to insist that they be tested
against the relevant documents and through under oath questioning—based on:

- the nature of his verified allegations in the N.Y. Action, which reflect that he and
  Edward Capla intentionally defrauded Orthogen by underreporting the number of
  Regenokine treatments they administered, as well as the amounts they billed in
  connection with those treatments, *see* Dkt. 49 at 7-8, 25;

- the changing nature of his verified allegations (*i.e.*, Dr. Schottenstein's willingness to alter his verified allegations from one verified complaint to another), *see id.* (first alleging that he and Edward Capla earned $6 million per year from the Regenokine Program and then reducing the figure to $2 million per year);

- the additional evidence obtained by Orthogen to date (including the shadow ledgers, as well as checks sent by patients and invoices issued to patients), which confirms that Dr. Schottenstein and Edward Capla intentionally defrauded Orthogen by underreporting Regenokine treatments and the amounts they billed, *see id.* at 9-11; and

- the flatly inconsistent statements that Dr. Schottenstein and Edward Capla have made *in court filings* regarding which one of them has the relevant records and was responsible for the underreporting, *see id.* at 25.

The good reasons that Orthogen has to doubt the representations that Dr. Schottenstein made in his self-serving June 2023 submission not only are among the reasons it is appealing the German Court Decision, but also why it is seeking 1782 discovery here. As Orthogen has explained previously, once it saw Dr. Schottenstein's verified allegations in the N.Y. Action (and that he and Edward Capla apparently had engaged in a near decade-long scheme to defraud Orthogen), Orthogen decided to pursue discovery from him and Edward Capla through Section 1782—rather than filing a new disclosure claim in Germany relating to the period prior to June 2020—precisely because (i) Dr. Schottenstein and Edward Capla would have little incentive to be truthful in responding to such a disclosure claim, *see* Dkt. 5 ¶¶ 44-50, (ii) Orthogen would have no way to test the veracity of their response, *see id.* ¶ 45, and (iii) Dr. Schottenstein's verified allegations in the N.Y. Action showed that neither he nor Edward Capla can be trusted

and their representations should be tested against documents and through questioning, *see* Supp. Kruger Decl. ¶ 12.

For all the reasons above—including that the German Court Decision did not find that Orthogen was not entitled to discovery, and indeed, reached the opposite conclusion—the German Court Decision provides no basis to stay or quash the 1782 discovery that Judge Broderick authorized here. Moreover, in challenging Orthogen's 1782 petition before Judge Broderick, the Schottenstein Parties previously raised arguments concerning the Pending German Proceeding. Dkt. 11-1 at 4-5. Thus, not only are the Schottenstein Parties now misrepresenting the nature of the Pending German Proceeding and the substance of the German Court Decision, but they also are (as always) improperly trying to relitigate Judge Broderick's rulings authorizing Orthogen to pursue 1782 discovery here.

### B.   The Appeal of the German Court Decision Does Not Warrant a Stay

Nor do the parties' respective appeals of the German Court Decision support a stay. The Schottenstein Parties' argument to the contrary is premised on the same misrepresentation of the German Court Decision addressed above: their misleading assertion that the German Court supposedly denied Orthogen's request for the same discovery it seeks here. *See* Dkt. 52-1 at 2, 38. Because the German Court (i) did not address the pre-June 2020 discovery sought here, (ii) recognized that Orthogen was entitled to the information it sought in the Pending German Proceeding for the period from June 2020 onward, and (iii) denied Orthogen's request for the information solely on mootness grounds (because it found that Dr. Schottenstein already had provided the information through his June 2023 submission), Orthogen's appeal of the Pending German Decision offers no basis to stay discovery here. In fact, that the German Court found the disclosure claim "fulfilled" and denied it only on mootness grounds further undermines one of the Schottenstein Parties' primary arguments against discovery proceeding here: that the German

court in the Contemplated German Proceeding supposedly would not be receptive to the discovery sought here.

