**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE APPLICATION OF ORTHOGEN INTERNATIONAL GMBH, <br><br>                      Petitioner, <br><br> for an order pursuant to 28 U.S.C. § 1782 to conduct discovery for use in a foreign proceeding. | Case No.: 1:23-mc-00152-VSB-KHP <br> Related Case: 1:24-mc-00504-VSB <br><br> Hon. Katharine H. Parker |

---

**RESPONDENTS' REPLY BRIEF IN FURTHER SUPPORT OF THEIR CROSS-MOTION TO QUASH, OR ALTERNATIVELY, TO STAY ENFORCEMENT DURING THE PENDENCY OF THE GERMAN APPEAL**

---

**BRACH EICHLER LLC**
Edward D. Altabet
5 Penn Plaza, 23d Floor
New York, NY 10001
ealtabet@bracheichler.com

*Attorneys for Respondents*

**TABLE OF CONTENTS**

ARGUMENT ........................................................................................................................ 1

I.     ORTHOGEN ADMITS IT SEEKS PRE-SUIT DISCOVERY, BUT HAS WHOLLY
       FAILED TO MEET ITS BURDEN UNDER RULE 27; AND IT CANNOT MEET
       ITS BURDEN UNDER RULE 26 ................................................................................ 1

       A.    The Federal Rules of Civil Procedure Are Applicable to Proceedings Under Section
             1782 ................................................................................................................... 1

       B.    The Burden Is Undue Because There Is Neither a Claim Nor a Klageshrift. .......... 10

II.    BY BEING SUBJECTED TO RULE 45 DISCOVERY, THE SCHOTTENSTEIN
       PARTIES' DUE PROCESS RIGHTS ARE VIOLATED BECAUSE THERE IS NO
       FORUM IN WHICH THEY CAN ASSERT THEIR RIGHTS UNDER THE ZPO
       AND BGB ............................................................................................................... 10

       A.    Enforcement of the Subpoenas Deprives the Schottenstein Parties of Their Rights
             Under the ZPO ................................................................................................... 10

       B.    Enforcement of the Subpoenas Deprives the Schottenstein Parties of Their Rights
             Under the BGB. ................................................................................................. 15

III.   A STAY SHOULD ISSUE UNDER PRINCIPLES OF INTERNATIONAL
       COMITY DURING THE PENDENCY OF THE GERMAN APPEAL .................... 17

       CONCLUSION ........................................................................................................ 18

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Aguila Energia e Participacoes Ltda. v. JPMorgan Chase & Co.*,
   No. 24-2133-CV, 2025 WL 1661987 (2d Cir. June 12, 2025) ................................. 2

*Associacão dos Profissionais dos Correios v. Bank of New York Melon Corp*.,
   2022 WL 4955312 (S.D.N.Y. Oct. 4, 2022),
   rep. & recommendation adopted as modified,
   2024 WL 4299019 (S.D.N.Y. Sept. 25, 2024) ........................................................... 6

*Bayer AG v. Betachem, Inc.*,
   173 F.3d 188 (3d Cir. 1999) ..................................................................................... 2

*Goss v. Lopez*,
   419 U.S. 565, 572-73, 95 S. Ct. 729, 42 L. Ed. 2d 725 (1975) ............................... 11

*In re Associacao dos Profissionais dos Correios*,
   No. 22-MC-132 (RA), 2024 WL 4299019, *7 (S.D.N.Y. Sept. 25, 2024) ............... 7

*In re Edelman*,
   295 F.3d 171 (2d Cir. 2002) ..................................................................................... 3

*In re Hornbeam Corp.*,
   2015 WL 13647606 (S.D.N.Y. Sept. 17, 2015) ......................................................... 2

*In re Novalpina Cap. Partners I GP S.À.R.L.*,
   No. 23 MISC. 25 (PGG), 2025 WL 1160854 (S.D.N.Y. Apr. 21, 2025) .................... 3

*Intel Corp. v. Advanced Micro Devices, Inc.*,
   542 U.S. 241, 124 S. Ct. 2466, 159 L. Ed. 2d 355 (2004) ........................................ 9

*Martinez v. Bloomberg LP*,
   740 F.3d 211 (2d Cir. 2014 ...................................................................................... 13

*Mathews v. Diaz*,
   426 U.S. 67, 96 S. Ct. 1883, 48 L. Ed. 2d 478 (1976) .............................................. 12

*See In re Hornbeam Corp*.,
   2018 WL 7577226 (S.D. Fla. Sept. 21, 2018) .......................................................... 8

*Shelley v. Kraemer*,
   334 U.S. 1, 68 S. Ct. 836, 92 L. Ed. 1161 (1948) ..................................................... 12

*Vitek v. Jones*,
   445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980) ............................................. 12

*Wilkinson v. Austin,*
    545 U.S. 209, 125 S. Ct. 2384, 162 L. Ed. 2d 174 (2005) ...................................... 11

