**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X
In re Application of Orthogen International
GmbH

                                Petitioner,

for an order pursuant to 28 U.S.C. § 1782 to
conduct discovery for use in a foreign
proceeding.
------------------------------------------------------------------X

            **23-MC-152 (VSB)(KHP)**

            <u>**ORDER**</u>

**HON. KATHARINE H. PARKER, United States Magistrate Judge:**

Presently before the court are 1) Petitioner's motion to compel Dr. Douglas Schottenstein and Schottenstein Pain and Neuro PLLC d/b/a NY Spine ("NY Spine") to comply with subpoenas issued pursuant to the Hon. Vernon S. Broder's February 28, 2025 Order (ECF No. 48); 2) Respondents' motion to stay this case pending an appeal of Judge Broderick's order permitting the subpoenas (ECF No. 50); and 3) Respondents' cross-motion to quash the subpoenas (ECF No. 52). For the reasons set forth below, Petitioner's motion is **GRANTED** and Respondents' motions are **DENIED**.

## BACKGROUND

The Court assumes familiarity with the facts based on Judge Broderick's February Orders (ECF Nos. 35, 40) and summarizes them here solely for context. Petitioner Orthogen International GmbH ("Orthogen"), a German company, licensed its patented Regenokine Program, used to treat muscle and joint pain, to Dr. Douglas Schottenstein and his New York medical practice, NY Spine, and to his then partner, Edward Capla ("E. Capla"). Under the terms of the license, Orthogen received a royalty based on the number of treatments performed and the cost of the treatments. Dr. Schottenstein and E. Capla were required to provide royalty reports to Orthogen that accurately stated the number of patients they treated with

1

Regenokine and the price charged.  Under the license agreements in effect from May 2011 through May 2014, Orthogen was supposed to receive 40% of the amounts Dr. Schottenstein and E. Capla collected from their treatments.  Under the license agreement in effect from June 2014 through May 2020, Orthogen received a set dollar amount for each treatment.  The price per treatment was based on reported treatments and earnings during the May 2011 to May 2014 period.

Orthogen terminated the license agreement in May 2020.  Dr. Schottenstein and his medical practice, E. Capla and his wife then filed suit against Orthogen in New York Supreme Court asserting various claims arising out of the alleged wrongful termination of the license agreement.  In the verified complaint, Dr. Schottenstein contended that more than 3,500 patients received Regenokine treatments and that he and E. Capla earned approximately $2 million from administering the treatments.

It turned out, however, that the number of patients and treatments that they said they administered and resulting income earned was far in excess of what they had previously reported to Orthogen in their periodic royalty reports.  This complaint, therefore, gave rise to Orthogen's claims that Dr. Schottenstein and E. Capla had violated the license agreement, misreported and understated the amounts received from providing the Regenokine treatments, thereby underpaying Orthogen what it was due under the terms of the license agreement and fraudulently inducing Orthogen to enter into the second licensing agreement with an artificially reduced per treatment royalty.  Orthogen later learned from two former employees of NY Spine that Dr. Schottenstein and E. Capla had two sets of accounting books for purposes of facilitating

underreporting of income received from the Regenokine treatments and keeping more of the money for themselves (instead of paying the required royalties to Orthogen).

Based on the above, Orthogen decided to sue Dr. Schottenstein and E. Capla for breach of contract and fraud in Germany. Under German law, such claims are tried before a judge(s) and the party bringing the suit must set forth the full extent of its damages in the complaint. Because Orthogen did not have the two sets of books or documentation of the 3,500 patients referenced in the New York Supreme Court complaint, it filed the instant petition under 28 U.S.C. § 1782 to seek discovery of this information in aid of the action in Germany it intends to file. Orthogen also filed petitions to seek discovery from E. Capla and his wife, the two former employees of NY Spine, and from E. Capla's parents (who allegedly assisted in the scheme to defraud Orthogen). The two former employees and E. Capla and his wife have since provided documents showing that Dr. Schottenstein and E. Capla underreported the treatments given and money received by hundreds of thousands of dollars. However, based on the information produced, it became apparent that Dr. Schottenstein possesses important records regarding the number of treatments and amounts charged that none of the other individuals had. Orthogen's petition and subpoena in this matter is focused on these missing records and information so that it can complete its damages analysis to present it in the German complaint.

