USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _6/27/2026_

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X

In re Application of Orthogen International
GmbH

                                    Petitioner,

for an order pursuant to 28 U.S.C. § 1782 to
conduct discovery for use in a foreign
proceeding.
-------------------------------------------------------------------X

**23-MC-152 (VSB)(KHP)**

**OPINION & ORDER RE
RESPONDENTS' MOTION FOR
RECIPROCAL DISCOVERY**

**HON. KATHARINE H. PARKER, United States Magistrate Judge:**

**BACKGROUND**

The Court assumes familiarity with the facts and summarizes them here solely for context. Petitioner Orthogen International GmbH ("Orthogen"), a German company, licensed its patented Regenokine Program, used to treat muscle and joint pain, to Dr. Douglas Schottenstein ("Schottenstein") and his New York medical practice, Schottenstein and Schottenstein Pain & Neuro, PLLC, (together the "Schottensteins"), and to his then-partner, Edward Capla ("E. Capla"). (ECF Nos. 67-8 ("August 2014 Agreement"); 67-9 ("August 2014 Side Letter")). Under the terms of the license, Orthogen received a royalty based on the number of treatments performed and the cost of the treatments. (August 2014 Agreement at 7). Dr. Schottenstein and E. Capla were required to provide royalty reports to Orthogen that accurately stated the number of patients they treated with Regenokine and the price charged. *Id.* at 8. Although the initial licensing agreement was executed in May 2011, a subsequent side-letter and new agreement ("August 2014 Agreement and Side Letter") were executed on August 14, 2014, between Schottenstein, E. Capla, and Orthogen, effective June 1, 2014. The August 2014 Agreement was

1

to renew for successive, one-year terms, with termination allowed for good cause or material breach. (August 2014 Agreement, at 17–20; ECF No. 67-13).  Orthogen terminated the license agreement on March 24, 2020, and subsequently executed an agreement with E. Capla and Dr. Bradley Wasserman ("Dr. Wasserman") in May 2020. (ECF Nos. 67-12 ("2020 Termination Email"); 67 ("Motion for Reciprocal Discovery"), at 5).

The Schottensteins sued Orthogen and E. Capla and others in an action in this court. They contend the August 2014 Agreement was improperly terminated and that E. Capla stole patients, among other claims.  Orthogen was later dismissed from the action in this District because the German courts preliminarily found that they had jurisdiction over Orthogen. Notice of Dismissal, *Schottenstein v. Capla et al.*, No. 22 Civ. 10883 (S.D.N.Y. June, 13, 2024) (ECF No. 129).  Thereafter, the Schottensteins initiated an action in Germany against Orthogen asserting largely the same claims.  That suit is still pending.  Based on statements made by the Schottensteins in one of their legal filings in New York, it came to light that the number of patients and treatments that the Schottensteins and E. Capla said they administered, and the resulting income earned, were far in excess of what they had previously reported to Orthogen in their periodic royalty reports. (ECF No. 67-13; ECF No. 77 ("Kruger Decl."), ¶ 1).  It also has come to light that the Schottenstein medical practice kept two sets of books to obscure the full amount of revenues generated from Regenokine treatments.  Consequently, Orthogen plans to sue Schottenstein and E. Capla for breach of contract and fraud in Germany to recover the additional royalties due under the August 2014 Agreement and Side Letter. (Kruger Decl., ¶ 1). The contemplated suit would be separate from the pending German suit brought by the Schottensteins against Orthogen, which is focused on the alleged wrongful termination of the

2014 Agreement, in that Orthogen's anticipated action will be focused on the number of patients treated under the 2014 Agreement and revenues generated therefrom for purposes of recovering additional royalties due.