Moreover, the Schottenstein Parties offer no explanation for why they did not include their meritless stay argument here in their prior motion to stay, given that (i) the German Court Decision was issued on May 14, 2025, *see* Dkt. 52-9 at 1; (ii) Orthogen filed its appeal of the German Court Decision on June 3, 2025, *id.*; and (iii) the Schottenstein Parties filed their stay motion on June 6, 2025, Dkt. 50. Notably, in making the stay argument here, both the Schottenstein Parties and Mr. Scarcia-Scheel misidentified the dates on which the first two of the above events occurred. They asserted that (i) the German Court Decision was issued on June 5, 2025, Dkt. 52-1 at 12, 38, and (ii) Orthogen filed its appeal on June 16, 2025, Dkt. 52-1 at 39.[5] Although the Schottenstein Parties have since acknowledged the error with respect to the date the German Court Decision was issued, *see* Dkt. 53 at 1 n.1, they have not acknowledged their separate error with respect to the date of Orthogen's appeal, and neither they nor Mr. Scarcia-Scheel offer any explanation for how Mr. Scarcia-Scheel got the dates so wrong in his declaration.[6]

## II.    Orthogen's Claims Are Timely

The Schottenstein Parties' argument that Orthogen's anticipated claims are time-barred under German law, Dkt. 52-1 at 37-38, fails because it is:

- incorrect under German law (which the Schottenstein Parties know because Dr.

---

[5] The Schottenstein Parties even got the date of their own appeal wrong, asserting that it too was filed on June 16, when it was filed on June 13. *Compare* Dkt. 52-1 at 39 *with* Dkt. 52-10 at 1.

[6] Both the German language copy of the German Court Decision and its English translation that Mr. Scarcia-Scheel attached to his declaration omit the second page of the German Court Decision, which unambiguously states that the decision was issued on May 14, 2025. *Compare* Dkt. 52-6 through Dkt. 52-8 *with* Suppl. Kruger Decl. Ex. C at 2.

Kruger previously addressed this argument and explained why it is incorrect in his declaration in the Judith/Tomas 1782, and in rehashing the argument here, neither the Schottenstein Parties nor Mr. Scarcia-Scheel addresses Dr. Kruger's prior explanation, much less seeks to rebut it);

- an impermissible attempt to relitigate whether Orthogen is entitled to pursue 1782 discovery (if the Schottenstein Parties were going to raise this incorrect limitations-period argument, they should have raised it in connection with their prior challenge to whether Orthogen's 1782 petition satisfies Section 1782's second statutory prong or fourth *Intel* factor (they did not)); and

- contrary to settled Second Circuit law, which makes clear that in evaluating whether to authorize 1782 discovery, courts are not to resolve substantive disputes about foreign law (which includes whether or not claims are time-barred under foreign law).

In their failed challenge to the Judith/Tomas 1782 petition, the Schottenstein Parties asserted that Orthogen's anticipated claims under the 2011-2013 License Agreements are time-barred. Judith/Tomas 1782, Dkt. 15-2 ¶ 96. In response, Dr. Kruger explained that, under German law, the claims are not time-barred because Dr. Schottenstein and Edward Capla (i) hid their fraudulent conduct from Orthogen, and still have not complied with their contractual reporting obligations, and thereby, through their conduct, (ii) have delayed the onset of any applicable limitations period under Section 199 of the German Civil Code. Dr. Kruger further noted that if a limitations period were running, it would not be the three-year period for which the Schottenstein Parties now advocate, *see* Dkt. 52-1 at 37, but a substantially longer period under Section 199. *See* Judith/Tomas 1782, Dkt. 19 ¶ 17; Supp. Kruger Decl. ¶¶ 17-19.

In rehashing their statute of limitations argument in their current filing, the Schottenstein

Parties fail to respond to Dr. Kruger's explanation. Instead, they cite Mr. Scarcia-Scheel's assertion that under Section 195 of the German Civil Code, the "standard limitation period is three years," and therefore Orthogen's anticipated claims supposedly would be time-barred because they are premised on conduct occurring during the period 2011 through 2020. *See* Dkt. 52-1 at 37. Mr. Scarcia-Scheel, however, also ignores Dr. Kruger's explanation for why, under Section 199, Dr. Schottenstein and Edward Capla's conduct will be held to have delayed the onset of any applicable limitations period and, in any event, a substantially longer limitations period will apply. *See* Dkt. 52-2 ¶¶ 56-59.