*Wolff v. McDonnell,*
    418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) ............................................ 12

*ZF Automotive US, Inc. v. Luxshare, Ltd.,*
    596 U.S. 619 (2022) .......................................................................................... 18

**STATUTES**

28 U.S.C. § 1782 ........................................................................................................... 1

**RULES**

Fed. R. Civ. P. 1 ...................................................................................................... 4, 5

Fed. R. Civ. P. 2 ......................................................................................................... 5

Rule 26 ........................................................................................................... 1, 2, 7, 8

Rule 27 ........................................................................................................... 1, 2, 7, 8

Rule 81 ...................................................................................................................... 5, 6

Rule 81(a)(1) ............................................................................................................... 5

Rule 81(a)(2) ............................................................................................................... 5

Rule 81(a)(3) ............................................................................................................... 5

Rule 81(a)(4) ............................................................................................................... 5

Rule 81(a)(5) ............................................................................................................... 6

## ARGUMENT

**I. ORTHOGEN ADMITS IT SEEKS PRE-SUIT DISCOVERY, BUT HAS WHOLLY FAILED TO MEET ITS BURDEN UNDER RULE 27; AND IT CANNOT MEET ITS BURDEN UNDER RULE 26**

### A. The Federal Rules of Civil Procedure Are Applicable to Proceedings Under Section 1782

In response to the Schottenstein Parties cross-motion to quash and to stay, Orthogen effectively collapses the analysis under Rules 27 and 26 arguing the Federal Rules of Civil Procedure don't apply.

According to Orthogen, Rule 27 is not applicable in 1782 proceedings and that it need not satisfy Rule 26's requirement of establishing that there is any "claim" by way of a complaint or a *klage* because its request for discovery — its petition consisting of inadmissible hearsay statements alleging what Orthogen allegedly intends to allege in a proceeding it may one day commence in Germany, but which it has not in the two years it has been representing that it would to various federal courts in the United States — is sufficient to meet Rule 26, which is for some reason applicable while Rule 27 is not.

The Federal Rules of Civil Procedure are applicable in a proceeding under 28 U.S.C, § 1782. Orthogen's assertion that "[w]hen, as here, a subpoena for pre-suit discovery has been authorized and issued under Section 1782, the Rule 27 standard for evaluating whether pre-suit discovery is permissible under the Federal Rules has no applicability" is meritless. (Br., 16-17). Orthogen supports this assertion by quoting *dicta* from Judge Broderick's April 30, 2025 Order in the 2d SDNY Proceeding, which would not bind this Court even if it were not dicta, that "[n]owhere in the statute, or any case law that I can find, does it state that § 1782 actions are governed by the Federal Rules more broadly[.]" (*Id.*).

The actual legislative history fatally undercuts Orthogen's position and Judge Broderick's *dicta*. Congress expressly presumed the applicability of the Federal Rules in connection with every 1782 application, including Rule 27, explaining that: "**The ample safeguards of the Federal Rules of Civil Procedure, Rules 26–32, will prevent misuse of this section**." *See* 28 U.S.C.A. § 1782, Historical and Revision Notes, 1948 Act. (emphasis added).

Orthogen's assertion that Rule 27 does not apply is not only undermined by the legislative history, but its position is conceptually confused. It is the Federal Rules of Civil Procedure that provide for and establish the availability of a system of discovery in U.S. district courts. Section 1782 could have neither operation nor meaning absent the system of the Federal Rules being presumed.

We are unclear why Judge Broderick's *dicta* makes the assertion that there is no statutory basis for believing that the Federal Rules apply when the statute expressly refers to the Federal Rules. As the Third Circuit has opined of the statutory language in *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999), "[t]he reference in § 1782 to the Federal Rules suggests that under ordinary circumstances *the standards for discovery under those rules should also apply when discovery is sought under the statute*." The Second Circuit recently made a similarly observation, noting in *Aguila Energia e Participacoes Ltda. v. JPMorgan Chase & Co.*, No. 24-2133-CV, 2025 WL 1661987 (2d Cir. June 12, 2025), for example, that "[t]e district court correctly reviewed JPMorgan Chase's motion to quash the § 1782 subpoena under ordinary discovery rules[.]"