As noted above, Judge Broderick evaluated the petition and determined that it met the three statutory requirements for obtaining discovery in aid of foreign litigation under 28 U.S.C. § 1782. (ECF No. 35.) In particular, he found that the Respondents "reside" and/or are "found" in this District, a factor that Respondent did not dispute. He found that the discovery sought was for use in a foreign proceeding that was "within reasonable contemplation," consistent with

*Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004), noting that Orthogen has hired German counsel and begun drafting the necessary pleading.  Finally, he found that Petitioner is an interested party to the contemplated German proceeding because it will be the plaintiff. (*Id*.) Judge Broderick also found that the four discretionary *Intel* factors weighed in favor of allowing the discovery.  He explained the first factor was met because Orthogen would be unable to obtain the information it seeks in the German proceeding; that a German court would accept evidence of damages gathered here from Respondent; that German courts did not expressly prohibit Orthogen from utilizing Section 1782 to obtain discovery in the United States; and, finally, he found the discovery was not unduly intrusive or burdensome.[1] (*Id*.)

Respondents then moved to vacate Judge Broderick's order for five reasons including that the court had incorrectly applied Section 1782's second statutory requirement that the discovery be for use in a foreign proceeding on the ground that the German proceeding is not actually within "reasonable contemplation"; that the first *Intel* factor weighed against allowing discovery because Dr. Schottenstein will be a participant in the German proceeding; that the court erred in requiring "authoritative proof" that a German tribunal would reject discovery obtained from this action; that the German forum selection clause in the licensing agreement precludes use of Section 1782; and that "parity concerns" warranted reconsideration.  Judge Broderick rejected all these arguments and confirmed that discovery was appropriate. (ECF No. 40.)

---

[1] Judge Broderick also denied Respondents' motion to consolidate this action with a separate proceeding on the grounds that consolidation was not in the interest of judicial economy as compared to the possibility of prejudice or delay.  (*Id.*)

Respondents appealed Judge Broderick's ruling on May 14, 2025. (ECF No. 44.)  The appeal remains pending.

Thereafter, Respondents moved to stay this action and quash the subpoena, raising many of the same arguments made to Judge Broderick.  Petitioner moves to enforce the subpoena.

## DISCUSSION

### 1. <u>Motion to Stay</u>

When evaluating whether to stay a case pending appeal, the court must consider four factors:  1) whether the appellant has made a strong showing he is likely to succeed on the merits of the appeal; 2) whether the applicant will suffer an irreparable injury absent a stay; 3) whether a stay would substantially injury other interested parties; and 4) the public interest.  *In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007).

To start, Respondents have not made a strong showing they are likely to succeed on the merits.  The arguments they make largely rehash arguments they made to Judge Broderick that he rejected, and this Court also finds these arguments are without merit.

Respondents argue that the second Section 1782 factor is not met because the German proceeding is not in "reasonable contemplation" within the meaning of *Intel* and the statute. The Supreme Court has expressly stated that the proceeding in question need not be "pending" or "imminent," but merely that it be "within reasonable contemplation."  *Intel*, 542 U.S. at 259. The Second Circuit has explained that this means the application "must provide some objective indicium that the action is being contemplated." *Certain Funds, Accts. and/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 123 (2d Cir. 2015).  While it is true that merely hiring counsel might

not be sufficient to demonstrate a foreign proceeding is reasonably contemplated, where, as here, Petitioner has represented that it has already obtained evidence demonstrating Respondents' breach of the license agreement and is merely seeking information to flesh out the full scope of damages, the contemplated litigation is not speculative nor merely a "twinkle" in counsel's eye. *See Mangouras v. Squire Patton Boggs*, 980 F.3d 88, 100 (2d Cir. 2020).  Rather, as Judge Broderick properly found (and correctly reaffirmed on the Rule 60 motion), Petitioner has met the second Section 1782 factor here.  I have considered all of Respondents' arguments to the contrary on this point and find them without merit.

Further, Respondents' reliance on *ZF Automotive US, Inc. v. Luxshare, Ltd.*, 596 U.S. 619 (2022), is misplaced, as that decision principally concerned whether an arbitral body constituted a "foreign or international tribunal" within the meaning of Section 1782.  Here, there is no such dispute over whether the contemplated German proceeding would be filed in a foreign or international tribunal, and the Respondents' reference to the Court's discussion of the comity interests that give rise to Section 1782 does not aid Respondents in meeting the standard to stay discovery here pending their appeal at the Second Circuit.  Indeed, there is no clear reason why it would aid the public interest to stay discovery in this matter.