Under German law, claims like the ones Orthogen is going to file are tried before a judge(s), and the party bringing the suit must set forth the full extent of its damages in the complaint. *Id.* ¶ 3–5.  Because Orthogen did not have the two sets of books or documentation of all the patients referenced in the New York Supreme Court complaint, it has filed petitions under 28 U.S.C. § 1782 to seek discovery from the Schottensteins and E. Capla and others who worked in the medical practice for information about the true number of patients and revenue generated from administering Regenokine treatments in aid of the action in Germany it intends to file. *Id.*  Orthogen's Section 1782 application in this action requests documents and communications regarding the Regenokine patient treatments, payment records and royalty reports, statements made in the underlying action between the Schottensteins and Capla about the number of patients and revenue generated from Regenokine patients, and the license agreements from the Schottensteins. (ECF No. 3-2 ("1782 Subpoenas")).

The Honorable Vernon S. Broderick evaluated Orthogen's petition and determined, over the Schottensteins' objections, that it met the three statutory requirements for obtaining discovery in aid of foreign litigation under 28 U.S.C. § 1782. (ECF No. 35).  Respondents moved to vacate Judge Broderick's order. (ECF No. 36).  However, Judge Broderick rejected the motion and confirmed that Section 1782 discovery is appropriate. (ECF No. 40).  Respondents appealed Judge Broderick's ruling on May 14, 2025. (ECF No. 44).  The appeal remains pending.  On June 6, 2025, the Schottensteins filed their motion to stay the action pending the appeal, which was

denied on February 5, 2026. (ECF Nos. 50; 62).  Since then, this Court has had to resolve several disputes regarding the Schottensteins' compliance with the discovery requested and ordered.

On March 11, 2026, the Schottensteins filed the instant motion for reciprocal discovery under Section 1782.  Oral argument was held on May 14, 2026. (ECF Nos. 67; 81).  The Schottensteins seek discovery primarily for use in their pending German suit against Orthogen because the discovery requests are focused on the termination of the 2014 Agreement, communications with E. Capla and Dr. Wasserman about their new business, the terms of Orthogen's agreement with E. Capla and Dr. Wasserman, and information about royalties obtained through the new agreement with E. Capla and Dr. Wasserman.  However, arguably a small portion of the discovery also could be used in the suit Orthogen plans to bring against the Schottensteins and can be characterized as reciprocal.  More specifically, the Schottensteins have requested the May 2020 licensing agreement with E. Capla and Dr. Wasserman; all modifications to such agreement; communications regarding the termination of the August 2014 Agreement and Side Letter; communications between Orthogen and Dr. Wasserman regarding the Regenokine program; all audit report findings, workpapers, and correspondence for the Schottensteins, Wasserman, and the Caplas; and royalty payments and reports pursuant to the May 2020 licensing agreement. (ECF No. 67-2 ("Proposed Document Requests")).  The Schottensteins are also seeking two representatives to testify on behalf of Orthogen as to the facts and circumstances surrounding the 2014 license agreement and its termination, including "[a]ny commercial, financial, or strategic analysis"; the facts and circumstances surrounding the May 2020 license agreement; and all audits and royalty reports. *Id.*

**LEGAL STANDARDS**

4

I.        <u>Section 1782 Discovery</u>

Section 1782 empowers a U.S. district court to order any person residing within its jurisdiction to provide discovery for use in a foreign proceeding pursuant to the application of an interested party. 28 U.S.C. § 1782(a).  Applicants for discovery under Section 1782 must meet three statutory requirements: "(1) the person from whom discovery is sought must reside or be found in the district in which the application was made, (2) the discovery must be 'for use in a foreign proceeding before a foreign tribunal,' and (3) the applicant must be either a foreign tribunal or an 'interested person.'" *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 128 (2d Cir. 2017) (citing *Certain Funds, Accounts and/or Inv. Vehicles v. KPMG, LLP*, 798 F.3d 113, 117 (2d Cir. 2015)).

Provided the statutory requirements for discovery are met, a court must then determine, in its discretion, whether the discovery should be permitted in light of the four so-called *Intel* factors. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004).  These factors are as follows:

- Whether the person from whom discovery is sought is a participant in the foreign proceeding;
- The nature and character of the foreign tribunal and proceedings before it, as well as the tribunal's receptivity to U.S. federal-court judicial assistance;
- Whether the discovery request is an attempt to circumvent foreign proof-gathering restrictions or policies of a foreign country or the United States; and
- Whether the discovery is unduly intrusive or burdensome.