In any event, just as the parties disagreed and litigated in Germany over (i) whether the German forum selection clause in the 2014 Agreement is valid under German law (with Orthogen prevailing on that legal issue), (ii) whether Orthogen effectively terminated the 2014 Agreement under German law (with Orthogen also prevailing on that legal issue), and (iii) whether Orthogen was entitled to a cease-and-desist order against Dr. Schottenstein under German law (with Orthogen also prevailing on that legal issue), the parties also apparently disagree and will litigate in Germany over whether Orthogen's claims in the Contemplated German Proceeding are time-barred under German law. As with the above legal issues, Orthogen expects that the German Court will hold in its favor. *See* Supp. Kruger Decl. ¶ 20. Regardless, the parties' apparent dispute on this foreign legal issue is not a ground to stay, much less quash, the discovery Judge Broderick authorized. *See, e.g.*, *In re Mangouras*, 2017 WL 11511163, at *1 (S.D.N.Y. Nov. 15, 2017) (in denying a stay request that was premised on the 1782 respondent's argument that "any production is barred by Spanish . . . laws," the court reasoned that "[t]he parties have offered conflicting . . . assertions about . . . [Spanish] laws," and thereby "invite[d] this Court to wander into the thicket that the Second Circuit has warned against." (citing

15

*Euromepa S.A. v. R. Esmerian Inc.*, 51 F.3d 1095,1099 (2d Cir. 1995))); *In re Furstenberg Finance SAS*, 785 F. App'x 882, 885 (2d Cir. 2019) (respondent's "contentions" about "Applicants' participation rights in a Luxembourg criminal proceeding . . . "invite[d] the Court to delve into a 'battle-by-affidavit of international legal experts' . . . which is beyond the scope of a Section 1782 inquiry" (quoting *Euromepa*, 51 F.3d at 1100)); *In re Application of Grupo Qumma*, 2005 WL 937486, at *3 (S.D.N.Y. Apr. 22, 2005) (similar).

Finally, the Schottenstein Parties' statute of limitations argument is another attempt to relitigate whether Orthogen is entitled to 1782 discovery at all, rather than to address the relevance, proportionality, or burden of the Subpoenas' Requests. For this reason alone, the argument should be rejected.

## III.    The Remaining Arguments Against Discovery Similarly Fail

The remainder of the Schottenstein Parties' arguments also seek improperly to relitigate whether Orthogen is entitled to pursue the pre-suit 1782 discovery that Judge Broderick already has authorized.

### A.    Rule 27 Does Not Apply

The Schottenstein Parties incorrectly assert that the discovery Requests should be evaluated based on whether they satisfy the standard for pre-suit discovery under Rule 27. Dkt. 52-1 at 13-19. The Subpoenas, however, were authorized and issued pursuant to Section 1782, not Rule 27. When, as here, a subpoena for pre-suit discovery has been authorized and issued under Section 1782,[7] the Rule 27 standard for evaluating whether pre-suit discovery is

---

[7] Notwithstanding the Schottenstein Parties' arguments to the contrary, *see* Dkt. 52-1 at 27, Section 1782 permits pre-suit discovery for use in a reasonably contemplated foreign proceeding, *Intel*, 542 U.S. at 259, including, as here, a civil suit between private parties, *Mees v. Buiter*, 793 F.3d 291, 300 (2d Cir. 2015) (rejecting argument that *Intel*'s reasonable contemplation standard

permissible under the Federal Rules has no applicability.

Indeed, the application of the Federal Rules to 1782 discovery is circumscribed by the Section 1782 statute itself, which provides that, "[t]o the extent that the order [authorizing 1782 discovery] does not prescribe otherwise, the testimony or statement shall be taken, and the document or thing produced, in accordance with the Federal Rules of Civil Procedure." 28 U.S.C. § 1782(a). By its plain text, Section 1782 does not envision a situation in which the Federal Rules can act to nullify an order authorizing 1782 discovery, but rather it envisions that the Federal Rules will govern the mechanics of how the authorized discovery will be produced. Judge Broderick reached the same conclusion, observing that Section 1782's "reference to the Federal Rules . . . is limited to the manner in which 'the [authorized] testimony or statement shall be taken and the [authorized] document or other thing produced. Nowhere in the statute, or any case law that I can find, does it state that § 1782 actions are governed by the Federal Rules more broadly . . . .'" Judith/Tomas 1782, Dkt. 23 at 13 n.6 (citations omitted).