Judge Broderick's *dicta* in the 2d SDNY 1782 Proceeding is also incongruous with another decision of his that Orthogen relies upon, *In re Hornbeam Corp.*, 2015 WL 13647606, at *5-6 (S.D.N.Y. Sept. 17, 2015) (Broderick, J.). There, Judge Broderick repeatedly emphasized

the broad applicability of the Federal Rules of Civil Procedure in the 1782 proceedings before

him. *See*, *e.g*, id., *5 ("This narrow reading is inconsistent with the "basic purpose" of the

Federal Rules of Civil Procedure, which is to "eliminate trial by ambush" and encourage full

disclosure of relevant information among the parties. [citations omitted]. In light of the

objectives of the Federal Rules, it simply makes no sense to require that Hornbeam provide

notice of a subpoena duces tecum or a deposition to its adversaries in actual foreign litigation, or

of a deposition to its expected adversaries in anticipated foreign litigation, but not of a subpoena

duces tecum to its expected adversaries in anticipated foreign litigation."); *6 ("I therefore

conclude that, because § 1782 provides for discovery in accordance with the Federal Rules …");

*9 ("However, consistent with the Federal Rules of Civil Procedure, Hornbeam must now

remedy its failure to provide notice to Symeou by providing Symeou with a copy of all

subpoenas previously served under the Authorizing Order."); *see also In re Novalpina Cap.*

*Partners I GP S.À.R.L.*, No. 23 MISC. 25 (PGG), 2025 WL 1160854 (S.D.N.Y. Apr. 21, 2025)

(in case where petitioner "filed three lawsuits in Luxembourg": "A court considering a request

for discovery under § 1782 must also be mindful of U.S. federal discovery procedures under

Rules 26 and 45 of the Federal Rules of Civil Procedure.")

Orthogen's assertion that because leave was granted to serve Rule 45 subpoenas, the

rights of subpoenaed parties under the Federal Rules are somehow stripped from them is also

incorrect. (Br, 16). The Second Circuit in *In re Edelman*, 295 F.3d 171, 181 (2d Cir. 2002)

explained that the mere grant of leave to serve Rule 45 subpoenas does not preclude or obviate

objections to subpoenas under the FRCP.

In *Edelman*, the parties there — unlike here — were involved in *an actual securities*

*litigation pending in France* and the party resisting the 1782 discovery had previously availed

itself of discovery under 1782. *Id.*,173 & 181 ("In this case, Société has already obtained discovery in the United States. In fact it was the French company, with which Taittinger is closely associated, that first filed for a discovery order under § 1782(a).").

In *Edelman*, one Asher Edelman and several funds controlled by him sought 1782 discovery against Société du Louvre ("Société"), specifically, one Claude Taittinger, a member of Société's board. The issue in that case was whether Taittinger, a resident of France, could be said to be "found" within the Southern District when he was served with a subpoena while "at Gagosian Art Gallery in New York City[.]" *Id.*, *174. The district court concluded that he was not found in the district and quashed the subpoena. The Second Circuit reversed — but it did not simply rubber stamp the subpoena: "Our determination that the district court erred by interpreting § 1782(a) too narrowly does not mean that Taittinger must be deposed. Under Rule 45 of the Federal Rules of Civil Procedure, respondent contends that he cannot be forced to testify in the United States." *Id.*, *180-81. Thus, explained the Second Circuit, Rule 45 "may [yet] bar the deposition notwithstanding our holding that Taittinger is not beyond the scope of § 1782(a). On remand, the district court should consider whether Rule 45(c)(3)(A)(ii) requires the subpoena to be quashed." *Id.*, 181. Moreover, the Second Circuit directed the district court on remand to "consider the effect of its decision on the 'procedural parity' of the parties to the French litigation." *Id.*

Orthogen asserts that its view that the "the Federal Rules do not apply more generally to 1782 discovery makes sense because 1782 petitions (i) are not <u>civil lawsuits</u> governed by the Federal Rules (rather, they are a means for obtaining discovery for use in a foreign proceeding), and (ii) serve different purposes than the Federal Rules." (Br., 17). In support of this statement, Orthogen juxtaposes a citation to *Intel* with a citation to Fed. R. Civ. P. 1. (Br., 17).

Orthogen continues to misinterpret *Intel* and misreads the Federal Rules.

Fed. R. Civ. P. 1 provides that: "These rules govern the procedure ***in*** **all** ***civil actions and proceedings*** in the United States district courts, except as stated in Rule 81." (emphasis added). Orthogen's paraphrasing of the Rule, as referring to a "civil lawsuits," is incorrect. This obscures and ignores Fed. R. Civ. P. 2, which merged the procedures at law, the forms of action, with the procedures in equity, brought on bills and petitions, into a unitary "civil action." The federal rules do not simply apply in plenary actions — or civil lawsuits — in federal court. They apply to "all civil actions and proceedings" in federal district court — except as provided for in Rule 81(a).

There is only one form of civil proceeding under Rule 81 to which the Federal Rules do not apply: "prize proceedings in admiralty governed by 10 U.S.C. §§ 7651-7681." Rule 81(a)(1). A prize proceeding is a legal process to determine the status of a ship or cargo captured during wartime. In all other cases mentioned in Rule 81, the Federal Rules apply except to the extent expressly displaced by other procedures that have been codified. Thus, for example, Rule 81(a)(2) provides the federal "rules apply to bankruptcy proceedings to the extent provided by the Federal Rules of Bankruptcy Procedure." Rule 81(a)(3) prescribe that the rules apply to "proceedings for admission to citizenship to the extent that the practice in those proceedings is not specified in federal statutes and has previously conformed to the practice in civil actions." And Rule 81(a)(4) states that the rules apply in "proceedings for habeas corpus and for quo warranto to the extent that the practice in those proceedings: (A) is not specified in a federal statute, the Rules Governing Section 2254 Cases, or the Rules Governing Section 2255 Cases; and (B) has previously conformed to the practice in civil actions."