Respondents also argue that the District Court's decision granting discovery denies them equal protection under the law insofar as it enabled Petitioner to obtain Rule 27 pre-suit discovery when such discovery would not otherwise be obtainable on the facts presented here if Orthogen sued in the United States.  This theory is premised on Respondents' belief that the discovery sought is a fishing expedition for a fantasy claim that may never be brought.  However, this position is not supported by the facts presented or the law.  Rule 27 concerns pre-suit

depositions and requires that certain steps be taken, including the filing of a petition containing certain information, to obtain such information.  Its purpose is to allow for the preservation of testimony which would otherwise become unavailable. *Bryant v. Am. Federation of Musicians of the U.S. and Canada*, 666 F. App'x 14, 16 (2d Cir. 2016).  While the Court understands that parties to a contemplated proceeding in the U.S. may be treated differently in some respects than a party to a contemplated foreign proceeding when seeking pre-suit discovery, Petitioner does not convincingly argue that it is likely to succeed on an argument that there is no rational basis for such differential treatment.  Different concerns and aims animate Section 1782 and Rule 27.  The former is focused on improving judicial assistance between the United States and foreign countries and encouraging foreign countries to provide similar assistance to U.S. courts. *Intel Corp.*, 542 U.S. at 247-250.  The latter is merely a procedural rule governing discovery in the federal courts.  Indeed, Respondents' arguments plainly recognize these differences, as they embrace the unique purpose of Section 1782 when they believe it suits them and discard it when they believe it does not.

Respondents' arguments about how Judge Broderick evaluated and balanced the discretionary *Intel* factors are also unpersuasive and not likely to succeed on appeal.  That there is a German forum selection clause is merely a factor in the Section 1782 analysis and not dispositive. *See Banoka S.a.r.l. v. Elliott Mgmt. Corp.*, 148 F.4th 54, 65 (2d Cir. 2025).  And the public interest factors that Respondents point to do not tip the balance against discovery here. Again, the *Intel* factors are discretionary and, while it may be true that German courts do not permit discovery, there is no convincing argument that they would prevent pre-suit investigation of claims before filing or would not accept discovery obtained through Section

1782.  Rather, Orthogen has provided ample evidence to show that its pursuit of discovery here is compatible with evidence-gathering tools allowed in Germany.  And, here, it is not speculative that Respondents have information relevant to Petitioner's breach of contract and fraud claim.  Indeed, Orthogen has already received information showing that Respondents kept two sets of records and Respondents themselves have made court filings showing they underreported income from the Regenokine treatments.  The contemplated discovery is merely to ensure an accurate accounting of the amounts due.  Respondents' argument that Judge Broderick erred in interpreting applicable case law is without merit, as this Court reads the case law in the same manner as Judge Broderick.

Respondents make a number of other points that this court has considered and finds are not persuasive and not likely to succeed on appeal.

As to the second consideration, injury to Respondents if a stay is not granted, Respondents also fail to persuade this court.  All that Respondents will be required to do is provide discovery.  To the extent there are costs associated with that, those costs could be reimbursed later.  To the extent that information is discovered, it will be up the German court ultimately to decide what to consider from an evidentiary and proof standpoint.  A lack of a stay does not deprive Respondents of meaningful appellate review, either.  If the Second Circuit agrees with them, Petitioner can be ordered not to utilize any information produced in the German proceeding.

In contrast, there is prejudice to Petitioner by a stay.  Petitioner is seeking to recover monies owed under a contract, and as time passes, the risk of the inevitable fading of memories and loss or destruction of documents increases.  Moreover, discovery takes time, and there is

no reason to delay the start of Respondents' search for, review and production of documents. Discovery and an appeal can easily take place on a dual track to balance both sides' interests in resolution of the issues. Respondents' reliance *on Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for the W. Dist. Of Texas,* 571 U.S. 49 (2013) is misplaced, as that case falls far outside a Section 1782 petition.  *Atlantic Marine* is simply not relevant to this case.

For all these reasons, a stay is not warranted.  Accordingly, the motion for a stay pending appeal is DENIED.