*Id.*, at 264-65.  When evaluating these factors, courts must be mindful of the goals of Section 1782:  to provide efficient means of assistance to participants in international litigation and to encourage foreign countries by example to provide similar means of assistance to U.S. courts. *Mangouras v. Squire Patton Boggs*, 980 F.3d 88, 97 (2d Cir. 2020).

II.    Reciprocal Discovery

Although the text of Section 1782 does not provide for reciprocal discovery, the U.S. Supreme Court nevertheless stated in *Intel* that a court may condition Section 1782 discovery on "person's reciprocal exchange of information." *Intel Corp.*, 542 U.S. at 262 (citing *Euromepa, S.A. v. R. Esmerian, Inc.*, 51 F.3d 1094, 1102 (2d Cir. 1995)).  The rationale for allowing reciprocal discovery is to avoid a lack of parity in the foreign litigation. *Intel*, 542 U.S. at 262; *In re Edelman*, 295 F.3d 171, 181 (2d Cir. 2002).  Nonetheless, district courts have broad discretion to deny reciprocal discovery given that Congress wrote Section 1782 "as a one-way street," granting "wide assistance to others, but demand[ing] nothing in return." *Euromepa*, 41 F.3d at 1097 (citations omitted); *see also Sampedro v. Silver Point Capital, L.P.*,  958 F.3d 140, 143, 145 (2d Cir. 2000); *In re Porsche Automobil Holding S.E.*, No. 19 MC 166, 2021 WL 2530277, at *4 (S.D.N.Y. June 21, 2021) (citing *In re Malev Hungarian Airlines*, 964 F.2d 97, 101–02 (2d Cir. 1992)).  The clear reason for granting such broad discretion to courts to deny reciprocal discovery is to avoid a U.S. court becoming involved in overseeing discovery in a matter before a foreign court

And, as noted above, reciprocal discovery is generally granted as a condition of an award of Section 1782 discovery. *Sampedro*, 958 F.3d at 143 (collecting cases).  Thus, requests for reciprocal discovery are generally, but not always, made in opposition to an initial request for Section 1782 discovery.  *In re Porsche Automobil Holding S.E.*, 2021 WL 2530277 at *5.  Further, courts consider different factors when deciding whether to order reciprocal discovery than when deciding the initial Section 1782 discovery request. *Id*.  The reciprocal discovery factors courts consider are:  (1) how closely related the reciprocal discovery is to the materials

6

requested in the original Section 1782 application; (2) whether the respondent could initiate its own Section 1782 action; (3) the location of the materials sought and whether they are obtainable in the foreign litigation; (4) the respondent's interest in the foreign litigation; and (5) the request's timing. *Sampedro*, 958 F.3d at 145; *In re Porsche Automobil Holding S.E.*, 2021 WL 2530277, at *3. Notably, the fact that the reciprocal discovery sought may be located outside of the United States does not necessarily weigh against a request for reciprocal discovery and, indeed, the fact that the respondent may not be able to initiate its own Section 1782 application against the petitioner might weigh in favor of granting reciprocal discovery. *In re Porsche Automobil Holding S.E.*, 2021 WL 2530277, at *4–5. Further, when considering procedural parity, not all possible foreign proceedings need to be factored into this consideration. *Sampedro*, 958 F.3d at 141–42 (finding that the district did not need to award reciprocal discovery on the basis that the respondents were opposite the applicant in another foreign proceeding, where the applicant could use the Section 1782 discovery obtained).