That the Federal Rules do not apply more generally to 1782 discovery makes sense because 1782 petitions (i) are not civil lawsuits governed by the Federal Rules (rather, they are a means for obtaining discovery for use in a foreign proceeding), and (ii) serve different purposes than the Federal Rules, *compare Intel*, 542 U.S. at 252 (identifying Congress's twin aims in passing Section 1782 as to "provid[e] efficient assistance to participants in international litigation and encourage[e] foreign countries by example to provide similar assistance to our courts"), *with* Fed. R. Civ. P. 1 (explaining that the Federal Rules "govern the procedure in all civil actions and proceedings in the United States district courts . . . . [and are meant] to secure the just, speedy,

---

did not extend to "civil suits between private parties" because "nothing in *Intel* limits its reasoning to investigations by a government or international tribunal").

and inexpensive determination of every action and proceeding"); *see Burrell v. City Univ. of New York*, 894 F. Supp. 750, 757 (S.D.N.Y. 1995) (same). Moreover, Rule 27 hardly speaks to the "manner" in which discovery is to be taken, 28 U.S.C. § 1782(a), but instead limits the circumstances under which a party moving for pre-suit discovery *under the Federal Rules* (as opposed to Section 1782) can obtain it.

Unsurprisingly, then, courts find Rule 27 applicable in the 1782 context in only two ways: (i) as imposing a requirement that the petitioner provide notice of any authorized 1782 discovery to any "expected adversaries" (which Orthogen has done here, and relates not to whether pre-suit discovery that meets the requirements of Section 1782 should proceed, but the "manner" in which it should proceed); and (ii) as prohibiting attempts to use Section 1782 to obtain discovery for a contemplated *U.S.* lawsuit (which Orthogen is not doing, and also relates not to whether pre-suit discovery that meets the requirements of Section 1782 should proceed, but to whether the requested discovery in fact meets Section 1782's second statutory requirement that it be "for use" in a "foreign proceeding"). *See, e.g.*, *In re Hornbeam Corp.*, 2015 WL 13647606, at *5-6 (S.D.N.Y. Sept. 17, 2015) (Broderick, J.); *Associacão dos Profissionais dos Correios v. Bank of New York Mellon Corp.*, 2022 WL 4955312, at *7 (S.D.N.Y. Oct. 4, 2022) (Parker, M.J.), *rep. & recommendation adopted as modified*, 2024 WL 4299019 (S.D.N.Y. Sept. 25, 2024); *see also In re Hornbeam Corp.*, 2018 WL 7577226, at *2 (S.D. Fla. Sept. 21, 2018) (rejecting challenge to 1782 discovery based on Rule 27, and noting "[r]espondents have not identified any case in which a court applied the Rule 27 standard for pre-suit depositions to a proceeding governed by § 1782").

Notably, pre-suit discovery that meets the requirements of Section 1782—without regard to whether it also meets the requirements of Rule 27—has been permitted under Section 1782

18

since the Supreme Court issued its decision in *Intel* in 2004. That no court has even suggested in the last 21 years that Rule 27 applies to Section 1782 discovery in the way the Schottenstein Parties contend is telling. *See* Dkt. 52-1 at 13-19 (none of the eight cases cited involves 1782 discovery).

Indeed, grafting the additional requirements of Rule 27 onto the requirements of Section 1782 would be contrary to *Intel* and its Second Circuit progeny, under which both document and deposition discovery for a reasonably contemplated proceeding is permitted so long as the petitioner "provide[s] some objective indicium that the action is being contemplated." *Certain Funds, Accounts, and/or Investment Vehicles v. KPMG, LLP*, 798 F.3d 113, 123-124 (2d Cir. 2015); *see Furstenberg*, 785 F. App'x at 885; *Mangouras v. Squire Patton Boggs*, 980 F.3d 88, 101 (2d Cir. 2020). Contrary to *Intel* and its Second Circuit progeny, the Schottenstein Parties' Rule 27 argument would require a Section 1782 applicant to make additional showings before being allowed to pursue pre-suit discovery, including that the applicant is "presently unable to bring [the proceeding] or cause it to be bought" and "without [the pre-suit discovery], known testimony would otherwise be lost, concealed, or destroyed." Dkt. 52-1 at 16-19 (quoting *Bryant v. Am. Fed'n of Musicians of the United States and Canada*, 666 F. App'x 14, 16 (2d Cir. 2016)).

Grafting those requirements onto Section 1782 would preclude pre-suit 1782 discovery from proceeding in many (if not most) instances in which, under *Intel* and its Second Circuit progeny, the discovery otherwise would be authorized. The Schottenstein Parties' argument thus also is contrary to the twin congressional aims underlying Section 1782, and constitutes yet another impermissible effort to relitigate Judge Broderick's decision that Orthogen has met the applicable statutory and other requirements to obtain pre-suit 1782 discovery.