The only provision of Rule 81 expressly dealing with subpoenas is not applicable here. Rule 81(a)(5) provides that "[t]hese rules apply to proceedings to compel testimony or the production of documents through a subpoena issued **by a United States officer or agency under a federal statute**, except as otherwise provided by statute, by local rule, or by court order in the proceedings." (emphasis added). Orthogen is obviously not a United States officer or an agency.

And the catch-all provision, found in Rule 81(a)(6), provides that "[t]hese rules, to the extent applicable, govern proceedings under the following laws, except as these laws provide other procedures:

(A)    7 U.S.C. §§ 292, 499g(c), for reviewing an order of the Secretary of Agriculture;
(B)    9 U.S.C., relating to arbitration;
(C)    15 U.S.C. § 522, for reviewing an order of the Secretary of the Interior;
(D)    15 U.S.C. § 715d(c), for reviewing an order denying a certificate of clearance;
(E)    29 U.S.C. §§ 159, 160, for enforcing an order of the National Labor Relations Board;
(F)    33 U.S.C. §§ 918, 921, for enforcing or reviewing a compensation order under the Longshore and Harbor Workers' Compensation Act; and
(G)    45 U.S.C. § 159, for reviewing an arbitration award in a railway-labor dispute.

But nowhere in Rule 81 is there any mention of 28 U.S.C. § 1782, which makes sense given that Congress expressly stated that "[t]he ample safeguards of the Federal Rules of Civil Procedure, Rules 26–32, will prevent misuse of" Section 1782."

Orthogen's reliance upon this Court's decision in *Associacão dos Profissionais dos Correios v. Bank of New York Mellon Corp.*, 2022 WL 4955312, at *7 (S.D.N.Y. Oct. 4, 2022) (Parker, M.J.), rep. & recommendation adopted as modified, 2024 WL 4299019 (S.D.N.Y. Sept. 25, 2024), is wholly misplaced. (Br., 18).

In that case, this Court denied the petition and touched upon Rule 27. In that case, there were in fact actual civil and criminal proceedings in Brazil. *Id.*, *1. But Court, having found the statutory requirements met, nevertheless denied the petition in under the discretionary portion of the inquiry. In the context of the third factor, the Court found that it "weighs against granting the application" because "[t]he Federal Rules of Civil Procedure generally do not allow for pre-suit discovery." Fed. R. Civ. P. 27(a) (describing limited circumstances in which pre-suit discovery might be permitted).

Judge Abrams modified this Court's holding — finding that this Court did not take its findings far enough based upon its ratio decidendi. Judge Abrams agreed with this Court that "BNY Mellon offered persuasive evidence that ADCAP's request is—at least in part—a veiled attempt to circumvent the United States' prohibition on most pre-suit discovery, *see* Fed. R. Civ. P. 27(a)[.]" *In re Associacao dos Profissionais dos Correios*, No. 22-MC-132 (RA), 2024 WL 4299019, *7 (S.D.N.Y. Sept. 25, 2024). But Judge Abrams found issue to be dispositive in itself, warranting denial of the petition under the third Intel factor. Judge Abrams opined:

> Although a tailored discovery would be appropriate to address the first *Intel* factor, it would not be sufficient here. Nor would a protective order. "[A] protective order is not an effective remedy for a [broad] discovery request," like ADCAP's, "that is searching for whether to bring a lawsuit in the United States." *In re Postalis*, 2018 WL 6725406, at *4. After all, "[t]he **results of the discovery request can shape the decision [of] whether to bring such a lawsuit** and thereafter the types of documents to seek, even if the documents that are produced in response to the § 1782 application are never actually used in the United States lawsuit." *Id.* **A more tailored discovery order here would not obviate these risks**.

*Id.* Thus, Judge Abrams concluded that "the third *Intel* factor is reason enough to deny ADCAP's application." *Id.*

The only other case that Orthogen cites to is another case involving *Hornbeam* in the Southern District of Florida. *See In re Hornbeam Corp*., 2018 WL 7577226, at *2 (S.D. Fla. Sept. 21, 2018) ("*Florida Hornbeam*"). Florida Hornbeam is completely unpersuasive for two reasons. First, the court's discussion there is entirely conclusory. Second, the only insight the court does offer as to how it reached its conclusion is completely specious. The *Florida Hornbeam* court stated: "[r]espondents have not identified any case in which a court applied the Rule 27 standard for pre-suit depositions to a proceeding governed by § 1782."