### 2.  Motions to Quash/Compel

"Motions to compel" under Rule 45(d)(2)(B)(i) are "'entrusted to the sound discretion of the . . . court,'" as are motions to quash. *Samsung Elecs. Co. v. Microchip Tech. Inc.*, 347 F.R.D. 252, 260 (S.D.N.Y.2024). "The party seeking discovery bears the initial burden of proving that the information and testimony sought in the subpoena are relevant and proportional to the needs of the case" within the meaning of Rule 26(b)(1). *Lelchook v. Lebanese Canadian Bank, SAL*, 670 F. Supp. 3d 51, 54-55 (S.D.N.Y. 2023) (Parker, M.J.). "[R]elevance is an extremely broad concept for purposes of discovery." *Edmar Fin. Co. v. Currenex, Inc.*, 347 F.R.D. 641, 646 (S.D.N.Y. 2024) (citing *Pearlstein v. BlackBerry Ltd.*, 332 F.R.D. 117, 120 (S.D.N.Y. 2019) (Parker, M.J.)). "Information is 'relevant' if '(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.'" *Id.* (quoting Fed. R. Evid. 401); *see MacCartney v. O'Dell*, No. 14-cv-3925 (NSR), 2018 WL 5023947, at *2 (S.D.N.Y. Oct. 17, 2018) (quoting *Daval Steel Prods. v. M/V Fakredine*, 951 F.2 1357, 1367 (2d Cir. 1991)) (noting discovery permitted "if there is 'any possibility' that the information sought to be obtained may be relevant to the subject matter of the action").

9

Proportionality "consider[s] the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "Proportionality and relevance are 'conjoined' concepts; the greater the relevance of the information in issue, the less likely its discovery will be found to be disproportionate." *Pearlstein*, 332 F.R.D. at 121 (quoting *Villella v. Chemical & Mining Co. of Chile Inc.*, No. 15-cv-2106 (ER), 2018 WL 2958361, at *8 (S.D.N.Y. June 13, 2018)).

Once the moving party demonstrates relevance and proportionality, "the burden then shifts to the party opposing discovery to show that the information sought is privileged or unduly burdensome." *Lelchook*, 670 F. Supp. 3d at 55. "When evaluating undue burden, the court considers the relevance of the information sought, the party's need for the information, the breadth of the request, and the burden imposed." *Id.*

Rule 45(d) appropriately is invoked to compel compliance with a subpoena issued pursuant to Section 1782, with the above standards being applicable to such motions. *See, e.g.*, *In re Application of Gorsoan Ltd. and Gazprombank OJSC*, No. 13-mc-397 (PGG), 2014 WL 7232262, at *5, *10 (S.D.N.Y. Dec. 10, 2014).

Respondents' motion to quash repeats arguments made before Judge Broderick and in their motion for a stay.  To start, for the reasons discussed above, the Court finds Respondents' arguments that Federal Rules of Civil Procedure 26 and 27 bar the Section 1782 petition discovery to be without merit.  Section 1782 and *Intel* permit pre-suit discovery when, as here, the German action is reasonably contemplated.  Next, the Court finds Respondents' argument

about the German court's ruling to be unpersuasive in large part because the information Orthogen seeks here is different from the information sought in Germany. Moreover, its assertions that the German court denied the request for disclosure neglects the full context of the German court's decision, which makes clear that the request was denied because the disclosure request had already been fulfilled. Similarly, Respondent's argument that the German action is time-barred is not a basis to deny discovery here. The German court will address that issue at the appropriate time. This Court is only addressing whether discovery is appropriate under U.S. law – not the merits of a German action. For similar reasons, the arguments about rights under German law are unavailing. Respondents are free to make any arguments they want about how Petitioner may use discovery it obtains from this action in the German case, and German courts are best equipped to resolve those issues. The only issue before this court is whether the discovery is appropriate under Section 1782, which this Court has found it is.

Further, as Judge Broderick already found, and as this court independently finds, the discovery sought in the subpoenas is relevant and proportional to the needs of the contemplated German action (within the meaning of the federal rules) insofar as it seeks information in Respondents' possession that relate to damages and are necessary for a full accounting. The requests are far from the "fishing expedition" as Respondents argue.

Accordingly, the motion to quash is DENIED and the motion to compel is GRANTED.

## CONCLUSION

For the reasons set forth above, the motion to stay (ECF No. 50) is DENIED; the motion to quash (ECF No. 52) is DENIED; and the motion to compel (ECF No. 48) is GRANTED.

11

Respondent has 30 days to comply with this Order.  Petitioner shall file a status letter within 45 days of this Order reporting on compliance with this Order.

Dated: New York, New York
       February 5, 2026

                         SO ORDERED.

                         _____
                         KATHARINE H. PARKER
                         United States Magistrate Judge