## DISCUSSION

The Court now turns to the five factors set forth above to determine whether the Schottensteins should be awarded reciprocal discovery. The first factor—how closely related the request for reciprocal discovery is to the discovery requested by Orthogen in this matter weighs against granting the request to the extent the Schottensteins are requesting discovery unrelated to Orthogen's contemplated German action. This factor looks at whether the reciprocal discovery requests arise out of the same set of facts underlying the relevant foreign action. Where the reciprocal discovery does not pertain to the underlying foreign action on which the initial Section 1782 application is premised, courts generally deny the reciprocal

7

discovery. *See, e.g., In re Obtain Discovery from Five Banks for Use in Int'l Proceedings Pursuant to 28 U.S.C. § 1782*, No. 25 MC 414, 2025 WL 3523215, at *1–2 (S.D.N.Y. Dec. 9, 2025) (declining reciprocal discovery to intervenor because it related to fraud allegations unrelated to foreign proceeding underlying Section 1782 petition).

Here, although the reciprocal discovery is related to the prior business relationship between the Schottensteins and Orthogen, the focus of the discovery sought by Orthogen and by the Schottensteins differs.  Orthogen's petition seeks information for the period during which the 2014 Agreement was in place, whereas the Schottensteins' request seeks information about the termination of the 2014 Agreement and years thereafter.  Orthogen's petition seeks information to calculate the royalties due under its now terminated agreement with the Schottensteins, whereas the Schottensteins' request primarily seeks information about the reasons for the termination of the contract and Orthogen's communications with E. Capla and Dr. Wasserman and royalties generated from its new agreement with them.  However, a small portion of the Schottensteins' requested discovery is arguably relevant to the action Orthogen intends to file insofar as it requests information about the formation of the 2014 Agreement and reasons for termination, which could address the royalty structure,royalties generated therefrom, and Orthogen's dissatisfaction with the arrangement.  In particular, their requests for audit reports connected to the August 2014 Agreement and Side Letter clearly overlap with Orthogen's contemplated German action, and the Schottensteins' proposed Requests 3 through 5 overlap with Orthogen's contemplated proceeding insofar as they can be limited to concerns that the Schottensteins were underpaying their royalties and misreporting the number of treatments actually provided under the 2014 Agreement.  On balance, because the majority of

8

the Schottensteins' document requests do not relate to the German action that Orthogen is planning to file against the Schottensteins, the first factor weighs against granting of reciprocal discovery. *See In re Obtain Discovery from Five Banks for Use in Int'l Proceedings*, 2025 WL 3523215, at *1–2 (declining to extend reciprocal discovery to an intervenor seeking to bring a distinct fraud action); *In re Application of Furstenberg Finance SAS*, 334 F. Supp. 3d 616, 620–621 (S.D.N.Y. 2018) (denying a movant's request for reciprocal discovery on the grounds that the movant failed in the original request for reciprocal discovery "to make the requisite showing," denied the contemplated foreign proceeding existed, and failed to show the requested discovery would be used in the reasonably contemplated foreign proceeding underpinning the Section 1782 action). However, the factor weighs in favor of reciprocal discovery to the extent this Court can cabin the reciprocal discovery to the requests that do overlap with the contemplated German action.

The cases on which the Schottensteins rely are distinguishable because they do not grant of reciprocal discovery where the request was based primarily on a completely separate and independent action. *See Cosorcio Minero*, 2012 WL 1059916, at *2–3 (granting reciprocal discovery in light of parties' prior stipulation and extensive litigation in Peru; no indication that discovery allowed would be used in totally separate proceeding from one underlying the Section 1782 request); *In re Genial Institucional Corretora de Cambio, Titulos e Valores Mobiliarios S.A.,* No. 24 MC 348, 2025 WL 40783, at *6 (S.D.N.Y. Jan. 7, 2025) (providing no indication that reciprocal discovery was sought for action that was distinct from one underlying the Section 1782 petition); *Minatec Finance S.A.R.L. v. SI Group Inc.,* No. 8 Civ. 269, 2008 WL 3884374, at *9 (N.D.N.Y. Aug. 18, 2008) (granting reciprocal discovery where respondents

9

requested reciprocal discovery in their initial opposition to the Section 1782 application, with no indication that it was sought in an action distinct from the one underlying the Section 1782 application).