It is also notable that if Rule 27 applied generally to 1782 discovery requests, the

19

petitioner in *Intel* would not have been entitled to the pre-suit discovery that the Supreme Court authorized in *Intel* because the petitioner's application sought "documents and transcripts of testimony from a[nother] proceeding," *Advanced Micro Devices, Inc. v. Intel Corp.*, 292 F.3d 664, 665 (9th Cir. 2002), and thus was not aimed (as Rule 27 requires) at "perpetuat[ing] testimony," Fed. R. Civ. P. 27. Nor is there any indication that the petitioner in *Intel* met the other requirements mentioned above that Rule 27 imposes on U.S. persons seeking pre-suit discovery under Rule 27. The Schottenstein Parties do not even attempt to explain how their Rule 27 argument squares with *Intel*.

As a final matter, even if Rule 27 applied generally to 1782 discovery requests, it would not apply here. In arguing otherwise, the Schottenstein Parties ignore the opening clause to the relevant text in Section 1782: "*[t]o the extent that the order [authorizing 1782 discovery] does not prescribe otherwise*, the testimony or statement shall be taken, and the document or thing produced, in accordance with the Federal Rules." 28 U.S.C. § 1782(a) (emphasis added). Here, Judge Broderick's order granting Orthogen's 1782 petition clearly "prescribe[s]" pre-suit discovery (indeed, in issuing the order, Judge Broderick expressly rejected the Schottenstein Parties' argument that pre-suit discovery should not be authorized), and thus, per the plain text of Section 1782, Rule 27 cannot bar the very discovery that Judge Broderick "prescribe[d]."

### B.   The Lack of a Pending Claim or Case Is Irrelevant

The Schottenstein Parties next argue incorrectly that Orthogen should be precluded from obtaining any discovery because (i) relevance and proportionality under Rule 26 supposedly cannot be assessed based on Orthogen's anticipated claims, and therefore (ii) the anticipated claims supposedly do not provide a sufficient basis for 1782 discovery. *See, e.g.*, Dkt. 52-1 at 19-24. As Orthogen demonstrated in its motion to compel, however, when, as here, 1782 discovery has been authorized for purposes of a contemplated foreign proceeding, relevance and

proportionality can be—and appropriately are—assessed by analyzing the relevance and proportionality of the discovery against the anticipated claims. *See* Dkt. 49 at 19-20 (citing cases). Recognizing that that is how courts around the country have analyzed relevance and proportionality in this context, the Schottenstein Parties claim that every one of those cases applied the wrong analysis and reached the wrong result.

The Schottenstein Parties' attempts to explain away those cases—on the grounds that the courts did "not appear to address [] Rule 27 nor interpret the terms 'claim' or 'case' under Rule 26," Dkt. 52-1 at 26; *see id.* at 27-30—fail because (i) as Orthogen demonstrated above, Rule 27 has limited application to 1782 discovery, *see supra* at 16-20, and none of the cases involved the limited circumstances in which it is applicable, (ii) it is thus unsurprising (and, indeed, harmful to the Schottenstein Parties' position) that none of the cases addressed Rule 27, and (iii) in each case, the court applied Rule 26's relevance and proportionality standard to the anticipated claims, thus confirming that the courts interpreted the terms "claim" and "case" under Rule 26 and concluded that, in the context where pre-suit discovery has been authorized under Section 1782, the terms properly are interpreted as referring to the anticipated claims and the reasonably contemplated foreign proceeding. *See In re Mutabagani*, 2023 WL 2811621, at *5 (S.D.N.Y. Apr. 6, 2023);[8] *Pishevar v. Fusion GPS*, 2025 WL 885115, at *5-6 (D.D.C. Mar. 21, 2025); *In re Stephen Shefsky*, 2024 WL 2275215, at *8 (D. Nev. May 20, 2024); *In re Mizuho Fin. Grp., Inc.*, 2023 WL 12004754, at *2 (C.D. Cal. Aug. 28, 2023).

---

[8] The Schottenstein Parties' argument that *Mutabagani* misstated what is required to satisfy the "reasonable contemplation" standard, Dkt. 52-1 at 26-27, not only is incorrect, but irrelevant. In granting Orthogen's 1782 petition, Judge Broderick correctly stated what is required to meet the standard and found that the petition satisfied the standard. Although the Schottenstein Parties can try to challenge Judge Broderick's ruling on appeal (for the reasons Orthogen has explained in its opposition to the Schottenstein Parties' stay motion, the challenge has no possibility of success, *see* Dkt. 51 at 13-26), they cannot relitigate that issue here.