This argument is invalid. The ostensible demand by the court — that the party resisting pre-suit discovery cite a case holding that an express Federal Rule should be applied where it is, under Rule 1, applicable in every "civil action or proceeding" in a U.S. District Court is specious reasoning because it is exactly backwards. Because there is an express and binding Rule that governs the limited circumstances when pre-suit discovery may be had, the party seeking discovery in derogation of the Rule must present authority recognizing an exception that permits such derogation by the court. The *Florida Hornbeam* court could point to no such authority. Nor can Orthogen.

*    *    *

Finally, Orthogen continues to rely upon in its misinterpretation of *Intel*. The Schottenstein Parties have addressed elsewhere the Supreme Court's holding in this case. In their opposition to Orthogen's motion to compel, the Schottenstein Parties pointed out the significance of the fact to the Supreme Court that AMD had in fact filed a complaint with DG-Competition.

Orthogen argues that it is "notable that if Rule 27 applied generally to 1782 discovery requests, the petitioner in *Intel* would not have been entitled to the pre-suit discovery … [n]or is there any indication that the petitioner in *Intel* met the other requirements mentioned above that

Rule 27 imposes on U.S. persons seeking pre-suit discovery under Rule 27. The Schottenstein Parties do not even attempt to explain how their Rule 27 argument squares with *Intel*." (Br. 19-20).

And as for the all of *Intel*'s express references to the complaint that AMD filed (see Schott. Opp. Br., 20-21), Orthogen incorrectly asserts that "[t]he referenced 'complaint,' however, was not a 'foreign proceeding'; rather, it was akin to the filing of a police report. Indeed, it merely triggered a preliminary investigation by the DG-Competition into *Intel*. … The 'complaint' in *Intel* thus was not akin to a filed 'claim' or 'case' under the Federal Rules." (Br., 22).

This is incorrect on two levels. First, as argued in the motion to stay, the above completely misstates the discussion in *Intel*. (*See* Stay Reply Br., 2-3). Intel had argued "that AMD's complaint has not progressed beyond the investigative stage; therefore, no adjudicative action is currently or even imminently on the Commission's agenda." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 258, 246, 124 S. Ct. 2466, 159 L. Ed. 2d 355 (2004). The Court rejected this view, *id.*, at 259, ruling instead that that "***the Commission is a § 1782(a) 'tribunal' when it acts as a first-instance decisionmaker***," *id.*, 246-47. (emphasis added)

Second, the suggestion that AMD's complaint was "akin to filing a police report" has no support and is demonstrably incorrected as demonstrated by the 588 dispositive ruling the Commission issue on May 13, 2009. As is particularly pertinent here, paragraph 5 of the Commission Decision "relating to a proceeding under Article 82 of the EC Treaty and Article 54 of the EEA Agreement (COMP/C-337.990 – Intel) explains:

> On 18 October 2000, **AMD submitted a <u>formal complaint</u> to the Commission** under Article 3 of Council Regulation (EC) No 17/62, First Regulation implementing Articles 81 and 82 of the Treaty.

(Altabet Decl., Ex. 1).

### B. The Burden Is Undue Because There Is Neither a Claim Nor a Klageshrift.

Orthogen contends that the Schottenstein Parties did not address undue burden under Rule 26. (Br., 27). That is incorrect. Under the argument advanced by the Schottenstein Parties, their burden here is not merely undue — it is functionally infinite. Rule 26 requires courts to weigh the burden of discovery in relation to the relevance and necessity of the material sought. But relevance under Rule 26 is not abstract. It is tethered to a live "claim or defense" in a pending legal action. There is no such claim here. Orthogen has not filed a *Klageschrift* in any German court; it has not initiated any proceeding in which the requested discovery would be used. As a result, the Rule 26 proportionality analysis collapses before it can begin: there is no standard against which to assess relevance, necessity, or burden.

Without a pending claim, the recipient of a subpoena cannot even begin to assess which documents are relevant, which custodians are appropriate, or how voluminous and sensitive the responsive materials might be. This lack of mooring makes the burden not only speculative but incalculable. And Rule 26(b)(1) does not authorize discovery in the abstract.

## II. BY BEING SUBJECTED TO RULE 45 DISCOVERY, THE SCHOTTENSTEIN PARTIES' DUE PROCESS RIGHTS ARE VIOLATED BECAUSE THERE IS NO FORUM IN WHICH THEY CAN ASSERT THEIR RIGHTS UNDER THE ZPO AND BGB

### A. Enforcement of the Subpoenas Deprives the Schottenstein Parties of Their Rights Under the ZPO.

Enforcement of the subpoenas would violate the Schottenstein Parties' due process rights under the U.S. Constitution. There is no pre-trial discovery under German civil procedure. Here, German law is stipulated as the applicable law under Article 13 and any disputes, with one narrow exception found in Art. 13.3, must be brought in Germany. The Schottenstein Parties'

have rights under both German substantive law and German procedural law. And there are powerful federal policies that favor enforcement of forum selection clauses.