The second factor—whether the Schottensteins could institute a 1782 action to retrieve the discovery—weighs in favor of granting the request because Orthogen is a German company with no offices or affiliated entities within the United States. *See Application of Consorcio Minero, S.A.*, 2012 WL 1059916, at *4 (finding that when the applicant was "a Peruvian company and not found in any district in the United States," the second factor weighed in favor of granting reciprocal discovery); *In re Genial Institucional Corretora de Cambio, Titulos e Valores Mobiliarios S.A.*, 2025 WL 40783, at *6 (finding that where a respondent was not "found in any district in the United States," the second factor weighed in favor of granting reciprocal discovery).

The third factor looks at the physical location of the requested discovery.  If the information sought falls within the jurisdiction of the foreign court and can be obtained in the foreign proceeding, this factor weighs against the granting reciprocal discovery. *In re Porsche Automobil Holding S.E.*, 2021 WL 2530277, at *7.  The reason for this is to guard against Section 1782 and reciprocal discovery being used as a means by which to circumvent a foreign court's restrictions on and management of discovery in its case. *Id.* at *7 ("[T]he fact the discovery requested is located in Germany and is within the German courts' jurisdiction weighs against an exercise of the Court's discretion").  Here, the reciprocal discovery sought is in Orthogen's possession, presumably in Germany, where Orthogen is headquartered and over which a German court would have jurisdiction.  Moreover, insofar as the Schottensteins could have brought a claim for

10

disclosure in Germany, this factor weighs against granting the Schottensteins' request for reciprocal discovery.

The fourth factor—the respondent's interest in the underlying foreign litigation—weighs partially in favor of the request, but only insofar as the Schottensteins are requesting discovery related to Orthogen's contemplated German action (as opposed to the pending German action). The fourth factor focuses on whether the party requesting the reciprocal discovery will be able "to use that discovery in the foreign proceeding that was the subject of the section 1782 application." *Sampedro*, 958 F.3d at 145 (finding that the district court had not abused its discretion in weighing the fact that the respondents requesting the reciprocal discovery were not in fact parties to the underlying foreign litigation); *Application of Consorcio Minero, S.A.*, 2012 WL 1059916, at *4 (finding the fact that the respondent was a party to each of the underlying foreign proceedings weighed in favor of granting reciprocal discovery); *In re Genial Institucional Corretora de Cambio, Titulos e Valores Mobiliarios S.A.*, 2025 WL 40783, at *6 (finding that the respondent's position as a party directly adverse to the petitioner weighed in favor of granting reciprocal discovery).  Here, the Schottensteins will be a party to the contemplated German proceeding that underlies the Section 1782 petition but would not use the majority of the discovery requested in defense of the contemplated German proceeding. Rather, the bulk of the discovery sought is focused on the termination of the 2014 Agreement and entry into a new agreement with E. Capla and Dr. Wasserman and would be used in the pending action it brought against Orthogen in Germany.  Therefore, this factor weighs in favor of granting reciprocal discovery, but only as to the discovery that could be used in the contemplated German proceeding to be brought by Orthogen. *Application of Consorcio Minero,*

*S.A.*, 2012 WL 1059916, at *4; *In re Genial Institucional Corretora de Cambio, Titulos e Valores Mobiliarios S.A.*, 2025 WL 40783, at *6.

The last factor looks at the timing of the request.  Although there is no bright-line rule that a request for reciprocal discovery must accompany a party's initial opposition to the Section 1782 request, delays in requesting reciprocal discovery weigh against a respondent's request. *In re Porsche Automobil Holding S.E.*, 2021 WL 2530277, at *5; *see also In re Application of Igor Raykhelson, for an Order to Conduct Discovery for Use in Foreign Proceedings*, No. 25 MC 427, 2026 WL 1574847, at *5 (S.D.N.Y. May 4, 2026) (finding that a party timely moved for reciprocal discovery when the application was submitted on September 26, 2025, and the request for reciprocal discovery was filed "less than two months later"); *In re Furstenberg Finance SAS*, 2018 WL 735670, at *3 (finding that the timeliness factor weighed against a respondent where two years had elapsed since the initial Section 1782 action was filed and the respondent had "opposed Applicants' requests for discovery at every turn and [were] just now [] seeking all of the documents").  Courts have found applications to be timely when made less than two months after the initial application was filed, but untimely when filed nearly two years later. *Compare In re Furstenberg Finance SAS*, 2018 WL 735670, at *3*, with In re Application of Igor Raykhelson, for an Order to Conduct Discovery for Use in Foreign Proceedings*, 2026 WL 1574847, at *5.