Trying to cast doubt on Orthogen's position (and the above-cited rulings), the Schottenstein Parties assert that Orthogen's position is "impossible to reconcile" with *Intel* because when the Supreme Court authorized the petitioner in *Intel* to obtain pre-suit discovery, the petitioner had filed a "complaint" with the DG-Competition. The referenced "complaint," however, was not a "foreign proceeding"; rather, it was akin to the filing of a police report. Indeed, it merely triggered a preliminary investigation by the DG-Competition into *Intel*. *See Intel*, 542 U.S. at 254 ("On receipt of a complaint . . . the DG-Competition conducts a preliminary investigation."). Moreover, when the Supreme Court decided *Intel*, the "complaint" "ha[d] not progressed beyond the investigative stage," *id.* at 258, and it was unknown whether an actual "foreign proceeding" (either before the Commission or the Court of First Instance) would be brought, *see id.* at 255. The "complaint" in *Intel* thus was not akin to a filed "claim" or "case" under the Federal Rules. Accordingly, nothing about *Intel* suggests that a pending "claim" or "case" is required to assess the relevance or proportionality of pre-suit discovery that has been authorized under Section 1782.

The Schottenstein Parties do not cite a single case that casts doubt on the common-sense conclusion (adopted by every court to consider the issue) that, when, as here, discovery has been authorized under Section 1782 for purposes of a reasonably contemplated foreign proceeding, the relevant "claim" and "case" for purposes of evaluating relevance and proportionality are the 1782 petitioner's anticipated claims and contemplated proceeding. *See, e.g.*, *In re Hornbeam*, 2018 WL 7577226, at *2 ("Respondents have not identified any case in which a court applied the Rule 27 standard for pre-suit depositions to a proceeding governed by § 1782."). This Court should follow the reasoning of the cases cited by Orthogen, not because they are binding, *cf.* Dkt.

52-1 at 25-26, but because they are persuasive, and unlike the Schottenstein Parties' approach, consistent with the applicable Supreme Court and Second Circuit precedent.

As a final matter, the Schottenstein Parties' argument that a pending "claim" or "case" must exist (under U.S. or foreign law) for 1782 discovery to proceed, *e.g.*, Dkt. 52-1 at 23, fails for the additional reason that it would nullify *Intel*'s (and its Second Circuit progeny's) authorization of pre-suit discovery for reasonably contemplated foreign proceedings. The argument thus also is another attempt to relitigate Judge Broderick's conclusion that Orthogen is entitled to pursue pre-suit 1782 discovery for purposes of its Contemplated German Proceeding.

### C. Compelling Discovery Would Not Violate the Schottenstein Parties' Due Process Rights

In a final effort to relitigate Judge Broderick's decision authorizing 1782 discovery, the Schottenstein Parties argue that compelling 1782 discovery would violate their due process rights because it would upset their supposed expectations—purportedly based on the 2014 License Agreement—that if a dispute arose between them, Orthogen would not be permitted to pursue 1782 discovery. *See* Dkt. 52-1 at 32-37. As an initial matter, the due process argument fails because it is premised on an assertion that Orthogen already has shown to be incorrect: that by agreeing to have their disputes resolved by a German court applying German law, the parties supposedly agreed that 1782 discovery would be unavailable. As Dr. Kruger explained in his declaration in the Judith/Tomas 1782, and reiterates here, the assertion is incorrect, and the Schottenstein Parties could not reasonably have expected that Orthogen would be precluded from pursuing 1782 discovery if a dispute arose between them, because:

> [N]o authority exists under German law to support the proposition that a German forum selection clause (or choice of law provision) in an agreement acts to prohibit the parties to that agreement from taking any and all actions available to them to obtain evidence to use in a German proceeding, including seeking discovery through 1782.

23

. . .

To the contrary, under German law, the parties to a lawsuit are presumed to be permitted to use any evidence-gathering tools that are available to them. Indeed, a German court must consider whatever documents or other pieces of evidence a party presents to it, regardless of how the evidence was obtained (except when the use of the evidence would violate a fundamental [German] constitutional right, which is not a concern here), *see* Federal Supreme Court, judgment of 10 December 2002, docket no. VI ZR 378/01.[9] . . . . A German court may place more or less weight on a piece of evidence presented by a party, but the court will consider the evidence.