Orthogen contends that "compelling the Schottenstein Parties to produce discovery here cannot possibly deprive them of their due process rights because the German forum selection clause to which they agreed incorporates German law and procedure, which in turn incorporates the use of 1782 discovery." This is incorrect.

The parties have contracted for a legal system and its policy choices as enacted in its civil code and in its code of civil procedure. "German law does not allow fishing for evidence ("*Ausforschungsbeweis*"), which violates a fundamental principle of German civil procedure, namely, the principle of production ("*Beibringungsgrundsatz*")." (Supp. Decl. ¶ 20). Krüger nowhere denies these principles of German law or their applicability. Indeed, Orthogen's petition concerning the "Contemplated German Proceeding" is predicated on the fact that there is no discovery permitted under German law.

The deprivation here is federal action that would destroy the Schottenstein Parties rights under the BGB and ZPO, which it has by virtue of the mandatory forum selection clause. In *Goss v. Lopez*, the Supreme Court was explained that the kind of argument that Orthogen now makes "misconceives the nature of the issue." "The Fourteenth Amendment forbids the State to deprive any person of life, liberty, or property without due process of law. Protected interests in property are normally 'not created by the Constitution. Rather, they are created and their dimensions are defined' by an independent source such as state statutes or rules entitling the citizen to certain benefits. *Goss v. Lopez*, 419 U.S. 565, 572-73, 95 S. Ct. 729, 42 L. Ed. 2d 725 (1975) (citing *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); *Wilkinson v. Austin*, 545 U.S. 209, 125 S. Ct. 2384, 162 L. Ed. 2d 174 (2005) ("The Fourteenth

Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake. A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word "liberty," *see*, *e.g.*, *Vitek v. Jones*, 445 U.S. 480, 493–494, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980) (liberty interest in avoiding involuntary psychiatric treatment and transfer to mental institution), or it may arise from an expectation or interest created by state laws or policies, *see*, *e.g.*, *Wolff v. McDonnell*, 418 U.S. 539, 556–558, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (liberty interest in avoiding withdrawal of state-created system of good-time credits).

The Fifth Amendment's due process clause applies with like effect to the federal governed as the one in the 14th Amendment does to the States. *See Mathews v. Diaz*, 426 U.S. 67, 77, 96 S. Ct. 1883, 48 L. Ed. 2d 478 (1976) ("The Fifth Amendment, as well as the Fourteenth Amendment, protects every one of these persons from deprivation of life, liberty, or property without due process of law.").

Here, the enforcement of the subpoenas by a federal court would deprive the Schottenstein Parties of their rights created under German law — specifically, their rights under the ZPO and BGB — which is a cognizable deprivation of a liberty interest protected under the 5th Amendment's due process clause. *Cf. Shelley v. Kraemer*, 334 U.S. 1, 14, 68 S. Ct. 836, 92 L. Ed. 1161 (1948) ("That the action of state courts and of judicial officers in their official capacities is to be regarded as action of the State within the meaning of the Fourteenth Amendment, is a proposition which has long been established by decisions of this Court…. *In Ex parte Commonwealth of Virginia*, 1880, 100 U.S. 339, 347, 25 L.Ed. 676, the Court observed: 'A State acts by its legislative, its executive, or its judicial authorities. It can act in no other way.' *In*

*the Civil Rights Cases*, 1883, 109 U.S. 3, 11, 17, 3 S.Ct. 18, 21, 27 L.Ed. 835, this Court pointed out that the Amendment makes void 'state action of every kind' which is inconsistent with the guaranties therein contained, and extends to manifestations of 'state authority in the shape of laws, customs, or judicial or executive proceedings.'")

"A decision invalidating a forum selection clause mandating proceedings abroad implicates foreign relations, an area of "paramount federal interest." *Martinez v. Bloomberg LP*, 740 F.3d 211 (2d Cir. 2014) (citations omitted). "The *Bremen* test supports this interest by ensuring that federal courts give effect to forum selection clauses designating foreign fora except in a few, narrowly defined circumstances. There is no similar federal interest, however, in overriding parties' contractually chosen body of law in favor of uniform federal rules governing the interpretation of forum selection clauses." *Id.*

Orthogen argues that "neither the forum selection clause nor any other aspect of the parties' License Agreements addresses one way or the other what evidence-gathering tools a party may use to obtain evidence for use in a lawsuit brought in Germany under the License Agreements, including whether a party can use 1782." (Br., 24, quoting Kruger Decl. ¶ 23). This is wrong. "And Krüger points to no authority to support these statements." (Supp. Decl. ¶ 17).