Here, Orthogen filed its application for discovery pursuant to Section 1782 on May 4, 2023, and the request for reciprocal discovery was not made until approximately three years later. The belated nature of the Schottensteins' request weighs this factor against granting reciprocal

12

discovery.[1] *In re Furstenberg Finance SAS*, 2018 WL 735670, at *3; *In re Application of Igor Raykhelson, for an Order to Conduct Discovery for Use in Foreign Proceedings*, 2026 WL 1574847, at *5. To be fair, however, the Schottensteins have raised concerns about parity from the start—the central concern addressed by reciprocal discovery. Still, there was no reason for the Schottensteins to have waited so long to make a formal request for reciprocal discovery.

In sum, the majority of the factors weigh against reciprocal discovery here, especially to the extent that the discovery sought is discovery that is not relevant or only tangentially relevant to the claims in the German action that Orthogen plans to file and pertains more directly to the pending action the Schottensteins brought in Germany against Orthogen. However, because at least a small portion of the reciprocal discovery does pertain to the anticipated German action, the Court will, in its discretion permit some, limited reciprocal discovery.

To ensure that such discovery is proportional to the needs of the case and does not unduly extend this matter, which is already three years old, and especially in light of the late request for the reciprocal discovery, this Court is significantly circumscribing what may be requested. Any and all other discovery sought by the Schottensteins must be sought through processes available in Germany or otherwise available through other legal process. The reciprocal

---

[1] The Schottensteins' purported reliance on Judge Broderick's April 30, 2025 Order about their ability to seek reciprocal discovery is misplaced. The Schottensteins rely largely on the following statement in Judge Broderick's April 30 2025 Order: "Further, Respondents have never sought reciprocal discovery, despite Orthogen's acknowledgement that they 'will be permitted' to do so." (ECF No. 40, at 9). The Schottensteins characterize this statement as an "invitation" to seek reciprocal discovery and a condition to Judge Broderick's denial of their motion for reconsideration. *Id*. However, this statement is not offered as a directive, directing Respondents to file a motion seeking reciprocal discovery, but rather an aside explaining why Respondents' parity arguments failed. (ECF No. 40, at 9). The Court clearly states in its Order that the Respondent's motion for reconsideration was denied because the Opinion and Order granting Orthogen's 1782 application did not "contain any 'mistake' sufficient to constitute 'extraordinary' or 'exceptional' circumstances that warrant reconsideration." (ECF No. 40, at 9). Therefore, the Court did not invite reciprocal discovery.

discovery that will be permitted in this action is limited to document discovery and to the following:

- Requests 3, 4, 5 are narrowed to be limited to only those communications that raised concerns regarding underpayment of royalties or misreporting of treatments provided.

- Requests 12 and 16 are narrowed and limited to audits, audit workpapers, and royalty reports pertaining to the time period the August 2014 Agreement was in effect and discovery obtained in *In re Orthogen International GmbH*, No. 9:23-mc-80743 (S.D.Fla.) that pertains to or reflects Regenokine treatments and payments for same while the 2014 Agreement was in effect.

All other discovery requested by the Schottensteins in their request for reciprocal discovery is denied.

## CONCLUSION

For the reasons set forth above, the motion for reciprocal discovery (ECF No. 67) is granted in part and denied in part.

**SO ORDERED.**

Dated: New York, New York
June 27, 2026

_____
KATHARINE H. PARKER
United States Magistrate Judge

14