. . .

Therefore, as a general rule, German courts are receptive to the parties using whatever tools are available to them to obtain evidence, which would include Section 1782.

Supp. Kruger Decl. ¶ 20.

As Dr. Kruger further explains, "[t]he forum selection clause here does not impact the general rule." *Id.* ¶ 23. "Rather, under applicable German legal principles, the text of the forum selection clause supports the conclusion that the parties can use any evidence-gathering tools available to them, including 1782," because:

Under German law, if a contract expressly provides certain rights or obligations with respect to a particular item or topic, the parties are assumed not to have intended to create other rights or obligations with respect to that specific item or topic.

Here, however, neither the forum selection clause nor any other aspect of the parties' License Agreements addresses one way or the other what evidence-gathering tools a party may use to obtain evidence for use in a lawsuit brought in Germany under the License Agreements, including whether a party can use 1782. As a result, the legal proposition [raised by Mr. Scarcia-Scheel] (*i.e.*, that "[a]s a general matter, if there is no provision in a contract providing for a thing, then the German courts will likely conclude that the parties did not intend to create any reciprocal rights and obligations," Dkt. [52-2] ¶ [44]) is inapplicable. That

---

[9] The referenced constitutional rights in the quoted language above refer to fundamental rights under the German Constitution, such as freedom of opinion or inviolability of the home, and are nothing like—and would not be implicated by—a party being subject to discovery under Section 1782 pursuant to a U.S. court order. Supp. Kruger Decl. ¶ 20.

proposition is inapplicable when, as here (with respect to the parties' ability to use specific evidence-gathering tools), the parties' agreement does not address the matter.

Moreover, as noted above, under German law, the parties to a lawsuit are presumed to be permitted to use any evidence-gathering tools that are available to them. Therefore, [Mr. Scarcia-Scheel's assertion that "if the parties had wanted to allow American-style discovery as an exemption, they would have included it expressly in article 13.3 of the 2014 License Agreement," Dkt. [52-2] ¶ [45], is incorrect. Because article 13.3 does not address what evidence gathering tools a party may use to obtain evidence (it addresses an entirely different topic), no need existed to provide "an exemption" to the language in the License Agreements to address that (unaddressed) topic. Having not addressed the matter, the parties would be presumed to be able to use any proof-gathering tools available to them, including 1782.

Also relevant here is the general concept in German civil law that agreements must be interpreted in accordance with the parties' will and intent. *See* Section 133 of the German Civil Code. When the parties entered into the License Agreements, for the reasons stated above, they would have had no reason to expect that the forum selection and choice of law clauses would have modified the presumption that parties to a German lawsuit may use any evidence-gathering tools that are available to them.

Rather, they would have had the contrary expectation: that the forum selection and choice of law provisions would not limit the tools through which they could gather evidence, including 1782. Per the forum selection clause, they would have expected that a German court (rather than some other court) would resolve disputes between the parties, and per the choice of law clause, they would have expected that German law would govern, *which importantly contains no prohibition on parties seeking evidence through 1782*.

Also relevant is that the parties would have been presumed to enter into the License Agreements with the understanding that historically, U.S. courts have made 1782 discovery available to German litigants.[10] That backdrop, of which the parties would be presumed to have been aware, would have supported an expectation that 1782 would be an available evidence-gathering tool.

---

[10] *See Kang v. Nova Vision, Inc.*, 2007 WL 1879158, at *2 (S.D. Fla. June 26, 2007) (citing cases and observing that "there exists a substantial amount of case law where courts have found that German commercial courts are an appropriate forum for § 1782 assistance"); *see also In re Thales Dis Ais Deutschland GmbH*, 2021 WL 7707268, at *3 (N.D. Tex. Nov. 5, 2021) ("German courts are often receptive to § 1782 evidence."); *In re Cal. State Teachers' Ret. Sys.*, 2017 WL 1246349, at *4 (D.N.J. Apr. 3, 2017) ("German courts often welcome evidence from § 1782 applications[.]").

*Id.* ¶ 23 (emphasis in original).