First, Krüger ignores the doctrine of *lex fori*. (Scarcia-Scheel Decl. ¶¶ 48-53). When parties agree to the resolution of a case in a German court, in a matter governed by German substantive law, Germany's ZPO is applicable in that proceeding. (Supp. Decl. ¶ 18). "Krüger does, because he cannot, deny this well-established principle of German law," which is a universally recognized principal of international private law.

Discovery under § 1782 is such a fundamental deviation from the principles of German civil procedural law. While Krüger would attempt to construe the 2014 License Agreement's

omission of any mention of Section 1782 as meaning that such is permitted, Krüger is wrong.

Under German law, it is the of the utmost significance that 28 U.S.C. § 1782(a) is not an express exemption in Article 13.3 of the 2014 License Agreement. As a general matter of German contract law, "if there is no provision in a contract providing for a thing, then the German courts will like conclude that the parties did not intend to create any reciprocal rights and obligations. The contractual provision is generally to be regarded as conclusive." (Scarcia-Scheel Decl. ¶ 44 (citing Federal Supreme Court of Germany in Neue Juristische Wochenschrift (NJW) – New Legal Weekly Journal, 2002 on page 2310 et seq.; Soergel/Riesenhuber (2022), Commentary of the German Civil Code, 14th edition, section 133, recital 69)).

Krurger does not deny the validity of this principle under German law. "Under German law, had the parties intended to permit the other to engage in a Section 1782 proceeding in a U.S. court they would have expressly so stated, precisely because such discovery is completely alien to German litigation." (Supp. Decl. ¶ 24).

This conclusion is bolstered by the provisions of Art. 13.3, of which Krüger states that it "does not address what evidence gathering tools a party may use to obtain evidence." (Krüger Decl. ¶ 23). But again, this is a German contract that is to be construed under German law by a German court in accordance with the ZPO and the BGB. What Article 13.3 clearly shows is that the parties knew and understood how to create an exception with respect to accessing legal remedies available in U.S. courts. (Supp. Decl. ¶ 25). Under Article 13.3, they barred access to U.S. courts except to the extent the Licensor determined to bring a suit limited to injunctive relief. Thus, the parties will and intent, as manifested in the plain language of Article 13, which was drafted by Orthogen, did not agree to permit the other to pursue Section 1782 discovery in a U.S. court. (*Id.*).

"Thus, if the parties had wanted to allow American-style discovery as an exemption, they would have included it expressly in Article 13.3 of the 2014 License Agreement. And under the ambiguity rule of Section 305 c (2) BGB, any doubts regarding interpretation are resolved to the detriment of the "user," Orthogen." (Supp. Decl. ¶ 26).

Article 13 prescribes that German law governs and that all claims must be brought in a German court. The restricted proof gathering under the ZPO is not bug but a feature. Where, as here, the "the source of the obligation" upon which Orthogen predicates its 1782 application is German law, the Schottenstein Parties are "entitled to the benefit of whatever conditions and limitations the foreign law creates." *Cf. Davis v. Mills*, 194 U.S. 451, 454 (1904). In other words, "it follows that [German] law determines not merely the existence of the obligation, but equally determines its extent" and it would be "unjust to allow [Orthogen] to come here absolutely depending on [German] law for the foundation of [its] case, and yet to deny the [Schottenstein Parties] the benefit of whatever limitations" German law may impose upon Orthogen. *Cf. Slater v. Mexican Nat'l R. Co.*, 194 U.S. 120, 126 (1904).

## B. Enforcement of the Subpoenas Deprives the Schottenstein Parties of Their Rights Under the BGB.

Orthogen's assertion that its alleged claims for alleged damages that it will allegedly bring an action upon in Germany would be time barred even if that had been brought.

Krüger's assertion that the hypothetical claims would be timely under Germany's applicable statute of limitations is wrong. Krüger points to the tolling provision contained in the ZPO 199(3). (Krüger Decl. ¶¶ 17, 19). But Orthogen cannot avail itself of this tolling clause.

Krüger's assertion that Orthogen's alleged claim that it alleges at some point it will plead would be timely is incorrect. (Krüger Decl. ¶ 15). Under Section 195 BGB (Civil Code – *Bürgerliches Gesetzbuch*, BGB ): "The standard limitation period is three years."

Orthogen would bear the burden of showing the claim is timely were one ever actual made. (Supp. Decl. ¶ 34).

Orthogen asserts that it will allege claims for damages for the years 2011 through 2020. (*See*, *e.g*, Orthogen Mov. Br., 7). Krüger argues that the statute of limitations would be tolled in a hypothetical lawsuit:

> In making that assertion, however, Mr. Scarcia-Scheel ignores the explanation I gave in the Judith/Tomas 1782 for why Dr. Schottenstein and Mr. Capla's conduct will be held to have delayed the onset of any applicable limitations period (under Section 199(1) of the German Civil Code), and a substantially longer period will be deemed to apply (under Section 199(3)). (Krüger Decl. ¶ 23).