In short, compelling the Schottenstein Parties to produce discovery here cannot possibly deprive them of their due process rights because the German forum selection clause to which they agreed incorporates German law and procedure, which in turn incorporates the use of 1782 discovery.[11] Moreover, the Schottenstein Parties' assertion that "[t]o permit [the Subpoenas'] enforcement would deprive [Dr. Schottenstein] of [his] fundamental liberty interest in being heard and being able to contest Orthogen's phantasmal claims in the forum agreed upon by the parties," Dkt. 52-1 at 36-37, is obviously wrong. After Orthogen obtains the discovery, it will initiate the Contemplated German Proceeding and pursue the fraud and breach of contract claims described here. *See* Dkt. 49 at 14. Once Orthogen does that, Dr. Schottenstein will be able to contest the claims—just as he contested Orthogen's distinct claims in the Pending German Proceeding—and he can also try to convince the German court not to consider any of the discovery obtained here (though such an effort will fail for the reasons Dr. Kruger has explained). *See* Supp. Kruger Decl. ¶¶ 22-24.

In any event, the Schottenstein Parties' due process argument is a repackaging of their claim that the forum selection clause in the 2014 Agreement prohibits the 1782 discovery Orthogen seeks. *See* Dkt. 52-1 at 34-36. The Schottenstein Parties' argument thus is yet another attempt to relitigate Judge Broderick's conclusion that the existence of the forum selection clause does not preclude Orthogen from obtaining the discovery. *See* Dkts. 35, 40.

---

[11] The Schottenstein Parties' suggestion that a December 2024 lawsuit filed by Orthogen against Dr. Schottenstein somehow precludes 1782 discovery here also is wrong. Dkt. 52-1 at 36. There, Orthogen seeks to recover the costs it incurred from litigating the N.Y. Action (prior to Orthogen's dismissal in June 2024), which the Schottenstein Parties initiated against Orthogen in violation of the 2014 Agreement's forum selection clause. *See* Supp. Kruger Decl. ¶ 25. That lawsuit has no bearing on the availability of 1782 discovery here.

### D. The Schottenstein Parties Concede that the Requested Discovery Is Relevant and Proportional to Orthogen's Anticipated Claims

The Schottenstein Parties do not dispute that the Subpoenas' Requests and deposition topics are relevant and proportional to Orthogen's anticipated claims. Nor do they attempt to show that the Requests or deposition topics pose an undue burden. By filing transparently meritless arguments in an oversized brief without addressing the relevant legal issues, they continue to prove what Orthogen has said all along: the Schottenstein Parties are just trying to delay proceedings to avoid disclosure of the evidence that will lay bare the substantial extent of Dr. Schottenstein and Edward Capla's fraud, as well as their substantial liability for that fraud. Orthogen respectfully requests that this Court do what the Florida Court did when Edward Capla tried the same thing: deny the Schottenstein Parties' motion to quash and order them promptly to produce the demanded documents and within a reasonable time thereafter, sit for depositions, while reminding them that they "have an obligation to make a diligent search and inquiry to locate and produce all responsive documents and failure to do so may result in sanctions." Florida 1782, Dkt. 120 at 3-4.

<div align="center">

**CONCLUSION**

</div>

Accordingly, the Court should grant Orthogen's motion to compel and deny the Schottenstein Parties' cross-motion to quash and request for a stay.

Dated: July 3, 2025

<div style="margin-left: 40%">

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

_/s/ Christopher B. Harwood_
Christopher B. Harwood
Matthew Garry
565 Fifth Avenue
New York, New York 10017

</div>

<div align="center">27</div>

Tel: (212) 856-9600
Fax: (212) 856-9494
charwood@maglaw.com
mgarry@maglaw.com

*Attorneys for Petitioner Orthogen*
*International GmbH*

## <u>CERTIFICATION OF WORD COUNT</u>

Pursuant to Local Civil Rule 7.1(c), I certify that the foregoing memorandum of law contains 8,710 words, excluding the caption, table of contents, table of authorities, signature block, and this certificate. This certificate was prepared in reliance on the word-count function of the word-processing system (Microsoft Word) used to prepare this document.

Dated: New York, New York
       July 3, 2025

                                    MORVILLO ABRAMOWITZ GRAND
                                    IASON & ANELLO P.C.

                                    By:    *s/ Cristopher B. Harwood*
                                           Christopher B. Harwood

                                    Christopher B. Harwood
                                    565 Fifth Avenue
                                    New York, New York 10017
                                    Tel: (212) 856-9600
                                    Fax: (212) 856-9494
                                    charwood@maglaw.com

                                    *Attorney for Petitioner Orthogen*
                                    *International GmbH*