This is incorrect. It is true that ZPO Section 199(1) does set forth a tolling provision. But Krüger does not discuss the standard under German law and rather makes allegations about allegations that Orthogen will supposedly present to a German court one day. (*See* Supp. Decl. ¶ 37).

The relevant phrase in BGB § 199(1) is "… or would have obtained such knowledge if they had not shown gross negligence." (Supp. Decl. ¶ 39). The official parliamentary commentary (*Begründung*) to § 199 states: "The creditor should not be allowed to postpone the beginning of the limitation period by closing their eyes to circumstances that are readily apparent." (*Id*. ¶ 40).

In their *Klageschrift* in the First Düsseldorf Action, Orthogen represented that it believed there was a problem with the royalties in 2017, when they were declining relative to the prior years. Orthogen represented to the German court of first instance that "After the sales were satisfactory during the first years, they strongly decreased as of the year 2017. Additionally, Plaintiff had justified doubt about the quality of the service provided by the Licensees." (Scarcia-Scheel Decl., Ex. C, at p. 4).

In other words, even if Orthogen's allegations about what it intends to allege in the future were both true, such speculative claims would all be time-barred. A party in Orthogen's position who receives clear signs of mismanagement (e.g., missing reports, red flags in financials), but chooses not to consult a lawyer would likely be deemed grossly negligent for the delay.

But compounding Orthogen's already high bar five-years out from the alleged-to-be-alleged last event, is the fact that Orthogen had audit rights under Annex 4.2.3 to the License Agreement. (Supp. Decl., Ex. 1).

The three-year statute of limitation ran long ago. Orthogen's admissions that it had justifiable doubts as early as 2017 coupled with extensive audit rights would likely be found by a German court to constitute "gross negligence." Orthogen had extensive audit rights pursuant to Annex 4.2.3, but failed to exercise those rights despite its "justifiable doubts".

## III.    A STAY SHOULD ISSUE UNDER PRINCIPLES OF INTERNATIONAL COMITY DURING THE PENDENCY OF THE GERMAN APPEAL

Even if the Court declines to quash the subpoena outright, it should stay enforcement during the pendency of the First Düsseldorf Action's appeal.[1] The pending appeal in Germany—which involves overlapping factual issues, overlapping parties, and potentially preclusive rulings—provides a compelling basis for a stay under well-established principles of international comity.

The Supreme Court's decision in militates in favor of a stay during the pendency of the

---

[1]    Several dates were incorrectly stated concerning the issuance of the decision (which was previously acknowledged), and the dates the parties filed their notices of appeal. Something was inadvertently lost in translation. We agree with Orthogen as to the following dates: (a) May 14, 2025: Judgment in the First Düsseldorf Action was issued by the Düsseldorf court; (b) June 3, 2025: Orthogen appealed the judgment in the First Düsseldorf Action (2a O 180/22); and (c)June 13, 2025: Douglas Schottenstein appealed the judgment in the First Düsseldorf Action. The mistakes were both inadvertent and immaterial. The German court did just recently issue a determination and parties have timely appealed.

appeal in Germany. "From the start," the Court explained, "the statute has been about respecting foreign nations and the governmental and intergovernmental bodies they create." *ZF Automotive US, Inc. v. Luxshare, Ltd.*, 596 U.S. 619, 631 (2022).

Here, both Orthogen and Dr. Schottenstein have appealed the judgment in the First Düsseldorf Action. The issues on appeal encompass Orthogen's entitlement to discovery under German law and the enforceability of the forum selection clause under Article 13 of the License Agreement.

Absent a stay, there is a substantial risk of inconsistent rulings. If the German appellate court affirms the lower court's finding that Orthogen is not entitled to disclosure or discovery under the License Agreement, that determination may moot or substantially narrow the scope of any discovery sought here. Conversely, enforcement of the subpoena before the German court resolves these contractual and procedural issues risks undermining its authority and duplicating legal effort.

Meanwhile, a stay of enforcement would not prejudice Orthogen. It has waited over two years to initiate a plenary proceeding in Germany despite repeatedly asserting that one was imminent. It is currently litigating—and appealing—related claims in the German courts. And it has never established why U.S. discovery is urgently required now, before the appellate court has had a chance to weigh in. The equities here—comity, deference, and efficiency—all cut in favor of a measured pause.

## **CONCLUSION**

For the foregoing reasons, Respondents respectfully request that the Court deny Orthogen's motion and grant their motion to quash the subpoenas, or alternatively to stay their enforcement during the pendency of the German appeal.

Dated: July 11, 2025

Respectfully submitted,

**BRACH EICHLER LLC**

By: *|s| Edward D. Altabet*

Edward D. Altabet
5 Penn Plaza, 23rd Floor
New York, NY 10001
973.447.9671
ealtabet@bracheichler.com

*Attorneys for Respondents-Appellants Dr. Douglas Schottenstein and Schottenstein Pain and Neuro PLLC d/b/a NY Spine*